AO 241
(Rev. 10/07)

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

**FILED - GR**

September 5, 2017 3:24 PM
CLERK OP COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: __mkc__ / ____   SCANNED BY __/___ a/__

| United States District Court | District: |
|---|---|

| Name (under which you were convicted): | Docket or Case No.: |
|---|---|
| **SCOTTIE BERNARD SHAVER** | |

| Place of Confinement : | **Lakeland Correctional Facility**<br>**141 First Street**<br>**Coldwater, Michigan 49036** | Prisoner No.: | **405867** |
|---|---|---|---|

| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) |
|---|---|
| **SCOTTIE BERNARD SHAVER**       v. | **BONITA HOFFNER** |

| The Attorney General of the State of       **MICHIGAN**   (Mr. Bill Schuette) | **1:17-cv-809**<br>Gordon J Quist - U.S. District Judge<br>Ray Kent - Magistrate Judge |
|---|---|

**PETITION**

1.   (a) Name and location of court that entered the judgment of conviction you are challenging:
    Circuit Court for the County of Van Buren

    212 E. Paw Paw Street    Paw Paw, Michigan 49079

    (b) Criminal docket or case number (if you know): **10- 017031 - FC**

2.   (a) Date of the judgment of conviction (if you know): **JUNE 9, 2011**

    (b) Date of sentencing: **AUGUST 24, 2011**

3.   Length of sentence: **LIFE WITHOUT PAROLE**

4.   In this case, were you convicted on more than one count or of more than one crime?    ☐ Yes   ☒ No

5.   Identify all crimes of which you were convicted and sentenced in this case: **FIRST DEGREE MURDER — MCL 750.316; MSA 28.548**

6.   (a) What was your plea? (Check one)

    ☒ (1)   Not guilty          ☐ (3)   Nolo contendere (no contest)

    ☐ (2)   Guilty              ☐ (4)   Insanity plea

AO 241
(Rev. 10/07)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? NOT APPLICABLE

N/A
N/A
N/A
N/A
N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury  ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes  ☑ No

8. Did you appeal from the judgment of conviction?

☑ Yes  ☐ No

9. If you did appeal, answer the following:

(a) Name of court: Mich. Court of Appeals

(b) Docket or case number (if you know): 305945

(c) Result: Affirmed Conviction and Sentence

(d) Date of result (if you know): September 12, 2013

(e) Citation to the case (if you know): People of Michigan -v- Scottie Shaver

(f) Grounds raised: Insufficiency of Evidence; Improper Denial of Motion for Severance; Denial of Due Process by False Testimony; Denial of a Fair Impartial Jury; Denial of Due Process by the Bind over; Verdict against Great Weight of Evidence.

(g) Did you seek further review by a higher state court?  ☑ Yes  ☐ No

If yes, answer the following:

(1) Name of court: Michigan Supreme Court

(2) Docket or case number (if you know): 

(3) Result: Denied Relief

(4) Date of result (if you know): February 28, 2014

AO 241
(Rev. 10/07)

(5) Citation to the case (if you know): PEOPLE -V- SHAVER

(6) Grounds raised: INSUFFICIENCY OF EVIDENCE; DENIAL OF MOTION FOR SEVERANCE; DENIAL OF DUE PROCESS BY FALSE TESTIMONY; DENIAL OF FAIR, IMPARTIAL JURY; VERDICT AGAINST GREAT WEIGHT OF EVIDENCE; DENIAL OF DUE PROCESS IN BINDOVER.

(h) Did you file a petition for certiorari in the United States Supreme Court? ☐ Yes ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): DOES NOT APPLY

(2) Result: NOT APPLICABLE N/A

(3) Date of result (if you know): N/A

(4) Citation to the case (if you know): N/A

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court? ☒ Yes ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: VAN BUREN COUNTY CIRCUIT COURT

(2) Docket or case number (if you know): 10-17031 - FC

(3) Date of filing (if you know): April 3, 2015

(4) Nature of the proceeding: MOTION FOR RELIEF FROM JUDGMENT

(5) Grounds raised: NEW EVIDENCE; FRAUD UPON COURT; INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL; INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL; DENIAL OF RIGHT TO CONFRONT AND CROSS EXAMINE WITNESSES; BRADY VIOLATION; PROSECUTORIAL MISCONDUCT; JURY TAMPERING; USE OF PERJURED TESTIMONY; ACTUAL INNOCENCE

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? ☐ Yes ☒ No

(7) Result: MOTION DENIED WITHOUT HEARING

(8) Date of result (if you know): DECEMBER 4, 2015

AO 241
(Rev. 10/07)

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: MICHIGAN COURT OF APPEALS

(2) Docket or case number (if you know): COA NO. 332920

(3) Date of filing (if you know): 2016

(4) Nature of the proceeding: Application For Leave To Appeal

(5) Grounds raised: SAME AS IN MOTION FOR RELIEF FROM Judgment. See PAGE 3, PARAGRAPH 11.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☒ No

(7) Result: Application Denied

(8) Date of result (if you know): September 22, 2016

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: MICHIGAN SUPREME COURT

(2) Docket or case number (if you know): SCT. NO. 154619

(3) Date of filing (if you know): 2016

(4) Nature of the proceeding: Application For Leave To Appeal

(5) Grounds raised: SAME AS ABOVE IN PARAGRAPH 11, OF Page THREE OF THIS PETITION

AO 241
(Rev. 10/07)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☑ No

(7) Result:  _Relief DENiEd — STANdArd Order oF DENiAl_

(8) Date of result (if you know):  _July 25, 2017_

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:  ☑ Yes  ☐ No

(2) Second petition:  ☑ Yes  ☐ No

(3) Third petition:  ☐ Yes  ☑ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_NO OTHER STATE COURT REMEDy AVAilAble by STATE COURT RulES ANd PROCEdURES._

12.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**  _INSUFFICIENCy OF THE EvidENCE PROVEN THAT PETiTiONER Had iNTENT To CommiT FiRST DEGREE MuRdER_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_SEE PAGE 12 OF AddENdUM TO THiS PETiTiON_

(b) If you did not exhaust your state remedies on Ground One, explain why:  _All STATE COURT REMEdiES WERE COMPlETEly EXHAUSTEd. NO OTHER MODE OF CRiMiNAl LAw ANd PROCEdURE EXiST iN MiCHiGAN._

AO 241
(Rev. 10/07)

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: MY APPELLATE ATTORNEY WAS INEFFECTIVE AND DID NOT PRESENT THIS CLAIM

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: MOTION FOR RELIEF FROM JUDGMENT.

Name and location of the court where the motion or petition was filed: VAN BUREN CIRCUIT COURT IN PAW PAW, MICHIGAN

Docket or case number (if you know): 10-17031-FC

Date of the court's decision: DECEMBER 4, 2015

Result (attach a copy of the court's opinion or order, if available): THE CIRCUIT COURT DENIED RELIEF. (OPINION AND ORDER ATTACHED - Exhibit-C)

(3) Did you receive a hearing on your motion or petition?     ☐ Yes     ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☑ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: MICH. COURT OF APPEALS P.O. BOX 30022 - LANSING, MICHIGAN

Docket or case number (if you know): COA # 332920

Date of the court's decision: SEPT. 22, 2016

Result (attach a copy of the court's opinion or order, if available): DENIED RELIEF (order attached as Exhibit-B)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

DOES NOT APPLY
N/A
N/A
N/A

AO 241
(Rev. 10/07)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One: _Application For Leave To Appeal_

_To The Mich. Supreme Court, Denied on July 25, 2017_

_S. Ct. Docket # 154619 (Attached As Exhibit- A)_

**GROUND TWO:** _Prosecutor Knowingly Used False Testimony_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_See Page 17 of Attached Addendum To This_

_Habeas Petition_

(b) If you did not exhaust your state remedies on Ground Two, explain why: _All State Court_

_Remedies Were Exhausted on This Claim_

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☑ Yes _Error_ ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: _Presented in A Pro._

_Per. Standard-4 Brief on Direct Appeal_

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _Does Not Apply_

Name and location of the court where the motion or petition was filed: _None_

_Not Applicable_

Docket or case number (if you know): _None_

Date of the court's decision: _None_

AO 241
(Rev. 10/07)

Result (attach a copy of the court's opinion or order, if available): NOT APPLICABLE

N/A

N/A

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes ☑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: NOT APPLICABLE

N/A

Docket or case number (if you know): NONE

Date of the court's decision: NONE

Result (attach a copy of the court's opinion or order, if available): NONE AVAILABLE

N/A

N/A

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

CANNOT PRESENT CLAIMS ALREADY RULED ON BY THE
COURT OF APPEALS ON POST CONVICTION PROCEEDINGS.

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :
have used to exhaust your state remedies on Ground Two   NONE

DO NOT Apply

**GROUND THREE:**   SEE ATTACHED Addendum aT PAGE 23 OF
THE Addendum To THIS PETITION.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Page 23   OF ATTACHED ADDENDUM.

All ON Page 23 To page 27 OF Addendum.

AO 241
(Rev. 10/07)

(b) If you did not exhaust your state remedies on Ground Three, explain why: _ALL Remedies Exhausted_

(c)   **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: _Appellate Counsel_
_Failed To Present Claim, As He Was ineffective_

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _Motion For Relief From Judgment._

Name and location of the court where the motion or petition was filed: _Van Buren Circuit_
_Court — Paw, Paw, Michigan_

Docket or case number (if you know): _10- 017031-FC_

Date of the court's decision: _Dec. 4, 2015_

Result (attach a copy of the court's opinion or order, if available): _See Exhibit-C_

(3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?   ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _Mich Court of Appeals_
_Lansing, Michigan_

Docket or case number (if you know): _COA # 332920_

Date of the court's decision: _Sept. 22, 2016_

Result (attach a copy of the court's opinion or order, if available): _Application For Leave_
_To Appeal Denied._

AO 241
(Rev. 10/07)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

DOES NOT APPLY

N/A

N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: NONE - ISSUE IS PRESENTED FOR THE FIRST TIME ON HABEAS REVIEW.

**GROUND FOUR:** SEE Attached Addendum PAGE 28

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE Pages 28 TO 32 OF THE ATTACHED Addendum

See Pages 28 TO 32

(b) If you did not exhaust your state remedies on Ground Four, explain why: NOT Applicable

All Remedies Exhausted

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: Appellate Counsel Failed to Present Claim on Direct Appeal

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? ☑ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Motion For Relief from Judgment.

AO 241
(Rev. 10/07)

Name and location of the court where the motion or petition was filed: _Van. Buren  Circuit_
_Court  —  Paw Paw,  Michigan_

Docket or case number (if you know): _10 - 017031 - FC_

Date of the court's decision: _December 4, 2015_

Result (attach a copy of the court's opinion or order, if available): _Order  Attached_
_Exhibit- C_

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☑ No

(4) Did you appeal from the denial of your motion or petition?  ☑ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☑ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _Court  of  Appeals_
_Lansing,  Michigan_

Docket or case number (if you know): _CoA #  332920_

Date of the court's decision: _Sept. 22, 2016_

Result (attach a copy of the court's opinion or order, if available): _Attached  As_
_Exhibit — B_

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:
_Does  Not  Apply_
_N/A_
_N/A_
_N/A_

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Four: _Application  For  Leave_
_To  The  Mich.  Supreme  Court —  S. Ct  No. 154619_
_Denied Relief  on  July 25, 2017_

AO 241
(Rev. 10/07)

13.   Please answer these additional questions about the petition you are filing:

(a)   Have all grounds for relief that you have raised in this petition been presented to the highest state court
having jurisdiction?  ☑ Yes   ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them:   NOT  APPLICABLE   ALL  Grounds  HAVE
BEEN  ExhAUSTED  iN  MichigAN  Appellate  Courts.

_____

(b)   Is there any ground in this petition that has not been presented in some state or federal court?  If so, which
ground or grounds have not been presented, and state your reasons for not presenting them:

Does  NOT  Apply
N/A
N/A

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction
that you challenge in this petition?   ☑ Yes   ☐ No

If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues

raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy

of any court opinion or order, if available.   U.S.  DiSTRiCT  COURT – WESTERN
DiSTRiCT.  CASE No. 1:14-CV-877 – HONORAble  GordoN J.
QuiST.  CASE  Dismissed  without  PRejudice  FoR  FAiLuRE
To  ExhAUST  STATE  COURT  Remedies  oN  October 7, 2014.
ORder  AHAched  As  Exhibit-D.

_____

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for
the judgment you are challenging?   ☐ Yes   ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues

raised.   NOT  APPLicAble
N/A
N/A
N/A

AO 241
(Rev. 10/07)

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: DONALD SAPPANOS, (P43542)

(b) At arraignment and plea: SAME

(c) At trial: SAME

(d) At sentencing: SAME

(e) On appeal: William H. ARCHER, (P38166)

(f) In any post-conviction proceeding: In Propria PersonA

(g) On appeal from any ruling against you in a post-conviction proceeding: In Pro. Per.

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?  ☐ Yes  ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

Does NOT Apply

(b) Give the date the other sentence was imposed: NONE

(c) Give the length of the other sentence: NONE

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?  ☐ Yes  ☑ No

AO 241
(Rev. 10/07)

Therefore, petitioner asks that the Court grant the following relief: _Reverse THE STATE CourT Conviction AND Order A New TRiAL, Or issue an Order OF DiSchARGe FROM CusTody on iNSUFFiCieNT EvideNce ClAim._

or any other relief to which petitioner may be entitled.

x _Scoltee Shaver_

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on ___8/31/17___ (month, date, year).

Executed (signed) on ___8/31/17___ (date).

x _Scoltee Shaver_

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| SCOTTIE BERNARD SHAVER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v | ) | Case No. 1:17-cv-_____ |
| | ) | HON. _____ |
| | ) | District Court Judge |
| BONITA HOFFNER, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS
### Pursuant to Title 28 USC § 2254

NOW COMES, Scottie Bernard Shaver, and hereby petition this Honorable Court for an order granting his writ of habeas corpus for relief on his unconstitutional state court conviction and sentence, obtained in violation of his federal constitutional rights. Specifically, his Sixth and Fourteenth Amendments of the US Constitution where his conviction was derived from his trial attorney's ineffectiveness, resulting in a conviction of one who is actually innocent of murder. Petitioner states in support of his habeas petition as follows:

### Jurisdiction

1. Jurisdiction is vested in this Court pursuant to Title 28 USC §§ 2254, and the (AEDPA) of 1996. This Court has jurisdiction to hear all claims in violation of the US Constitution, as an Article-III Court. This Court is an arbiter of federal constitutional and statutory law, and it is empowered to hear and decide all claims in controversy arising under, or in violation of, the constitution of the United States of America, its laws and treaties.

### History and Background

2. Petitioner Shaver is a citizen of the United States who is confined under the supervision of

1

Respondent, Bonita Hoffner, an agent/employee for the State of Michigan, and the Warden of the correctional facility at the Lakeland Correctional Facility, located at 141 First Street, Coldwater, Michigan 49036. The conviction in this habeas action was entered by the Van Buren County Circuit Court in Paw Paw, Michigan, which is within the jurisdiction of this Article-III, U.S. District Court.

    3. Petitioner's conviction accrued as a result of a trial by jury before the Honorable Richard R. Lamb, who presided over the trial and imposed the mandatory prison sanction of life. At trial level, Petitioner was represented by Mr. Donald Sappanos, (P43542), [hereafter, Defense counsel].

    4. Petitioner was convicted and sentenced by a state trial court within the jurisdiction of this Article-III Court, in violation of his federal constitutional rights. U.S. Constitution Amendments VI and XIV. [Ineffective assistance and Due Process of Law]

    5. Petitioner was convicted for the statutory crime of first degree murder, MCL § 750.316; MSA § 28.548. He was sentenced to life imprisonment without the possibility for a parole. Petitioner appealed his conviction to the Michigan Appellate Courts without any relief on appeal. He was represented on his appeal of right by Mr. William H. Archer, (P38166).

    6. Petitioner filed a pro. per. habeas petition and it was dismissed. (Shaver v McKee, Case No. 1:14-cv-877, 07-12958 - Honorable Gordon J. Quist). [Petition dismissed without prejudice for failure to exhaust available state-court remedies, on October 07, 2014).

    7. In a post conviction proceeding, Petitioner presented new evidence from an Accident Reconstructionist, coupled with several constitutional errors including a Brady violation claim. The new evidence provided by the affidavit of Mr. Bereza, [Accident Reconstructionist] formed the basis of the motion. which the trial court denied without conducting a hearing on any of the constitutional claims, especially the Sixth Amendment-ineffective assistance claim, on December 04, 2015

    8. Petitioner appealed this denial to the Michigan Court of Appeals and that Court denied review in standard order form without relief. *People v Shaver,* COA No. 332920 (2016). The Michigan Supreme Court denied relief on July 25, 2017, in its unexplained order inconsistent with the ruling in *Guilmette v Howes,* 624 F 3d 286 (6th. Cir. 2010).

2

### The In Custody Statement

9. Petitioner is in 'actual physical custody' for purposes of this Title 28 USC § 2254, habeas petition. His custody status is confinement at the Lakeland Correctional Facility in Coldwater, Michigan 49036, a prison facility operated by the State of Michigan. He is in custody under the supervision of Respondent Warden Bonita Hoffner. Thus, he is in 'custody' pursuant to *Withrow v Williams*, 507 US 680; 113 S Ct 1745 (1993).

### Habeas Corpus Review

10. Petitioner presents his 'new' habeas petition under the Antiterrorism Effective Death Penalty Act of (1996). His petition is timely as the state highest court denied his post conviction appeal on July 25, 2017. And, he is entitled to equitable tolling on the ruling from the US Supreme Court in *McQuiggins v Perkins*, 133 S Ct 1924, 1928; 185 L Ed 2d 1019 (2013).

### Entitlement to Equitable Tolling

11. Petitioner Shaver relies on the US Supreme Court's ruling in *McQuiggins v Perkins*, supra, for his proposition that he is entitled to equitable tolling on his petition, where the Court opined:

> "Actual innocence, if proved, serves as a gateway through which a prisoner may pass whether the impediment is a procedural bar, as in *Schlup v Delo*, 513 US 298; 115 S Ct 851; 130 L Ed 2d 808 (1995), or *House v Bell*, 547 US 518; 126 S Ct 2064; 165 L Ed 2d 1 (2006), or, as in this case, expiration of the statute of limitations. " Id, *McQuiggins*, at 1928.
> ***

12. Petitioner claims his actual innocence which is premised on new evidence provided to him by the Accident Reconstructionist, and the sworn affidavit of his codefendant Ivory Shaver, which supports his 'actual innocence' of the 'cold-case' homicide formerly ruled as a 'vehicle-hit and run accident.' Thefefore, he is entitled to equitable tolling consistent with *McQuiggins*, supra. Accordingly, this habeas petition is timely. Title 28 USC § 2244(d)(1).

### Habeas Grounds for Relief

13. This habeas petition challenge Petitioner's state court conviction as being violative of due process and fundamental fairness where the jury tried conviction resulted from perjury perpetrated by the APA when the state's witnesses testified falsely regarding the death of Ms. Boothby as being a murder after it had been determined a vehicle hit-and-run accident by the original

pathologist-medical examiner's report, depriving him of fundamental fairness in violation of the Fourteenth Amendment to the U.S. Constitution, requiring habeas corpus relief. Accord, 28 USC § 2254(d)(1)(2); US Const. Amend. XIV. Cf. *Napue v Illinois,* 360 US 264, 269-270 (1959).

14.     The jury tried conviction is constitutionally infirm under the rulings from the US Supreme Court, and allows habeas corpus review under the AEDPA where the state courts applied a contrary to, and the decision denying relief was an unreasonable application of, clearly established federal law as determined by the US Supreme Court. That is, the State of Michigan applied a contrary/inreasonable and wrong application of the US Supreme Court's case rulings on similar grounds and posture. cf. *United States v Bagley,* 473 US 667; 105 S Ct 3375; 87 L Ed 2d 481 (1985), where the Court opined:

> If the testimony that might have been impeached is weak and also cumulative, corroborative, or tangential, the failure to disclose the impeachment evidence could conceivably be held harmless. But when the testimony is the start and finish of the prosecutor's case, and is weak nonetheless, quite a different conclusion must necessarily be drawn. 473 US at 689. Id.
> ***

### Exhaustion Requirement

15.     Petitioner asserts that as required by the Habeas Corpus statute, and the US Supreme Court's ruling in *O'Sullivan v Boerckle,* 526 US 838, 848; 119 S Ct 1728, 1734; 144 L Ed 2d 1 (1999), he has fully exhausted all his state court remedies, and no other remedy at law exists to properly address his constitutional claims under Michigan's Criminal Law and Procedures. He has utilized the state's post conviction process which yielded nothing to correct the constitutional violation under *Napue* or *Bagley,* supra. The issues were presented to the state's highest court for resolution on the merits, after the denials from both the trial court and the Court of Appeals. This Article-III Court is called upon to correct the constitutional violation under 28 USC § 2244; 28 USC § 2254(d)1)(2), by granting him relief on the exhausted claims. *McQuiggins, v Perkins; US v Bagley,* and *Schlup v Delo,* supra. This petition includes all claims previously presented but was dismissed on lack of complete exhaustion of available state court remedies.

### Contrary/Unreasonable Application to the Federal Claims

16.     Petitioner asserts that the Michigan Courts applied a contrary to, and rendered an

4

unreasonable application of 'clearly established' federal law as determined by the US Supreme Court, when those State Courts failed to address the federal constitutional claim under the Fourteenth Amendment's "fundamental fairness doctrine." Thus, this Court must rely on the decision of the Court of Appeals original opinion denying relief, and the trial court's denial of the post conviction motion, which applied the law to the facts of this case in a contrary/unreasonable wrongful manner, under clearly established Supreme Court precedent. cf. *Mooney v Holohan*, 294 US 103; 55 S Ct 340; 79 L Ed 791 (1935): *United States v Lovasco*, 431 US 783, 790; 97 S Ct 2044; 52 L Ed 2d 752 (1977), where the Court opined:

> [a] denial of due process is demonstrated if the action complained of ... violates those fundamental conceptions of justice which lie at the base of our civil and political institutions. Ibid. 431 US, at 790; 294 US, at 112.
> \*\*\*

17. Petitioner avers that the state courts failed to apply the full benefit of the *Bruton v United States*, ruling, when denying the post conviction motion on the extrajudicial statement allegedly made by codefendant Ivory Shaver, to a prison informant, where the state courts applied it to all defendants violating *Bruton v United*, 391 US 123, 126 (1968), which was clearly established.

18. The state court's ruling was diametrically different from the precedents set by the Supreme Court on issues involving actual innocence where new evidence supported the theory. The trial court in this case, allowed the perjury to stand by failing to conduct a hearing, or summon the Accident Reconstructionist to testify as to his expert findings, which calls into question the reevaluated homicide charge after (9) years had elapsed on the vehicle hit-and-run accident causing the death of Deborah Boothby. The ruling was inconsistent with, and contrary to, the Supreme Court's ruling in *Napue v Illinois*, when it opined:

> No matter its consequences, and whether or not it bore upon the credibility of a witness ... a lie is a lie, and under the due process clause a conviction derived therefrom, will not be allowed to stand. 360 US, at 269-270.

19. Therefore, this habeas corpus court should grant relief under the contrary to, unreasonable application of, clearly established law as decided by the US Supreme Court, in *Williams v Taylor*, 120 S Ct 1495 (2000), and grant equitable tolling under *McQuiggins v Perkins*, as Petitioner is actually innocent and but for the constitutional violation of allowing perjury to enter the trial, no

5

reasonable juror would have voted to convict him of the charge. Cf. *Schlup v Delo*, supra.

20. Petitioner urges this Court to apply the "unreasonable application" of, or the "contrary to" inquiry and grant the appropriate relief. The claims asserted have been fully exhausted, and since no other remedy at law is available to address these federal constitutional claims, under the State of Michigan's regime, habeas inquiry is appropriate, and habeas corpus relief would be mandated and proper. Title 28 USC § 2254(d)(1).

### The Constitutional Violations for Habeas Review

21. Petitioner asserts that he is being held unlawfully by Respondent in violation of his federal constitutional rights where his illegal confinement is the results of those violations where:

(I)
WAS THERE SUFFICIENT EVIDENCE PROVEN BY THE PROSECUTOR BEYOND A REASONABLE DOUBT THAT PETITIONER HAD THE INTENT TO COMMIT FIRST DEGREE-FELONY MURDER?

(II)
DID THE STATE PROSECUTOR COMMIT REVERSIBLE ERROR BY KNOWINGLY ALLOWING FALSE AND PERJURED TESTIMONY TO GAIN AN UNCONSTITUTIONAL CONVICTION. US CONST. AMEND. XIV?

(III)
WAS PETITIONER THE VICTIM OF A BRADY VIOLATION WHERE MATERIAL EVIDENCE CRUCIAL TO HIS GUILT OR PUNISHMENT WAS WITHHELD DEPRIVING HIM OF HIS RIGHTS TO A FAIR TRIAL REQUIRING RELIEF?

(IV)
WAS PETITIONER DENIED HIS RIGHT TO CONFRONT AND CROSS EXAMINE A CRUCIAL WITNESS AGAINST HIM REGARDING THE CAUSE OF DEATH WHICH WAS CHANGED FROM ACCIDENT TO HOMICIDE REQUIRING RELIEF?

(V)
WAS PETITIONER DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS APPEAL OF RIGHT REQUIRING RELIEF. US CONST. AMENDS. VI AND XIV?

(VI)
IS PETITIONER ENTITLED TO A NEW TRIAL WHERE HIS TRIAL ATTORNEY WAS CONSTITUTIONALLY DEFECTIVE BY FAILING TO INVESTIGATE THE CASE; FAILING TO UTILIZE THE COMPULSORY PROCESS TO OBTAIN WITNESSES FOR THE DEFENSE, AND FAILED TO MOVE FOR AN EXPERT ACCIDENT RECONSTRUCTIONIST REQUIRING RELIEF?

(VII)
IS PETITIONER ENTITLED TO RELIEF WHERE HIS NEW EVIDENCE WHICH WAS UNAVAILABLE FOR HIS JURY TRIAL ESTABLISH HIS ACTUAL INNOCENCE OF MURDER REQUIRING REVERSAL OR RELEASE FROM CUSTODY. US CONST. AMEND XIV?

(VIII)
IS PETITIONER ENTITLED TO A NEW TRIAL WHERE THE STATE TRIAL JUDGE ABUSED HIS JUDICIAL DISCRETION BY CIRCUMVENTING A SIXTH AMENDMENT RIGHT TO CONFRONT A SPECIFIC WITNESS DISPLAYING JUDICIAL BIAS AGAINST PETITIONER. US CONST. AMENDS. VI AND XIV?

### Controlling Review Authority

Petitioner's habeas petition must be reviewed under the AEDPA. The Anti-Terrorism and

Effective Death Penalty Act of Title 28 USC § 2254(d), provides that:

> [d] An application for a writ of habeas of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceeding unless the adjudication of the claim:
>
> (1). resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.
> ***

The Supreme Court has summarized this standard of review on habeas corpus for a state

prisoner, by the authority announced in *Williams v Taylor,* 120 S Ct 1495, 1523 (2000), and opined:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States. Under the contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. 120 S Ct, at 1523, <u>Id</u>.

### Request for Appointment of Counsel

Petitioner requests the appointment of counsel, and he urges this Court to conduct an evidentiary hearing on his Sixth and Fourteenth Amendment claims consistent with US Supreme Court precedent to determine whether he met his burden of establishing an entitlement to relief, irrespective of the hurdles placed there by any procedural default argument the state may submit. Additionally, he request this Court to appoint counsel to assist him with the evidentiary hearing where his constitutional rights can be fully protected from the States arbitrary actions as has already occurred in the State Courts. <u>cf</u> 18 USC § 3006A(a): <u>Cf</u> Fed. Rule Crim. Proc, 44(a).

This Court should proceed to determine the claim on the merits insofar as their constitutionality are concerned. No state bar was implemented which prevented the state's highest court from addressing the claim. <u>Accord,</u> *Harris v Reed,* 489 US 255, 262 (1989); *Coleman v Thompson,* 501 US 722 (1991). Petitioner is entitled to habeas relief because the state passed upon his claims and allowed the Due Process violations to stand, i.e. a conviction on perjured testimony.

7

## STATEMENT OF FACTS
### And Background History

Ms. Deborah Boothby died in 1998, in a motor vehicle accident which was determined by Medical Examiner, Dr. David Millard on April 26, 1998. Her death was believed to be from a vehicle hit and run circumstance where she was found on the side of the Star Highway, in Covert, Michigan. She was taken to the Sparrow Hospital where she later died. Years later, an anonymous tip, led the police to a person who was present at the lounge on the night of April 25, 1998. The person, Ms. Adrianne Burnette, was investigated. Thereafter, the initial cause of death was changed from a vehicle accidental death, to a homicide in 2007. Ms. Boothby's body was never exhumed for additional examination supporting the change in the manner of death from vehicle accident to murder. This came as a result of the State Police investigation into the cold case, nine years later.

In September 2007, the physical evidence gathered at the hit and run scene was examined by Michigan State Police. The case files was brought to the attention of Detective Sergeant Diane Oppenheim of the MSP, South Haven Post, under complaint number 055-0001422-99. This Detective made a supplemental report on September 26, 2007. Detective Oppenheim conducted numerous investigations none of which were recorded. There were no copies of the interviews in the police files of this case. It is not known why, or by whom, the cause of death was changed.

Petitioner, Scottie Bernard Shaver was arrested, tried and convicted for the murder of Ms. Deborah Kay Boothby, along with several codefendants. His first trial ended in a hung jury where the jury was unable to find guilt based on the evidence presented. In the second trial, the jury returned a verdict of guilty on first degree murder and Petitioner was sentenced to life in prison without the possibility for a parole. On direct appeal, the Court affirmed in an unpublished opinion. See *People v Shaver*, COA No. 305945, (2013). The Supreme Court denied relief in standard order form in (2014). Petitioner filed a MCR 6.500 motion which the state trial court denied without a hearing on December 04, 2015. The second trial differed because of one prisoner informant.

During the trial, testimony revealed that at 2:30 A.M. on April 25, 1998, police officers were dispatched to the Blue Star Highway on a report of a hit and run. (Tr VI pp 48-50; Tr VI pp 217-218). The Police found a person who was still alive, face down in the middle of the roadway. (Tr VI

8

pp 51-56); (Tr VI pp 138-141). The victim later died at a local hospital (Tr VI p 69).

In the initial police investigation, three women reported seeing the victim walking down the road at approximately 02:30 a.m., without injuries. Information also revealed that a white car may have been involved in the victim's death. (Tr VI pp 61-63). There ware no eyewitnesses to the hit and run incident and Police Officer Boling concluded it was a hit and run. (Tr VI p 154).

Ivory Shaver, Petitioner's uncle, was interviewed by Officer Boling because he had information that Ivory and Ms. Boothby was involved in an argument at the bar and Boothby was escorted out. (Tr VI pp 78-79). Ivory claimed that Scottie, had broken up the verbal exchange which involved a former relationship between Ivory and Boothby, (Tr VI p 84).

Testimony revealed that an anonymous tip led to an investigation of Ms. Adrianne Burnette, who was present at the bar and was driving a white car. Her car had a cracked turn signal and scratches that had been covered up with whiteout. (Tr VI pp 85-86). Ms. Burnette was evasive and uncooperative, (Tr VI p 236; VII p 135). She indicated that Boothby was having trouble with Shaver that night. (Tr VII pp 10-12). No arrests were made until 2007. (Tr VIII p 120).

State Police Detective, Diane Oppenheim, investigated the cold case, and interviewed Ms. Burnette who was later charged with open murder and perjury in connection with the death of Ms. Boothby, (Tr XI p 14). Burnette entered a guilty plea on October 19, 2009 to second degree murder and agreed to testify in proceedings against Petitioner and codefendants for a sentence of (8 to 20) years. (Tr XI pp 16-17). She flunked a 'polygraph examination' and pleaded guilty.

Pathologist, Dr. Palutke, determined that Boothby died of multiple blunt force injuries and internal bleeding. She had internal bleeding and fractures of her vertebra and pelvis, (Tr XVI pp 68-71). Her blood alcohol level was .27 percent. He opined that she would have been able to walk until the vertebrae in her spine was broken. He indicated that the manner of death was initially undermined. But when the investigators revealed additional information to him, gleaned from their 2007 investigation, the medical examiner amended his findings and changed the manner of death to homicide. (Tr XIV pp 62-64). Only Dr. Millard's name is affixed to the death certificate from May 05, 1998, listing the cause of death as vehicle accident. Dr. Millard did not testify in this trial.

9

Adrian Travier testified that Ivory Shaver confided in him while confined at the Lakeland Correctional Facility. Ivory allegedly told Travier that he and his nephew, along with Ed and Shevy were involved in the beating of a white girl and running her over with an automobile to make it look like an accident, (Tr XV pp 93-95). He was transferred from the Correctional Facility by offering his cooperation to the Van Buren County Prosecutor's office, (Tr XV pp 97-99).

Defense witness, Dr. Brian Hunter, a forensic pathologist, testified that he examined and reviewed Dr. Palutke's report. He believed that all of the victim's injuries were consistent with a motor vehicle accident, but that he could not rule out that some of the injuries could have been inflicted by a berating, (Tr XVII pp 21-22). He believed that significant force, such as those involved in a mother vehicle accident, would have been necessary to produce the posterior rib fracture and less likely that these particular injuries were produced from a 'beatdown.' (Tr XVII pp 25-27). He found that the spinal injury was not consistent with an assault, (Tr XVII pp 27-28). He believed the more plausible scenario was that the victim was walking along the road and was run over by a car. (Tr XVII p 30). There was no accident reconstruction made by the police in 1998.

Marie Black, Jeannine Black, and Danyale Jones testified that they were in the parking lot of the Blue Star Lounge around 12:30 a.m., on the night of April 25, 1998, but were too young to enter the lounge, (Tr XVII pp 142-144). They left the parking lot, and returned later when they observed a white lady walking down the road, staggering (Tr XVII pp 176-178). The lady fell and they turned into the parking lot to tell Keith Owens to call the police. Two cars left the lot while they were there. One of the cars was white. One of the women heard a 'bloop, bloop', but did not see a car run over the victim. (Tr XVII pp 148-150); (Tr VIII pp 223-225).

Shevolier Gill testified on her own behalf. She admitted she was at the lounge on April 25, 1998 with Ivory as she was dating him at that time. She saw Boothby come in stumbling around the bar. Boothby approached Gill and asked if she was with Ivory. Boothby poured a drink on her. (Tr XVIII p 5; p 11). Gill said there was only a verbal exchange and when the lights came on, she and Ivory went into the parking lot, (Tr XVIII pp 12-14). Gill observed a group of girls pour beer over Boothby, but Boothby kept walking, and she went to her car, (Tr XVIII pp 16-18). Ivory talked to

10

Boothby in the parking lot but got in her car and they went to her house, (Tr XVIII pp 21-23). She did not see any fight outside the lounge. (XVIII pp 55-56). She did not assault Boothby (Tr XVIII pp 35-37). Gill found out the next day that Boothby was dead. She said the police came to her house the next day and looked at her car and she never heard anything form them again until 2008 (Tr XVIII pp 57-59). The delay was approximately (9) years later when she was arrested.

Robert Boyd, an inmate at Lakeland testified that Travier and Ivory were both there but he disputed that Travier and Ivory spent considerable time together. Boyd claimed that Travier only became interested in Ivory in November when he found out that Ivory had been implicated in a homicide in Van Buren County. He said Travier approached him with a proposal that the two of them should claim Ivory confessed to the murder in order to reduce their incarceration but he declined. (Tr XVIII pp 142-145).

The jury returned a verdict of guilty on all defendants. Petitioner was sentenced to life without the possibility of parole. (St p 11).

Facts not of Record:

In a sworn affidavit, from Thomas Investigative Services, by Thomas G. Bereza, an Accident Reconstructionist Consultant, which is attached to this pleading reveals the following:

> On April 25, 1998, it was raining and visibility was low. Police Officer J. Allen responded to an accident on the Blue Star Highway, in Van Buren County, Covert Township, where Deborah Kay Boothby had been struck by an automobile.
>
> That the officers knew this was a 'hit and run' fatal car pedestrian accident. That as the Chief of Police, Winans of the Covert Police Department stated-It was very dark, raining very hard with low visibility. As a result, no assistance by trained accident reconstructionist was requested. The most telling in this sworn affidavit is page two of the affidavit regarding Dr. Cabaltica the Medical Examiner from Sparrow Hospital indicating the change of the cause of death of Deborah Kay Boothby, and the Investigation allegedly conducted by MSP Detective Diane Oppenheim.

***

Petitioner will submit additional facts to clarify his argument and support his innocence of the homicide. More specifically, facts from the evidentiary hearing where the statement to Travier, allegedly from codefendant Ivory was allowed into the trial causing a prejudicial spillover to Petitioner. This extrajudicial statement, allegedly made by codefendant Ivory was allowed against all defendants in the case violting the US Supreme Court's ruling in *Bruton v United States*.

11

ARGUMENT-I

PETITIONER SHAVER IS ENTITLED TO HABEAS RELIEF WHERE THERE WAS INSUFFICIENT EVIDENCE PROVEN BY THE PROSECUTOR BEYOND A REASONABLE DOUBT THAT HE HAD THE INTENT TO COMMIT FIRST DEGREE, OR FELONY MURDER.

<u>Habeas Corpus Inquiry:</u>

The inquiry on this claim under the habeas review and inquiry is whether or not the state courts applied a contrary to, or the decision reached was an unreasonable application of clearly established law as determined by the US Supreme Court. In this instance, the inquiry is whether or not the failure to appropriately address the claim amounts to unreasonableness and contrariness under *In re Winship*, 397 US 358, 362-363 (1970). in *Winship*, the Court opined:

> "Due process protects a criminal defendant for being convicted of a crime without proof beyond a reasonable doubt as to each and every element of the crime charged."
> -*-

Stated differently, in the instant case, Petitioner was never proven to have possessed the 'specific intent' to commit first degree murder under the statutory elements of MCL § 750.316, or 750.316(1)(b), beyond a reasonable doubt which is a basic tenet of the due process requirement. Consequently, there was no evidence presented in this case that Petitioner intended to kill Ms. Boothby by plan or scheme with a premeditated intent for a conviction under either statute with respect to MCL § 750.316, or MCL § 750.316(1)(b). (Tr XXI p 56).

### Discussion

In our system of justice, the due process clause, which is applicable to the states by was of the Fourteenth Amendment, guarantees fundamental fairness during the trial. The Supreme Court envisioned the clause as requiring proof of each and every element of the crime beyond a reasonable doubt. <u>Accord,</u> *Jackson v Virginia,* 443 US 307, 319 (1979). This clause acts as a safety valve throughout the trial for both parties. The Constitution guarantees the right to a fair trial. US Const. Amend. XIV. <u>cf.</u> *Chambers v Mississippi,* 410 US 284; 93 S Ct 1038 (1973).

### The State Courts' Decision

Petitioner points out that during the direct appeal, this claim was presented to the Michigan

Court of Appeals but was not fully addressed under the 'beyond a reasonable doubt' inquiry because the Court of Appeals alluded to an 'aiding and abetting scenario on Petitioner's involvement in the alleged criminal act. The Court of Appeals relied on the perjured testimony of Adrianne Burnette to decide this claim. cf. (COA Slip Op, p 11, ¶ 6). Ms. Burnette had flunked a 'polygraph examination, and her version of the events changed to add that Petitioner forced her to drive over the victim's body to make sure she was dead. There is no state court resolution on the sufficiency of the evidence claim with regard to the 'beyond a reasonable doubt standard' under the constitutional guarantee of due process as outlined in either *Jackson* or *Winship*, supra. Therefore, Petitioner urges this Habeas Court to rule that the failure to address the claim under the federal standard, amounts to both the 'contrary to, and unreasonable application' clause of the habeas statute and grant him relief under either or both *In re Winship*, or *Jackson v Virginia*, supra.

Michigan adopted the decision of *Jackson v Virginia*, in *People v Hampton*, 407 Mich 354, 366; 285 NW 2d 384 (1979), and ruled that under the *Winship/Jackson* inquiry *Hampton* was entitled to a reversal of the murder conviction because there was no proof as to him being the actual shooter beyond a reasonable doubt. The Michigan Supreme Court, relying on *In re Winship*, supra reversed the conviction and prohibited retrial. *Hampton*, supra.

## The Evidence Presented at Trial.

At trial, the only link that Petitioner was involved in the alleged homicide which was changed from accidental death by a motor vehicle hit and run, nine years after the incident, came from Adrianne Burnette, who changed her testimony several times finally claiming that, Petitioner entered her vehicle and told her to follow Ivory. They traveled to Clovert Park and stopped at a pump house. All the codefendants got out of their car and began to beat Ms. Boothby. Ivory Shaver formulated a plan to take Boothby back to the bar and dump her on the side of the road and run over her a couple of times making it appear thar she had been hit by a car. (Tr XII pp 40 - 45). Petitioner told Burnette to follow Ivory back to the lounge to make a drug transaction with Owens, (Tr XII p 48). As they left the lounge, Petitioner told her to run over Boothby to make sure she was dead. (Tr XII p 53).

The required term of, *beyond a reasonable doubt*, is missing form the state court's resolution of the insufficiency claim. Beyond a reasonable doubt means -beyond a reasonable doubt. Not a mere speculation, or a fanciful doubt. Additionally, the only testimony linking Petitioner to the death of Ms. Boothby came from several perjurers. The Court of Appeals opinion on this claim is premised on that perjury. See (COA Slip Op. p 11, ¶ ¶ 5-6). Thus, the decision of the Court of Appeals is contrary to *Jackson v Virginia*, and out right wrong in light of *In re Winship*, because the beyond a reasonable doubt as to the elements of either first degree or felony murder, was not addressed by the state. (COA Slp. Op. pp 10-11). The beyond a reasonable doubt articulated in *Winship*, or the *Jackson* ruling is missing from the state's ruling on this claim. As such, habeas relief is warranted. 28 USC § 2254 (d)(2).

### The Statutory Requirement
### On Contrary to

Petitioner is mindful that a state court adjudication in entitled to deference, and therefore analyzed under the 'unreasonable application' standard, unless it is 'contrary to' clearly established Federal Law, as determined by the US Supreme Court. See 28 USC § 2254(d)(1), requiring:

> A state court adjudication that is contrary to controlling federal law is reviewed de novo by the federal court. Id.

\*\*\*

The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' cf. *Bell v Cone*, 535 US 685, 694; 122 S Ct 1843 (2002). Although it is said that a state court's adjudication is not 'contrary to' merely because it does not cite Supreme Court authority. ... So long as neither the reasoning nor the results of the state-court decision contradicts them. *Early v Packer*, 537 US 3,8; 123 S Ct 362 (2002). However, where the state court's resolution rests on fraudulent-perjured facts in the case, or additional facts not in the record, or expanded facts, then renders its adjudication on those facts, the adjudication is both 'contrary to' and indeed an 'unreasonable application' of, clearly established federal law.

Furthermore, where, as here, the state court adjudicated the sufficiency of the evidence claim solely on its statutory duty to guard against miscarriages of justice, the state court's refusal to set aside the verdict under state law did not necessarily denote that it decided the sufficiency of the

14

evidence claim under *Jackson v Virginia,* 447 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979). Therefore, with respect to that theory, the court could not grant the [state court's] decision the deference that § 2254(d)(1) envisions. cf. *Leftwich v Maloney,* 532 F 3d 20, 24 (1st. Cir 2008).

Petitioner urges this habeas court that since *In re Winship* mandates 'proof beyond a reasonable doubt' as to each and every element of the crime, and in his case, the intent element was a significant factor to be proven by the prosecution, beyond a reasonable doubt, and was not, absent the fraudulent, suspicious, and untrustworthy testimony of the witnesses, it cannot be said that the state court decision requires any deference, and under the fundamental fairness of the due process clause.

In a habeas corpus inquiry the reviewing court may not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury. *Brown v Koneth,* 567 F 3d 191, 205 (6th. Cir. 2009). Even if the habeas court were to conclude that a rationale trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, the court must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *Accord* 28 USC § 2254(d)(2).

Although a court may sustain a conviction on circumstantial evoidence, *Stewart v Wolfenbarger,* 595 F 3d 647, 656 (6th. Cir. 2010), this circumstantial evidence must, as a matter of law, demonstrate that each and every element of the crime was proven beyond a reasonable doubt. *In re Winship,* supra, otherwise the due process protection clause would be meaningless, if it yields to perjured testimony used to obtain an unconstitutional conviction. This Court is asked to grant the relief sought under the clearly established law of *Jackson v Virginia,* supra, or the age old case of *In re Winship.* See to *Brown v Palmer,* 441 F 3d 347 (6th. Cir. 2006).

In *Jackson v Virginia,* supra, the Court found a due process violation where it was shown that the prisoner had shown that no rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found essential elements of the crime beyond a reasonable doubt. Here, there is no finding by Michigan Courts that Petitioner possessed the 'specific intent' to commit murder beyond a reasonable doubt. Therefore, habeas relief is warranted. 28 USC § 2254(d)(2). *Winship,* 397 US, at 364; *McKenzie v Smith,* .326 F 3d 721, 728 (6th. Cir. 2004).

15

The testimonial evidence linking Petitioner to the death of Boothby was suspect because Ms. Burnette had previously stated that she may have seen Boothby staggering towards the roadway. She lied to the police by claiming that Petitioner had done something he did not do. (Tr XII p 86). Burnette had told police that Petitioner's brother [Terrence Shaver] was in the woods where Boothby was beaten even though he had nothing to do with the incident. (Tr XIII p 91).

This evidence, viewed in a light most favorable to the prosecution was insufficient to convict for first degree-felony murder. No one actually testified that Petitioner drove either vehicle alleged to have run over Boothby. The evidence from Burnette was fabricated after she was arrested on October 7, 2009, for second degree murder and perjury, (Tr XII p 6). Burnette admitted that her statements to Detective Oppenheimer were modified on Ocotber 19, 2009, about the 1998 crime. (Tr XII p 8).

### The Court of Appeals' Decision

The Court of Appeals affirmed the conviction in an unpublished opinion. That Court explained on the issue of insufficiency of the evidence that:

> In this case, the evidence demonstrated that Scottie [Petitioner] was more than merely present, and that he forcibly moved the victim with the purpose of kidnapping or murder. Several witnesses testified that Scottie actively participated in the beating of the victim in the parking lot of the Blue Star Lounge, and that he assisted Ivory in picking the victim up and placing her in Shevolier's car. Burnette testified that Scottie ordered her to follow Shevolier's car for the purpose of kidnapping her or moving her to a more remote location in order to kill her. Moreover, this evidence shows that Scottie was not merely present, but rather, was actively participating in beating and moving the victim. Further, Burnette tetified that once thety arrived at the park, Scottie continued to beat the victim, and that after the victim appeared to be unconscious, Scottie got back into Burnette's caer and ordered her to run the victim's body over to ensure the victim was dead. This evidence also demonstrates Scottie's intent and active participation in the victim's murdet. (COA Slip Op. p 11, ¶ 6). Id.
> ***

Contrary to the Court of Appeals opinion, the physical evidence relied on by that Court was prejudicially flawed and not supported by true facts. Several witnesses testified that they saw Ms. Boothby walking down the road, dressed in black. They observed the lady fall down, (Tr XVII p 146). Additional witnesses testified that there was no fight in the parking lot, (Tr XVIII pp 55-56; p 71). Therefore, the opinion of the COA was contrary to both *Jackson v Virginia*, and *In re Winship*, supra, and unconstitutionally wrong. That Court did not address the elements of the crime or the evidence related to it, beyond a reasonable doubt. [COA Opinion p 11, ¶ 6].

**16**

ARGUMENT-II

PETITIONER IS ENTITLED TO A NEW TRIAL WHERE THE STATE PROSECUTOR KNOWINGLY ALLOWED FALSE AND PERJURED TESTIMONY TO GAIN AN UNCONSTITUTIONAL CONVICTION. US CONST. AMEND. XIV.

Habeas Corpus Inquiry:

Petitioner asserts that the standard of review for this claim is "plain error" as articulated in *United States v Flores-Ortega*, 529 US 385 (2001). The State Courts of Michigan adopted the US Supreme Court's ruling in *Napue v Illinois*, 360 US 264, 269-272; 79 S Ct 1173; 3 L Ed 2d 1217 (1959), as a reversible error standard of review. Petitioner urge this habeas court to apply the 'contrary to, unreasonable application of' clearly established federal law as determined by the US Supreme Court to determine this claim. That is, did the state courts apply its decision on this matter contrary to and the unreasonable application of *Napue v Illinois*, supra, which was constitutionally wrong mandating habeas relief. 28 USC § 2254(d)(2).

### Introduction

Coupled with the perjured testimony from prison inmate-informant, Adrian Traveir, (Tr XVIII pp 142-145; pp 178-184; pp 205-209), the trial APA used testimony from Sharlimar Thomas, who stated that, things she testified to were told to her by her cousin and law-enforcement, and not of her own knowledge. (Tr IX pp 230-236). She specifically answered defense question as to the police telling her where the body was located as 'yes', and she indicated that she was intimidated by the police, a State Trooper, (Tr IX p 249).

Ms. Latoyna Thurman also testified that she was intimidated by the State Trooper and she was just answering 'yes' to his questions and inquiries, (Tr VIII p 91). This was not enough, so the trial APA, injected false testimonial evidence when Ms. Adrianne Burnette testified and told the jury that she was forced to run over the victim, (Tr XII p 53). She also testified that she may have seen the victim 'staggering' towards the roadway and about 20 minutes later Petitioner returned and drove towards South Heaven, (Tr XII p 203). She said when they left, she felt the big bump and Petitioner got out to look and told her not to talk about anything and keep her mouth shut. (Tr XII p 204). She

was arrested and convicted for commiting perjury and received 8 to 20 years. (Tr XII p 6). She agreed that her statements to Detective Oppenheimer were modified on 10-19-09 about her knowledge of crimes committed on 4-25-98. (Tr XII p 8). [Burnette's modification statement in 2009, is the cause of Petitioner's arrest in this case].

Discussion

It is clearly established and regularly followed by the US Supreme Court that due process is violated when the State allows false testimony to secure a criminal conviction. US Const. Amend. XIV; *Napue v Illinois,* 360 US 264 (1950); *Giglio v United States,* 405 US 150 (1972); *Mooney v Holohan,* 294 US 103 (1935); *Alcorta v Texas,* 355 US 28 (1957); *Pyle v Kansas,* 317 US 213 (1942); *New York* ex rel *Whitman v Wilson,* 318 US 688 (1943); *White v Rogen,* 324 US 760 (1945). Michigan adopted the ruling from *Napue v Illinois,* in *People v Wiese,* 425 Mich 446 (1986), which was in accords with its ruling in *People v Atkins,* 397 Mich 163 (1976). This trend was followed in *People v Canter,* 197 Mich App 550; 469 NW 2d 336 (1993). [Conviction reversed on perjured testimony from the state's witness].

In *Mooney,* 294 US at 112, the Court held that deliberate deception of the court or jury by the presentation of false evidence is incompatible with "rudimentary demands justice..." In *Napue,* the Court rejected the Illinois Supreme Court's conclusion that "there was no constitutional infirmity by virtue of false statements." The Court went on to conduct its own independent examination of the record and facts to determine a constitutional violation, and opined:

> "The Duty of this Court to make its own independent examination of the record when federal constitutional deprivation are alleged is clear, resting as it does, on our solemn responsibility for maintaining the Constitution inviolate. ... A new trial is required if the false testimony could ... in any reasonable likelihood have affected the judgment of the jury..." id at 271.
>                                        * * *

The Court then concluded that their own independent evaluation of the record compelled the Court to hold "... that the false testimony used by the state in securing the conviction of petitioner may have had an effect on the outcome of the trial." id at 272. The Court has continually made it abundantly clear that a constitutional violation exists when the false evidence relates to the witness credibility, as well as the defendant's actual guilt. In *Napue,* the Supreme Court stated:

"The principal that a State may not knowingly use false evidence, including false
testimony, to obtain a conviction, implicit in any concept of ordered liberty, does not
cease to apply merely because the false testimony goes only to the credibility of the
witness. The jury's estimate of the truthfulness and reliability of a given witness may
well be determinative of guilt or innocence, and it is upon such subtle factors as the
possible interest of the witness in testifying falsely that a defendant's life or liberty may
depend. 360 US at 269, id.

                                              ***

In *People v Lester*, 232 Mich App,  at 281,  the Michigan Court of Appeals made certain that all

courts below observe the judicial fact that the use of perjury would warrant a  new trial, and that a

criminal defendants had a right to due process to obtain certain information.  This state judicial

notification was not employe din the instant case, where the  Court opined:

"A criminal defendant has a due process right of access to certain information possessed
by the prosecution. cf. *Brady v Maryland*, 373 US 83; 10 L Ed 2d 215 (1963).  This due
process requirement of disclosure applies to evidence  that might lead the  jury  to
entertain a reasonable doubt about a defendant's guilt.  *Giglio v United States*,  405 US
150, 154; 92 S Ct 763 (1972).  Impeachment evidence as well as exculpatory evidence
falls within the *Brady* rule because if disclosed and used effectively, such evidence may
make the difference between conviction and acquittal.  *US v Bagley,* 473 US 667, 676;
105 S Ct 3375 (1985) ... The prosecutor is under a duty to disclose any information that
would  materially affect the credibility of his/her witness, *US v Smith*, 316 US App DC
199, 202; 77 F 3d 571 (1996).  cf. *People v Murray*, 54 Mich App 723; 221 NW 2d 468
(1974). Id.

                                              ***

The  false testimony and police statements by the state's star witness, Adrianne Burnette,  was

used for two distinct purposes.  (1) To have the original autopsy report changed from accident hit-

and-run, to murder, and  (2) It was used by the trial APA to secure  an unconstitutional conviction.

Without it, there was  no real  chance for a conviction of Petitioner on first degree murder.  Thus,

Adrianne Burnette  was crucial as a witness for this case.  This perjury, once  it is removed  from the

case,  the  new evidence,  would make a significant difference at a subsequent retrial.  Therefore,

Petitioner's  right to due process guaranteed by the Fourteenth Amendment  is violated when there is

a  reasonable likelihood that  his  conviction was  obtained by  the  knowing  use of  perjured

testimony. *People v Aceval*, 282 Mich App 379, 389; 764 NW 2d  285 (2009).  [Habeas relief granted

by  Judge Arthur J. Tarnow].    Accordingly,  a prosecutor has an obligation to correct perjured

testimony that relates to the facts of the case or a witness credibility.  cf.  *People v Gratsch*, 299 Mich

604, 619, 621 (2013). Id.  Here, neither the Court, nor the prosecutor undertook this constitutional

duty and allowed the tainted convictions to stand. This is the 'contrary to-unreasonable application of clearly establsihed federal law from the US Suprme Court and habeas relief is warranted.

<u>The Due Process Violation</u>

Consistent with the due process clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. *California v Trombetta*, 467 US 479, 485; 104 S Ct 2528; 81 L Ed 2d 413 (1984). Prosecutors have a constitutional duty and obligation to report to the defense and to the trial court whenever government witnesses lie under oath, *Napue v Illinois*, 360 US, at 269-272. This rule of law extends as far back as *Mooney*, supra. To hold otherwise, would be a <u>travesty of justice</u> and contrary to the US Supreme Court's ruling on this subject matter. Michigan adopted *Napue*, in cases of similar posture. <u>cf</u>. *People v Woods*, 416 Mich 581, 601; 331 NW 2d 707 (1982), <u>cert denied</u>, *sub nomine*, *Michigan v Alexander*, 462 US 1134; 103 S Ct 3116; 77 L Ed 2d 1370 (1983), and in *People v Cassell*, 63 Mich App 226, 229; 234 NW 2d 460 (1975), ruling that:

> " [t]he prosecutor's duty to prevent lies from entering the evidence in the guise of truth stems not from any particular role in the adversary process; rather, it is derived from the prosecutor's duty to represent the public interest, and to place the pursuit of truth and justice above the pursuit of conviction."
> -***-

The Court of Appeals had an opportunity to re-address such a circumstance in *People v Lester*, supra, and opined:

> "In the present case, the prosecutor testified that he was unaware of Houston's participation in any insurance frauds until she was cross-examined at trial. However, Codere and McCord were apparently aware of Houston's involvement in at least one insurance fraud, and knowledge of facts that are known to the prosecutor's chief investigative officer must be imputed to the prosecutor, *Cassell*, supra, at 228-229; see *Kyle v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995). The individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. Accordingly, we remand this case to the trial court for a determination whether the prosecutor knew, or can be deemed to have known, that Houston committed perjury when she testified she had not taken part in various insurance frauds." 232 Mich App, at 280.
> -***-

The case of *People v Aceval*, 282 Mich App, at 389, is a case in point, which, *ipso facto*, involved perjury under state law decisions. *People v Barbara*, 400 Mich 352; 255 NW 2d 171 (1977). Consequently, this Court should, under its constitutional authority, not allow this conviction to stand

in light of the state's clearly established due process violation. Accord 28 USC § 2254(d)(2).

The trial courts' resolution during the post conviction was contrary to *Napue*, and was an unreasonable application of that decision. cf. 260 US, at 270. Id. See *Demjanjuk v Petrovski*, 10 F 3d 348, at 352 (6th. Cir. 1993); *Carter v Anderson*, 585 F 3d 1007-1011 (6th. Cir. 2009). [Addressing perjury as a 'fraud upon the court'].

The concept of false and perjured testimony was addressed in both state and federal courts and both arenas determined that such a conviction, 'resting upon perjured testimony', offends the due process clause and will not be allowed to stand. *Napue*, 360 US at 266; *Giglio v United States*, supra. Under this framework, Petitioner is entitled to be discharged from the unlawful custody because he has shown that his conviction rest on a fraud upon the court perpetrated by the representatives of the State. See for example, *People v Waterstone*, 296 Mich App 121 (2012); US Const. Amend. XIV.

In the case *sub judice*, the perjured testimony had a substantial and injurious affect and influence on the verdict rendered. *Brecht v Abrahamson*, supra. Defendants should be discharged from custody because no additional evidence exists to sustain his conviction under the theory that he forced Ms. Burnette to run over the victim to assure she was dead. *In re Winship*, 397 US 358, 363 (1970). Justice demands release from prison. Const. Am. XIV. Or, alternatively, a new trial where perjury is not allowed to be presented.

As the Court explained in *Napue*, supra, no matter what the subject matter, if it in any real sense reflected the witnesses credibility-- a lie is a lie. 360 US, at 269-270. In this case, the object of the trial was to elicit the truth and determine what exactly occurred causing the death of Ms. Boothby in 1998. It is well established that in order for a [Defendant] to prevail on a claim that his/her conviction was obtained by evidence that the government knew to be false, a defendant must show that the statement was actually false, that the statement was material, and the prosecutor knew it was false. *Coe v Bell*, 161 F 3d 320, 343 (6th. Cir. 1998). However, a defendant must show that a witness statement was indisputably false, rather than misleading to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of perjured testimony. *Byrd v Collins*, 209 F 3d 486, 517-518 (6th. Cir. 2000). A new trial should be granted if the perjury by a

21

government witness undermined the confidence in the outcome of the trial. *Monroe v Smith*, 197 F Supp 2d 753, 762 (E.D. Mich. 2001). Thus, at a minimum, an evidentiary hearing is required to determine whether or not this conviction is the product of perjured testimony. US Const. Amend. XIV. Accord, *Cullen v Pinholster*, 563 US 170, 180 (2011).

This case present a question as to the validity of the state's post conviction process, where several constitutional clasims were simply ignored.[1] Such would be indicative of a due process violation contravening the ruling by the US Supreme Court in *District Attorney's Office for the Third Judicial District v Osborne*, 557 US 52, 129 S Ct 2308, 2320; 174 L Ed 2d 38 (2009), that:

> "The question was whether consideration of Osborne's claim within the framework of the state's post conviction relief procedures 'offends some fundamental principle of justice' or 'transgressed any recognized principle of fundamental fairness in operation.' ... Federal courts may upset a State's post conviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." Id.
> _*_

Petitioner urge the court to apply the correct governing principles of law to his perjury claim as determined by the US Supreme Court and grant him the relief required. Petitioner believes he has staisfied the 'contrary to-unreasonable application of' clealry established law as determined by the US Supreme Court on his use of perjury claim and he is entitled to habeas relief. cf. *Napue v Illinois*, 360 US at 269-270, See too, 28 USC § 2254(d)(1); *Carey v Musladin*, 549 US 70; 127 S Ct 649 (2006); *Williams v Taylor*, 529 US 362, 412; 120 S Ct 1495 (2000), and he is entitled to habeas relief on his claim. US Const. Amend. XIV.

---

[1] Michigan Courts have ruled that 'false and perjured' testimony offends the due process clause and such a conviction cannot be allowed to stand. cf. *People v Woods*, 416 Mich 581, 601; 331 NW 2d 707 (1982), cert denied, *Michigan v Alexander*, 462 US 1134; 103 S Ct 3116 (1983); *People v Cassell*, 63 Mich App 226, 229; 234 NW 2d 460 (1975); *People v Wiese*, 425 Mich 448, 455; 389 NW 2d 866 (1986). Thus, this Habeas Court should mandate that the state courts follow these long standing precedents on perjury and reverse for a new trial as a constitutional remedt at a minimum. Or, alternatively, issue an order of reversal an ddischarge from custody because a retrial would not be appropriate where there is no other evidence other than the perjury.

## ARGUMENT-III

**PETITIONER WAS THE VICTIM OF A BRADY VIOLATION WHERE MATERIAL EVIDENCE CRUCIAL TO HIS GUILT OR PUNISHMENT WAS WITHHELD DEPRIVING HIM OF HIS RIGHTS TO A FAIR TRIAL REQUIRING HABEAS RELIEF. US CONST. AMEND. XIV.**

Habeas Review and Inquiry:

Petitioner asserts that the appropriate standard of review to be applied to his claim is whether or not the state courts applied a contrary to and an unreasonable application of *the* US Supreme Court precedent as articualted in *Brady v Maryland,* 373 US 83; 10 L Ed 2d 215 (1963), making the state's decision constitutionally wrong, where the US Supreme Court opined:

> "Under *Brady v Maryland,* the government has a constitutional obligation to furnish a criminal defendant with any exculpatory evidence related to the defendant's guilt or possible punishment, 373 US, at 87; 83 S Ct 1194. Suppression by the prosecution of evidence favorable to an accused ...violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id.
>
> ***

Petitioner Shaver asserts that with this standard in mind, he urges this Court to review his claim through the lens of due process and apply the reversible error standard and vacate his unconstitutional conviction. The conviction was derived from the violation under the *Brady* trilogy, where the decade old cause of death was changed from accident to murder without the prosecution proving who changed it, and withheld the person and evidence that caused an accident to become a homicide, when s/he had a duty to disclose that evidence. Cf. *Kyles v Whitley,* 514 US 419, 437; 115 S Ct 1555 ; 131 L Ed 2d 490 (1985).

### Discussion

It is well established under *Brady* that the prosecution had a duty to disclose all material evidence. This includes impeachment evidence as well as exculpatory [scientific] evidence. Thus, in order to comply with *Brady* the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf, including the policy. *Strickler v Green,* 527 US 263, 281; 119 S Ct 1936; 144 L Ed 2d 286 (1999) [Quoting, *Kyles v Whitley*]. The Supreme Court has maintained this status as far back as 1985, when it decided *United States v Bagley,* 473 US 667, 676; 105 S Ct 3375; 87 L Ed 2d 481 (1985). The Sixth Circuit Court of Appeals has also

23

maintained this well settled principle of law in *Robinson v Mills*, 592 F 3d 730 (6th. Cir. 2010). [Affirming the grant of a habeas petition on a *Brady* violation claim].

Michigan has updated it case law authority on *Brady* claims in *People v Chenault*, 495 Mich 142, 150; 845 NW 2d 731 (2014), by removing the due diligence factor in discovering the *Brady* claim. cf. *People v Lester*, 232 Mich App 262, 282;591 NW 2d 267 (1998). This claim is ripe for adjudication on the merits as it caused the unconstitutional conviction and could not have been presented until Appellant actually discovered the *Brady* following his second trial.

### Factual Background

In 1998, Ms. Deborah Kay Boothby was killed in what was determined to be a vehicle hit and run accident. Her death certificate was signed by Dr. David Millard on May 5, 1998 listing the cause of death as vehicle/pedestrian accident. A deceased later, this was changed to homicide/murder. Appellant Scottie Shaver was charged, tried, and convicted of this decade old case, along with several codefendants. His first trial ended in a hung jury. His second trial ended with a conviction of first degree murder of Ms. Boothby. Sometime in 2007, the cause of death was changed from accident to homicide by someone. There was no exhuming of Ms. Boothby's body to determine her cause of death other than what had been listed as vehicle accident in 1998. The documents changing the old cause of death, to the homicide, was never made available to the defense before, during, or after the trials in this case. [The testimony from Dr. Palutke, infra, is from the first trial]

At trial, the only evidence regarding the change of the cause of death came from Dr. Palutke who said he made no attempt to change his medical report based on new information, because the case was 12 years old and the medical examiner for Van Buren had already changed the manner of death in the death certificate. (Tr XI p 222). He said two death certificates were made, (Tr XI p 228). He said he never changed the autopsy report, just his opinion, (Tr XI p 247). He said it was Dr. Millard who changed the findings to homicide. (Tr XII p 22). He told the jury when Dr. Millard received additional information from the Investigator, he changed the manner of death to homicide, (Tr XIV pp 62-64) pp 80-82; pp 91-93). These death certificates and the changed cause of death report was never provided to the defense at trial. No where in the trial court's records does these

24

changed reports/death certificates exists. The only death certificate lists the cause of death as vehicle accident in 1998. This nondisclosure of those documents violated the ruling in *Brady v Maryland*. The state trial court, the Court of Appeals, and the Michigan Supreme Court al passed on this claim rendering a wrong concept of the *Brady* ruling mandating habeas relief. 28 USC § 2254(d)(1-2).

Had the <u>Death Certificate</u> been made available to the defense, Petitioner could have challenged the change on the investigator's evidence presented. It is not known what evidence was provided to Dr. Millard for him to change the cause of death from a hit-and-run accident to homicide. Dr. Millard did not testify at either trial. The 1998 cause of death was crucial to the actual innocent of murder. Under *Brady*, this is reversible error mandating a new trial. US Const. Amend. XIV.

### Due Process Violation Requiring Relief

The Documents withheld by the prosecution, violated the due process rights of the accused because it prevented him from testing the evidence causing the change without additional testing from the body of the deceased. The new information from the investigator was never disclosed to the defense to show, by clear and convincing evidence, that it was trustworthy. It is unknown what new evidence/information Dr. Millard relied on to change the death certificates ten years later. The withheld evidence, was material which would have, more than likely, exonerated Petitioner from the charge as the *Brady* materials would not have supported a chance in the cause of death without having exhumed the body for further investigation by a pathologist. This is exactly what the *Brady* rule is designed to prevent. Petitioner is entitled to have a new trial on this claim as the testimony adduced at the trials clearly indicate that it was Dr. Millard, not Dr. Palutke who changed the cause of death to a homicide, (Tr XII p 22). The jury had a right to know who the person was who changed the manner of death after ten years; why he changed it, and on what specific evidence he relied on.

In *Bagley*, supra, relied upon by the Court of Appeals for the Sixth Circuit in *Hawkins v Coyle*, 547 F 3d 540, 556 (6th. Cir. 2008), the Court opined:

> "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may well depend." <u>cf</u>. *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). See too, *Robinson v Mills*, 592 F 3d at 735, <u>*Ibid.*</u>
> ***

25

A successful *Brady* claim requires a three part showing: (1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's action resulted in prejudice. *Bell v Bell*, 512 F 3d 223, 231 (6th. Cir. 2008). Here, it is clearly established that the new <u>Death Certificate</u> was suppressed by the state, whether in errors or intentionally, it was not turned over to the appellant after his trials, or during the post conviction process. In fact, the trial judge did not know who Dr. Millard was in her assessment of the case during post conviction-procedures. The suppression resulted in a severe prejudicial impact because it caused the conviction for murder on a case where the cause of death was vehicle accident when investigated by the police in 1998. Furthermore, as in *Brady*, this evidence is deemed material because had it been disclosed, there exists a reasonable probability that Petitioner would not have been convicted of first degree murder, and obviously, the outcome would be different. cf. *Bagley*, 473 US at 628; *Strickler v Green*, 527 US, at 289-290; *Kyles v Whitley*, 514 US at 434. Prejudice should be presumed as a matter of fundamental due process protection. US Const. Amend. XIV.

In *Brady*, the Supreme Court, for the first time, imposed on prosecutors broad disclosure obligations. *Brady* was found guilty of murder and sentenced to death. At trial he admitted participation in the crime, but denied he was the shooter. Prior to trial his attorney specifically asked for codefendant's extra judicial statement. Mr. Boblit (codefendant) was tried separately. The prosecutor disclosed several of Boblit's statements to the police, but failed to disclose one critical statement in which Boblit admitting doing the shooting. The court ruled that the failure to disclose violated due process. The instant case is directly related to the *Brady* decision as the new information form the State Police Detective would not support, standing alone, any factors evidencing a homicide after ten years. This withheld information from the State's Detective, as well as the *Brady* violation entitles Petitioner to a new trial where the facts can be presented to the fact finder as to how and why the cause of death was changed. US Const. Amend. XIV. Petitioner is entitled to habeas relief on this *Brady* claim.

Michigan law holds for the proposition that, the trier of facts is entitled to full information on matters affecting credibility of the witnesses and in fact, it is always argued by the prosecution as

such. cf. *People v Cassell,* 63 Mich App, at 229. Again, in *People v Anderson,* 44 Mich App 222; 205 NW 2d 81 (1982), the Court of Appeals opined:

"The prosecutor must be imputed with knowledge of facts which are known to its chief investigative officers." Id.

Here, *sub judice,* the trial APA had to have known that the change in the cause of death was not turned over to the defense. Petitioner asserts that the reason it was withheld is because it exonerates him form the first degree murder charge, because the body was never exhumed to verify the new information provided by MSP Investigator, which was known to Dr. Millard in 1998 when the death certificate was listed as vehicle accident. [hit-and-run]. Consequently, under the US Supreme Court's rulings, it was the APA's duty to learn of this information as the police is an extended arm of the prosecution. *Kyles v Whitley,* supra.

The withholding Medical Report from Dr. Millard, or the State Police Detective, even if inadvertently, violated the constitutional right to due process and resulted in an unconstitutional conviction of an innocent person. It is clearly established that evidence is deemed material if there is a reasonably probability that, had the evidence been disclosed to the defense, the trial proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Accord, *Strickler,* 527 US, at 290. There the Supreme Court explained:

"*Bagley's* touchstone of materiality is a reasonable probability of a different results, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles,* 514 US at 434; 115 S Ct .

Here, sub judice, it is not known what a jury would have done had it known all the information causing the change in the cause of death. Dr. Palutke did not change this death certificate. Dr. Millard changed it. (Tr XII p 22). Therefore, under *Brady,* Petitioner is entitled to a new trial. The state's suppression of evidence of Dr. Millard's change, should have been admitted into evidence. cf. *Kyles,* 514 US at 435; *Strickler,* 144 L Ed 2d, at 291. Under *Brady,* the suppressed evidence entitles Petitioner to a new trial where the jury can determine whether the new facts supports the change, or is simply the old facts influenced by new perjury from Ms. Burnette. (Tr XI p 17).

27

## ARGUMENT-IV

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT AND
CROSS-EXAMINE A CRUCIAL WITNESS AGAINST HIM REGARDING THE
CAUSE OF DEATH WHICH WAS CHANGED FROM ACCIDENT TO HOMICIDE
REQUIRING RELIEF. US CONST. AMEND. VI.

Habeas Corpus Review-Inquiry:

Petitioner asserts that the appropriate standard of review for this claim is de novo, and whether

or not the state courts applied a contrary to and an unreasonable application of clearly established law

and was constitutionally wrong with respect to the Sixth Amendment guarantee. This amendment's

guarantee is applicable through the state courts by way of the Fourteenth Amendment of the US

Constitution. *Pointer v Texas,* 380 US 400, 403; 85 S Ct 1065; 13 L Ed 2d 923 (1965). So stated,

Petitioner urges this Habeas Court to apply this standard and review his claim through the lens of the

Sixth and Fourteenth Amendment to the US Constitution. Therefore, the inquiry is whether or not

the decision rendered by the trial court was contrary to, or an unreasonable application of clearly

established federal law under *Pointer v Texas,* or *Mattox v United States,* infra. Accord, *Crawford v*

*Washington,* 541 US36; 124 S Ct 1345 (2004).

### Discussion

In the age old decision of *Pointer v Texas,* the US Supreme Court outlined the Sixth

Amendment confrontation cross examination clause to envision:

> "In all criminal prosecution, the accused shall enjoy the right . . . to be confronted
> with the witnesses against him." US Const. Amend. VI; See too, *Crawford v*
> *Washington,* 541 US 36; 124 S Ct 1354 (2004).
> -*-

### Denial of the Right to Confront

The decade old cold-case of the death of Ms. Deborah Kay Boothby in 1998, was reopened in

2007, by a Detective from the Michigan State Police. It was alleged at trial that from this

investigation by Detective Diane Oppenheim, a new cause of death was implemented changing the

cause of death from vehicle accident 'hit-and-run', to murder. At trial, the only evidence for this

change came from Dr. Palutke who testified that he did not change the manner of death from accident

to homicide, it was Dr. Millard who changed the autopsy report to read homicide. (Tr XII p 22). Dr. Millard did not testify at either the first or second trial and the only indication that he was the Doctor who changed the autopsy report and death certificates came from Dr. Palutke, (Tr XI p 222). These changed medical reports were testimonial in nature under *Crawford v Washington*, supra, as these were done in anticipation of litigation by the state, i.e. The Michigan State Police Department.

In 1998, the medical examiner listed the cause of death of Ms. Boothby as vehicle/pedestrian accident. Dr. David Millard signed the death certificate of Ms. Boothby on May 05, 1998 listing this as the true cause of death. His initial medical examination was inconclusive on April 26, 1998. However, on May he determined the cause of death was accident ]hit and run]. Ten years later, he changed his tune on some type of investigation from the State Police Detective, Diane Oppenheim. He was not listed as a prosecutions witness to testify as to his change.

Dr. Waldemar A. Palutke, M.D. gave testimony regarding this changes autopsy from accident to murder. He testified that:

> He never attempted to change his report based on new information because it was 12 years old and the medical examiner for Van Buren County had already changed the cause of death in the death certificate. (Tr XI p 222). He said he never changed the autopsy report, just his opinion, (Tr XI p 24). he said that Dr. Millard changed the autopsy report by amending it to read homicide. (Tr XII p 22).
> ***

Dr. Millard was not called to testify about his changes. This violated the US Supreme Court's rulings in *Bullcoming v New Mexico*, 131 S Ct 2705; 180 L Ed 2d 610 (2011); *Melendez-Diaz v Massachusetts*, 557 US 305; 129 S Ct 2527 (2009). Although these cases deals primarily with Laboratory reports where one lab employee testified about the report of another, the rulings are applicable to Appellant Shaver's circumstances under his claim of confrontation/cross examination violation. It was Dr. Palutke who gave testimony about the change from accident to homicide relying on the changes from Dr. Millard who did not testify. This violated Petitioner's constitutional right to confront the witness against him under the Sixth Amendment guarantee. US Const. Amend. VI.

The changed autopsy report, and the medical examination records relied on to change the cause of death from accident to murder, were confrontational because they were prepared with the knowledge and anticipation of being submitted in a proceedings against an accused person. Under

the ruling in *Crawford v Washington*, infra, this was a violation of the Sixth Amendment right. A new trial should be granted on this claim. cf 28 USC § 2254(d)(2).

The only opportunity to test the change in the cause of death, was by way of confrontation-cross examination of the Medical Examiner who actually changed the cause of death. This right was crucial because it was the autopsy and medical reports which provided the evidence of a homicide, as opposed to 'hit-and-run accident.' Consequently, Petitioner's confrontation/cross examination rights were violated on two instances, which will be addressed seriatim:

> First, Appellant Shaver was denied his right to access the medical record evidence used against him. *Davis v Alaska*, 415 US 308, 320; 94 S Ct 1105; 39 L Ed 2d 347 (1974). Failure to permit access to evidence useful for the defense denies fundamental due process of law. US Const. Amend. XIV; Const. 1963, art 1, § 17. This particular due process right, insofar as the confrontation clause is concerned, was addressed in *Mullane v Central Hanover Trust Co.*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950). The equal right to both parties in the controversy to interview witnesses before trial is clearly recognized by the courts. Accord, *Callahan v United States*, 371 F 2d 658, 660 (9th. Cir. 1967).

> Secondly, Petitioner suffered constitutional harm when both the prosecution and defense counsel denied him the full panoply of the right to confront and cross examine the Doctor who changed the cause of death to homicide after a ten year period. The right of confrontation and cross examination are important constitutional safeguards for a criminal defendant. In *People v Banks*, 438 Mich 408, 414 (1992), the Court observed:

> "The Sixth Amendment of the US Constitution provides, in part, that [i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witness against him." Id.

>                 \*\*\*

The prejudicial damaging affect of changing the autopsy report from accident to homicide, was crucial to the defense, and it deprived Petitioner Shaver of his constitutional right to confront those witness who initially made, and changed the medical records used against him. Under *Crawford v Washington*, infra, this was a violation of the Sixth Amendment right. The state courts applied a contrary/unreasonable application of federal law to this claim as decided by the Supreme Court.

Face to face confrontation and cross examination is required so the jury can look upon the witness and judge by his/her demeanor whether s/he is worthy of belief by the manner in which they give their testimony according to the US Supreme Court in *California v Green*, 399 US 149; 26 L Ed 2d 489; 90 S Ct 1930 (1970). See too *Green v McElroy*, 360 US 474; 3 L Ed 2d 1377; 79 S Ct 1400 (1959). This constitutional denial allowed the prosecution to establish murder without an objection

from defense counsel who failed to have the witnesses brought to court for testimony regarding the 2009 change in the causation of death. Defense counsel knew well in advance that the autopsy report had been changed. Neither he, or the trial prosecutor summoned Dr. Millard for testimony regarding the evidence he relied upon for the change and the stability of that evidence without exhuming the body of Ms. Boothby. Dr. Palutke testified that he only changed his opinion, not the death certificates or the autopsy report from accident to homicide. (Tr XI p 222).

The Confrontation Clause has been the legal debate and subject matter of criminal prosecutions over decades, and recently in *Melendez-Diaz v Massachusetts,* 174 L Ed 2d 314, at 338 (2009), as:

> "The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, *Pointer v Texas,* 380 US 400, 403; 85 S Ct 1065; 13 L Ed 2d 923 (1965), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." 174 L Ed 2d, at 320, id.
> _***_

The US Supreme Court address such a posture as here as far back as the 1900, and concluded, in *Maddox v United States,* 156 US 237; 39 L Ed 409; 20 S Ct 93 (1900), that:

> "The primary objection of the confrontation guarantee, the prevention of depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used the prisoner in lieu of a personal examination and cross examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but also of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." 156 US, at 242-243; 39 L Ed, at 411, see also, *Dowdell v United States,* 221 US 325, 330; 55 L Ed 753, 757; 31 S Ct 590 (1911). cf. *Green v California,* 26 L Ed 2d, at 510. (Justice Harlin Concurring Opinion).
> _***_

Petitioner urges this Habeas Court to correct this Sixth Amendment denial by granting a new trial where the Doctor who actually changed the medical documents from accident to homicide can tell the jury why, and on what new facts and information he relied upon to cause such a drastic change after ten years. The constitutional denial deprived Petitioner of his defense of innocence, without the full panoply of the Sixth Amendment guarantee to confront and cross examine that specific witness who changed the ten year old cause of death. cf. *Crawford v Washington,* supra.

The missing testimony and denial of cross examination of the witness, was a contributing factor to Petitioner's conviction which is questionable. *People v McDaniels,* 469 Mich 409, 670 NW

2d 659 (2003). [Truthfulness is undermined when records are prepared in anticipation of litigation].

The judicial system is premised on the well tested principle that truth - as well as fairness - is best discovered by powerful statements from both sides of the question, *Pension v Ohio*, 488 US 75 (1988), to establish this goal, the right to cross examine adverse witnesses has been protected as the greatest legal engine invented to discover the truth. cf. *Green*, 399 US, at 158. This case must be reversed in accordance with confrontation and cross examination. If the truth cannot be discovered, the guilty cannot be punished.

The testimony from the Pathologist, Dr. Palutke who relied on information provided to him by someone else, i.e., Dr. Millard, is the type of evidence envisioned in *White v Illinois*, 502 US 346, 365; 112 S Ct 736; 116 L Ed 2d 848 (1992), which implicates the confrontation clause because of its testimonial nature. cf. *Crwawford*, 541 US, at 52. The failure to properly cross examine the person who wrote the medical information relied upon Dr. Palutke, (Tr XI p 222, p 247), allowed the trial APA to go beyond the constitutional boundaries articulated in *Berger v United States*, 295 US 78,88; 55 S Ct 629, 633; 79 L Ed 1314 (1935), and deprived Appellant of his Sixth Amendment right to cross examine the witnesses against him. It is of null consequence that this claim comes after a long wait in the criminal process after the fact. This would lead to the age old phrase that "justice delayed, is justice denied." *Mooney v Holohan*, infra. And, under the due process clause, the conviction should not be allowed to stand. Untrustworthy evidence in any case is contrary to the due process clause. *Mooney v Holohan*, 294 US 103; 55 S Ct 340, 342; 79 L Ed 791 (1935).

As the US Supreme Court made clear in *Davis v Washington*, 547 US 813, 826; 126 S Ct 2266, 165 L Ed 2d 224 (2006), that it will not permit the testimonial statements of one witness to enter into evidence through the in-court testimony of a second. Restating of the true analysts -- whoever they might be -- then those analysts, too, must testify in person. cf *Melendez-Diaz*, 174 L Ed 2d, at 336, [Addressing the confrontation clause to statements made by one person, but testified to by another]. Accordingly, Petitioner urges this Court to grant him habeas relief pursuant to the contrary/unreasonable application of 28 USC § 2254(d)(2). US Const. Amends. VI and XIV.

32

ARGUMENT-V

PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE
ASSISTANCE OF COUNSEL ON HIS APPEAL OF RIGHT REQUIRING HABEAS
RELIEF. US CONST. AMENDS. VI AND XIV.

Habeas Corpus Review-Inquiry:

Petitioner Shaver asserts that the correct legal principle and standard of review is de novo as
articulated in *Evitts v Lucey,* 469 US 387 (1987). The habeas inquiry is whether or not the State
Courts of Michigan applied a contrary to/unreasonable application of clearly established law from the
United States Supreme Court on this Sixth Anmendment claim. This standard for appellate counsel,
is the same standard applied in *Strickland v Washington,* 9466 US 668 (1984). Michigan adopted
this standard in its ruling in *People v Reed,* 449 Mich 375; 535 NW 2d 496 (1995), but failed to
apply iy in this case causing the decision denying relief contrary, unreasonable and wrong.

### Discussion

It is well recognized by law that a criminal defendant is entitled to effective assistance of
counsel on his appeal of right. *Mapes v Tate,* 388 F 3d 187-194 (6th. Cir. 2004), US Const. Amend.
VI. In this case, appellate counsel should have presented the within claims on the appeal of right. It
goes without saying, "lawyers in a criminal court are necessities, not luxuries", *Gideon v Wainwright,*
372 US 335, 344; 83 S Ct 792, 796; 9 L Ed 2d 799 (1963). In the instant case, counsel's inaction,
amounted to no action and violated Petitioner's constitutional right to effective assistance on appeal of
right, *Evitts,* supra; *Penson v Ohio,* 448 US 75; 109 S Ct 346, at 352 (1988). In *Satterwhite v Texas,*
486 US 249, 256; 108 S Ct 1792, 1797; 100 L Ed 2d 284 (1988), the Supreme Court stated:

> "A pervasive denial of counsel cast such doubt on the fairness of the trial process, that
> it can never be considered harmless error. Because the fundamental importance of the
> assistance of counsel does not cease as the prosecutorial process moves from the trial
> to the appellate stage, the presumption of prejudice must extend as well to the denial
> of counsel on appeal." cf. *Penson v Ohio,* 109 S Ct, at 354. id.
> -*-

Petitioner recognizes that counsel is not required to raise all non-frivolous issues. *Jones v
Barnes,* 463 US 745; 103 S Ct 3308; 77 L Ed 2d 987 (1983). However, the Court in *Jones v Barnes*
did not say, or even hint, that counsel's selection of issues on appeal is beyond scrutiny:

> Were it legitimate to dismiss a claim of ineffective assistance of counsel on appeal solely because we found it improper to review appellate counsel's choice of issues, the right to the effective assistance of counsel on appeal would be worthless. *Gray v Greer,* 800 F 2d 644, 646 (7th. Cir. 1986).

-*-

Assuming that Appellate Counsel, Mr. William H. Archer, (P38166), read the trial transcripts before submitting the appellate brief as required under case law authority. Cf. *Entsminger v Iowa,* infra. he would have discovered the prima facie existence of the confrontation/cross examination claim because Dr. Millard did not testify as to the information he used to change the cause of death. Additionally, this should have prompted Appellate Counsel to assert a claim on the trial attorney for not calling Dr. Millard. Moreover, the records are laced with errors of considerable constitutional muster, but. was not submitted on direct review. Thus, this failure give rise to both cause and prejudice to have the within claims reviewed on the merit. cf. *Murray v Carrier,* infra; *People v Reed,* 449 Mich 375 (1995). Thus, there was no downside in failing to submit these claims. Appellant asserts that the new claims were worthy of bringing to the attention of the appellate court and the failure to do so constitutes ineffective assistance of counsel on direct appeal.

The current issues were not presented on appeal by appellate counsel, who simply placed the carriage before the horse regarding the appeal of right, displaying ineffective assistance. *People v Carbin,* 463 Mich 590; 623 NW 2d 884 (2001). Petitioner is not claiming that his appellate attorney was altogether ineffective or lacked commitment to his case. he refers this Court to the statement made by US District Court Judge, Arthur J, Tarnow, who opined:

> "In reaching this conclusion, the Court notes that ... counsel's error, although constituting ineffective assistance, does not evidence a lack of commitment or conscientiousness. . . . counsel's failure does not reflect negatively on his abilities; rather, it reflects that a conscientious attorney can make mistakes which prejudice his client. *Davis v Booker,* 594 F Supp 2d 802 (E.D. Mich. 2009). Id

-*-

Although the case was reversed on appeal, see *Davis v Booker,* 589 F 3d 302 (6th. Cir. 2009), Judge Tarnow's holding that even conscientious attorneys can make serious mistakes that prejudice their clients was left undisturbed. Shaver urges this Court to adopt that well reasoned principle of law and apply it to his case.

The critical failure of an attorney to object or raise an issue can be ineffective assistance if it deprives the appellant of an opportunity for dismissal of the case or for success on appeal. *Gravley v Mills*, 87 F 3d 779 (6th. Cir. 1996). Petitioner had numerous substantial constitutional errors which should have been presented on appeal. Had the within claims been presented, it is reasonable to assume that he would have prevailed on direct appeal, but for the ill fated action of his appellate attorney. *Mapes v Coyle*, 171 F 3d 408 (6th. Cir. 1999) [addressing criteria for appellate counsel].

Appellate counsel's failure was the functional equivalent to "ignorance" as opposed to knowledge of the facts of the case, and the applicable law governing same. *Hyman v Aikens*, 824 F 2d 1405, 1416 (4th. Cir. 1987). Consequently, Petitioner was denied his constitutional right to have the effective assistance of counsel on his appeal of right for failure to present meritorious claim such as the jurisdictional defect in the proceedings. *Entsminger v Iowa*, 386 US 748; 87 S Ct 1402; 18 L Ed 2d 501 (1967).

Assuming arguendo, that counsel would claim it was an oversight, or he in fact did not believe that he could challenge the change in the cause of death by Dr. Millard, the fact remain that Petitioner's conviction is unconstitutional on Sixth Amendment grounds. Appellate counsel failed to present these claim and deprived his client of a constitutional right. The entire appellate proceedings in this case was constitutionally void and as such this Court is urged to correct and reverse. US Const. Ams. VI and XIV. Habeas relief is warranted here with respect to the contrary to/unreasonable application of clearly established federal law. 28 USC § 2254(d)(2), *Evitts v Lucer*, supra.

Petitioner points to the case of *Powell v Alabama*, 287 US 45; 53 S Ct 55 (1932), which established the right to counsel, and the right to be heard in the defense. There, the Court said, 53 S Ct, at 64, that:

> "It never has been doubted by this Court, or any other so far as we know, that notice and hearing are preliminary steps essential to the passing of an enforceable judgment, and that they, together with a legally competent tribunal having jurisdiction of the case constitute basic elements of the constitutional guarantee of due process of law." Ibid.
> -*-

Counsel's failure to challenge the change in the cause of death, the failure to challenge the absent Dr. Millard at either trial, and the failure to challenge the *Brady* violation under current case

law authority was ineffectiveness mandating relief when reviewed by fair minded jurists. *Harrington v Ritcher,* 131 S Ct 770,784; 178 L Ed 2d 624 (2011). Objectively 'unreasonable' remains an elusive posture, *Davis v Lafler,* 658 F 3d 525, 534 (6th. Cir. 2011). Therefore, this Court is urged to conduct a hearing to determine whethe ror not the decision by the state courts were contrary to/unreasonable application of *Evitts,* or the Sixth Amendment's guarantee.

Prejudice, in this case should be presumed, *People v Reed,* 449 Mich 375, 391; 535 NW 2d 496 (1995), and relief ought to be granted. US Const. Am. VI. In *McFarland v Yukins,* 356 F 3d 688 (6th. Cir. 2004), the US Court of Appeals found ineffective assistance of appellate counsel from the failure to raise the issue of ineffective assistance of trial counsel. The Court explained:

> "Because we have already held that the ineffectiveness claim was meritorious and should have resulted in a reversal of *McFarland's* conviction, there is no question but that appellate counsel's errors were prejudicial. Consequently, *McFarland* has shown cause and prejudice excusing her failure to raise ineffective assistance of trial counsel on her direct appeal. Nothing, therefore, bars her from litigating this claim."
> ***

The testimony by Dr. Palutke regarding who did what as to the change in the cause of dearth after ten years, (Tr XI p 222, p 249), should have alerted the appellate attorney that the conviction was worthy of a challenge under *Crawford v Washington,* supra.

A court reviewing such a claim should focus on whether the alleged errors undermined the reliability and confidence in the results. *McQueen v Scroggy,* 99 F 3d 1302, 1311 (6th. Cir. 1996). [Quoting, *Strickland,* 466 US, at 686].

The claim of ineffective assistance of appellate counsel is "good cause" for failing to present an issue in the appeal of right. *Edwards v Carpenter,* 529 US 446; 120 S Ct 1587; 146 L Ed 2d 518 (2000); *Murray v Carrier,* 477 US 478, 488; 106 S Ct 2639; 91 L Ed 2d 397 (1986). Consequently, had the within claims of error been presented on initial appeal, the results would have undoubtedly be different. In this case, the issues not presented on direct appeal are highly meritorious and would have changed the results when considered on the merits. *Mayo v Henderson,* 13 F 3d 528 (6th. Cir. 1994). Thus, Petitioner is entitled to relief. US Const. Amends. VI and XIV. cf 28 USC § 2254(d)(2).

<u>ARGUMENT-VI</u>

PETITIONER IS ENTITLED TO A NEW TRIAL WHERE HIS TRIAL ATTORNEY WAS CONSTITUTIONALLY DEFECTIVE BY FAILING TO INVESTIGATE THE CASE; FAILING TO UTILIZE THE COMPULSORY PROCESS TO OBTAIN WITNESSES FOR THE DEFENSE, AND FAILED TO MOVE FOR AN EXPERT ACCIDENT RECONSTRUCTIONIST REQUIRING RELIEF. US CONST. AMENDA. VI AND XIV.

<u>Habeas Inquiry and Review:</u>

Petitioner asserts that the appropriate habeas corpus inquiry on this Sixth Amendment claim, is whether or not the State Courts applied a contrary to, or the decision denying relief was an unreasonable application of clearly established federal law as determined by the US Supreme court. That is, was the State Courts' denial so unreasonable under the *Strickland v Washington*, 466 US 668 (1984) inquiry, that it was constitutionally wrong depriving Petiotioner of the right to effective assistance that the Sixth Amendment guarantees. US Const. Amend. VI.

<u>Discussion</u>

Constitutionally, it is clearly established, and regurarly followed that a criminal defendant has a constitutional right to have the effective assistance of counsel during the entire adversary process. This right extends beyond the trial and encompasses the direct appeal of right. US Const. Amends. VI and XIV; Mich Const. 1963, Art 1, § 17 and 20. Implicit in this concept of constitutional law, the Sixth Amendment also includes the right to consult with counsel during the critical pretrial stages. Counsel should be allowed wide latitude to communicate with his/her client to adequately investigate and prepare a defense. A defense attorney who fails to perform these basic tasks will result in a denial of effective assistance of counsel as the instant case will clearly demonstrate. *Mitchell v Mason*, 257 F 3d 554 (6th. Cir. 2001); See too, *Bell v Cone*, 122 S Ct 1834 (2002).

Furthermore, as a criminal defendant Petitioner had the right to be represented by competent counsel at every stage of the proceedings against him where his rights might be affected. This right was recognized in *Powell v Alabama*, 287 US 45 (1932); *Coleman v Alabama*, 399 US 1 (1970). This constitutional right is not just to be represented, but to be assisted as well, *United States v Cronic*, 466 US 648, 654 n. 22 (1984). In the case of *Strickland v Washington*, 466 US 668, 698; 104 S Ct

2052; 80 L Ed 2d 674 (1984), the US Supreme Court set forth the foundation for determining how, or where, on the continuum of counsel representation, a defendant was denied the effective assistance of counsel under the Sixth Amendment. This criterion was adopted ten years later by Michigan in *People v Pickens,* 446 Mich 298, 338 (1994). In both instances, the inquiry focus on whether there has been a denial of effective assistance of counsel in the first instance. The State did a more in-depth analysis of the *Strickland* two prong test in deciding *People v LeBlanc,* 465 Mich 575, 578; 640 NW 2d 246 (2002). In any case a defendant must demonstrate:

> "... That counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.... [and] that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless the defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.

-*-

To show a violation of this right, a defendant must establish first that his attorney's performance was deficient in that it fell below an objective standard of reasonableness, and of course, the prong of prejudice. That is a showing that counsel's deficient performance altered the results of the trial. *Strickland,* at 687. The defendant must also show a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* supra, at 694. A single error by counsel may support a claim of ineffective assistance under certain circumstances, *Kimmelman v Morrison,* 477 US 365, 383; 106 S Ct 2574; 91 L Ed 2d 305 (1986). See also, *People v Reed,* 449 Mich 375; 535 NW 2d 496, 499 (1995).

In the instant case, Petitioner argues both prongs of the *Strickland* test under the "cumulative effect", and he urges this Court to apply *Strickland* in the appropriate manner.

### A. The Failure to Investigate the Case

At trial, Petitioner was represented by defense counsel, Mr. Donald Sappanos, (P43542). Attorney Sappanos, failed to conduct a reasonable investigation into the 'ten year' old case. Had he did basic investigation, he would have discovered that:

38

The autopsy and death certificate had been changed on the investigation which did not include exhuming the body for verification on the new information. At trial, testimony from a different Doctor was provided to the jury who did not change the cause of death from accident to homicide. (Tr XI p 222). Nor did defense counsel challenge the alleged investigation information which gave rise to the change in the manner of death. Counsel simply took Dr. Palutle's testimony as facts supporting the change in the cause of death. (Tr XII p 22). The only evidence to support the change in the cause of death of Ms. Boothby from a vehicle accident to murder came from Adrianne Burnette who committeed perjury, flunked a 'polygrapg test' and changed her statement to it was Petitioner who forced her to run over the victim. She was convicted on second degree murder and perjury. Therefore, defense counsel was ineffective for failing to provide additional information to the jury and because the jury never heard the real story as to why the cause of death was changed and by whom, left standing the testimony from Dr. Palutke that it was Dr. Millard who changed the cause and manner of death from accident to homicide. (Tr XII p 22). Additionally defense consel failed to investigate the credibility of Adrian Travier who testified falsely regarding a statement allegedly made by codefendant Ivory Shafer.

***

### B. Failure to Call Witnesses for the Defense

Several defense witnesses were not called to testify regarding the incident at the Blue Sky Lounge on April 25, 1998:

Mr. Dandridge was the bar owner, and during the first trial he was a prosecution's witness. He denied the testimony by Adrianne Burnette that he came to the door with his shotgun and claimed that if the fight didn't stop he would start shooting. Dandridge denied that he made this statement and also said he did not see any reason to call the police. His first trial testimony was crucial to the defense, but he was not called for the second trial by either party.

Ms. Tisha Holland testified at the first trial and claimed she pushed the woman [Ms. Boothby] off her car prior to leaving the club. Ms. Holland also stated that she had probably run over Ms. Boothby which forensic tests proved her car did hit the body of the victim. She could have dispelled the prosecution's theory that Petitioner and his codefendants beat Ms. Boothby and put her in the car. Defense counsel failed to call this witness.

Avita Rivera a defense witness who Adrianne Burnette claims she knew and was at the bar with her on April 25, 1998, said she did not know Ms. Burnette; she did not have her overnight bag as Burnette claimed, and she was not at the bar with Burnette. This was a credible witness to show the jury that Ms. Burnette was still lying when she testified before them.

Doctor David Millard was not called to testify about why and on what information he changed the death certificate from accident to homicide. It was another Doctor who testified before the jury to the change. Defense counsel never called this witness to tell the jury why he chnged the cause of death from accident to homicide. These were credible defense witnesses who were not called to testify in the second trial. This was due to defense counsel's failures in total.

***

Defense Counsel was ineffective because there was no second medical examination on the remains of the body to determine the cause of death was wrongfully decided in 1998. Coupled together, these witnesses could have effectively changed the prosecutor's theory. With the exception

39

of Dr. Millard, these witnesses testified at the first trial which ended in a hung jury. Therefore, defense counsel's failure was unreasonable, as his conduct deprived Petitioner of his constitutional right to effective assistance of counsel. The state courts' ruling on this claim was clearly contrary to the decision in *Wiggins v Smith*. infra, warranting habeas relief. 28 USC § 2254(d)(2).

Simply put, counsel failed to make a reasonable investigation into the charge as required under *Kimmelman v Morrison*, supra. Defense counsel's failure amounted to a Sixth Amendment violation for failing to call witnesses for the defense, without the violation, Petitioner stood a likely chance of acquittal. There was no trial strategy in this failure.

### C. Failure to Seek an Expert Accident Reconstructionist

Due to counsel failure to investigate the case, he failed to move the Court for an accident reconstructinist. Had he done so, he would have found that the Expert Accident Reconstructionist would have provided supporting evidence of his client's innocence. The failure to move for this expert prevented the jury from hearing the information supporting the theory that it was an accident as the Covert Police Chief, Mr. Winans had written in his report that, the crime scene was very dark as it was raining very hard with low visibility. This would have called into question the testimony of Burnette who was driving the white car in the rain and hit the victim.

Defense counsel failures must, as a matter of constitutional law, be considered the Sixth Amendment denial that the inquiry contemplates. cf. *Strickland*, 466 US, at 696. Furthermore, with this additional information from the witnesses listed here, incluing the expert reconstructionist, the jury may have elected to acquit altogether because they could not find guilt on first degree murder at the first trial. Thus, under *Wiggins v Smith,* infra, defense counsel was constitutionally defective on these grounds. Habeas relief is required to cure this fundamental miscarriage of justice.

Trial counsel failed to make a reasonable investigation into the case prior to trial. He simply relied on the prosecutor to make his case for him. This is prima facie ineffective assistance of counsel, or in layman's term. ineffective assistance of counsel 101. Counsel failed to utilize the tools available to him to combat his client's case in the face of the prosecution's fraudulent submissions, from Burnette and Travier, ultimately denying a right to effective assistance of counsel. US Const.

40

Amend. VI and XIV.

To establish a deficient performance, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, *Wiggins v Smith*, 539 US 510; 123 S Ct 2527, 2535; 156 L Ed 2d 471 (2003), (quoting *Strickland*, 466 US at 688). In determining the reasonableness of counsel's performance under prevailing professional norms, a reviewing court is to be guided by the <u>ABA Standards</u> and the likes of, *Strickland*, at 689; and *Wiggins*, supra, 125 S Ct at 2536. This Court can grant relief on the prejudicial prong articulated in *Strickland*, 466 US, at 696.

Failure by defense counsel to adequately prepare or present a defense constitutes ineffective assistance of counsel, If counsel makes mistakes which could have changed the verdict or could have preserved issues for appeal, there is ineffective assistance, *Gravely v Mills*, 87 F 3d 799 (6th. Cir. 1996); *Rickman v Bell*, 131 F 3d 1150 (6th. Cir. 1997). Defense counsel cannot claim trial strategy for his failures, and the lack of preparation, or prior investigation into the case before trial.

*Strickland* clearly states that counsel has a duty to make reasonable investigations or to make a reasonable decision that make particular investigation unnecessary. 466 US, at 691. Failure to investigate and call defense witnesses can amount to ineffective assistance of counsel, *Clinkscale v Carter*, 375 F 3d 430, 442-446 (6th. Cir., 2004); <u>cf.</u> *Sims v Livesay*, 970 F 2d 1575 (6th. Cir. 1992).[3] The decision not to investigate or summons witnesses was contrary to *Strickland*, and constitutionally wrong. Counsel's failures: to challenge the "prosecution case under the adversary testing mechanism"; failure to present a defense of actual innocence of the murder charge, was prejudicial error under *Strickland*, supra; *Mitchell v Mason*, 325 F 3d 732, 743 (6th. Cir. 2003). (Pretrial periods constitutes critical periods encompassing counsel's constitutionally imposed duty to investigate the case). US Const. Ams. VI.

The *Strickland* Court noted for the most part, that "strategic choices made after thorough investigation of law and facts are relevant to plausible options are virtually unchallengable." 466 US, at 690. The ultimate question is not whether counsel's choices were strategic, but whether they were reasonable, *Roe v Flores Ortega*, 528 US 470, 481; 120 S Ct 1029, 145 L Ed 2d 985 (2000). Defense counsel's failure in the instant case, was unreasonable. A new trial is mandated here. 28 USC §

2254(d)(1)-(d)(2). The *Strickland's* inquiry does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only a reasonable probability that the outcome would have been different in the case." 466 US, at 693-694. Petitioner is entitled to relief. US Const. Amends. VI, XIV.

Petitioner asserts that on habeas inquiry as to any claim of procedural default, he points to the US Supreme Court's rulings. Indeed, in order for attorney error to constitute 'cause' to excuse a procedural default, it must rise to the level of a constitutional violation of the right to counsel under *Strickland v Washington,* 46 US 668 (1984). See too, *Murray v Carrier,* 477 US 478, 488 (1986). Additionally, the Sixth Circuit has ruled that, although a habeas Petitioner must satisfy the heightened AEDPA standard with respect to an ineffective assistance claim, he need not do so when arguing ineffective assistance in order to established 'cause.' Accord, *Hall v Vasbinder,* 563 F 3d 222, 226-237 (6th. Cir. 2009). Petitioner ask this Court to utilize these rulings when addressing the 'cause and prejudice' component of the *Strickland's* ' inquiry, as applied to his case..

The errors assigned to both trial and appellate counsel in this habeas case is directly related to their failures to investigate the case fully, to mount a colorful defense at trial level, or an appeal of right. Consequently, both claims were exhausted in state court and are ripe for habeas corpus review. Accord, *Murray v Carrier,* 477 US, at 489; *Edwards v Carpentier,* 529 US 446, 452-454 (2000). Accordingly, habeas reilef is warranted either by statutory provisions, 28 USC § 2254(d)91) and (d) (2), or constitutional mandate . US Const. Amends. VI and XIV.

---

3. In *Sims v Livesay,* the accused was charged with killing his wife by shooting her in their bed. His claim on appeal was that his wife had shot herself while in bed under the covers. He asserted that had his trial attorney investigates this defense he would have learned that there was gun powder residue under the covers which supported his theory that she killed herself and it was impossible for the gun powder residue to have got under the blankets from across the room where the prosecution alleged he was standing when he shot his wife. A new trial was afforded this accused person. Petitioner Shaver asserts that he presented these claims on post conviction appeal to the Court of Appeals, and but for the Court's misapplication of federal law amounting to a contrary to/unreasonable application of clearly established federal law as decided by the US Supreme Court, that Court would not have rendered a constitutionally wrong decision denying post conviction relief which mandates habeas corpus relief by statute. Title 28 USC § 2254(d)(2).

ARGUMENT-VII

PETITIONER IS ENTITLED TO A NEW TRIAL WHERE NEW EVIDENCE WHICH WAS UNAVAILABLE FOR HIS JURY TRIAL ESTABLISH HIS ACTUAL INNOCENCE OF MURDER REQUIRING REVERSAL OR RELEASE FROM CUSTODY. US CONST. AMEND. XIV.

Habeas Corpus Inquiry:

Petitioner asserts that because the state trial court failed to follow normal criminal law procedures on relief from judgment motions by waiving the "good cause" component of the court rule, the appropriate standard of review to be applied to this claim is the abuse of discretion standard. Moreover, the inquiry on habeas review is whether or not the state trial judge applied an unreasonable application, resulting in a contrary to - reasonable wrong application of the US Supreme Court's ruling in *Schlup v Delo*, 115 S Ct 851 (1995); *House v Bell*, 126 S Ct 2064, 2084 (2006). Petitioner urge this Court to apply that standard and reverse the state courts' erroneous decision denying relief without a hearing. Accord, *Cullen v Pinholster*, 131 S Ct 1388, 1398-1399 (2011).

Introduction:

An accident occurred in 1998, where the victim died as a result of the 'hit and run' vehicle accident. Ms. Deborah Boothby died at the Hospital on 04-26-98. On 04-29-98, Dr. Millard, from the Van Buren Medical Examiner's Office, determined the cause of death was 'unknown' pending an autopsy. A final autopsy report was conducted by Dr. Waldemar A. Palutke, M.D. and his findings as to the cause of death of Ms. Boothby "Multiple Blunt Force Injuries, and the manner of death was 'undetermined." On May 05, 1998, Dr. Millard issued a death certificate number 1367508, and listed the cause of death as 'accident' resulting from a Pedestrian Struck by a vehicle on highway. Nine years later, without exhuming the body of Ms. Boothby, the cause of death was changed from vehicle/accident to homicide. No accident reconstructionist was performed by any police agencies to cause this change. The only information causing this change came from State Police Detective, Diane Oppenheim, who, allegedly, gathered additional information during her investigation causing the arrest of Scottie Shaver and his several codefendants for first degree murder, MCL § 750.316.

43

Petitioner was tried and convicted in a trial by jury. His trial attorney, Mr. Sappanos, did not move the trial court for an accident reconstructionist to determine what had changed in the ten year period from the death, to the trial. As a result, the jury in a first trial was unable to reach a verdict. In a second trial, he was convicted for the murder of Ms. Boothby. Following his conviction and direct appeal, he hired an Expert in the field of accident reconstructinist, Mr. Thomas G. Bereza, a retired State Police Accident Reconstructionist, who conducted an investigation into the events leading up to the vehicle accident on April 25, 1998. He concluded that, the initial determination was correct, the victim died as a result of being hit by a vehicle. His sworn affidavit served as new evidence for the post conviction motion. This new evidence, had it been known by the jury would have led to a different outcome of the second trial as it creates a reasonable doubt as to Petitioner's guilt and support his innocence status. cf *House v Bell*, supra.

### Evidence of Actual Innocence

The evidence presented at the first trial did not yield a conviction for the prosecution. At the second trial, defense counsel failed to motion the court for an expert in the field of accident reconstructionist to bolster his clients innocence defense. The theory at trial was that the death was an accident from a 'hit and run' vehicle not driven by Petitioner. The new evidence was unavailable for the jury due to counsel's ineffectiveness in not obtaining the Expert for testimony regarding an accident of the nature causing the death of Ms. Boothby on a rainy night where visibility was low. In fact, several witnesses observed the victim walking down the highway staggering, falling, and then was hit by a vehicle. (Tr XVII pp 146-147; pp 176-178). This testimonial evidence, coupled with the new evidence from the Expert Reconstructionist, dispels the prosecutor's theory that Petitioner and codefendant Ivory Shaver put Ms. Boothby in a car after beating her. (Tr VIII pp 30-32; pp 80-82).

This new evidence, had it been provided to the jury, would have completely exonerated Petitioner, as it was supportive of his claim of actual innocence. *Schlup v Delo*, supra. Further incarceration would lead to the conclusion that Petitioner is being subjected to cruel and unusual punishment. Federal courts have explained that it is a far greater crime to imprison the innocent, than to allow the guilty man to go free. *In re Winship*, 397 US 358 (1970); *Berger v United States*, 295 US 78;

44

55 S Ct 619; 79 L Ed 1314 (1935). This age old cliché attaches-significantly applies to this case.

It is well established constitutional law that the Eighth Amendment forbids "cruel and unusual punishment." Michigan's Constitution, the counter part of the US Const. Amend. VIII, prohibits "cruel and unusual punishment" under Const. 1963, art 1, § 16. These prohibitions against cruel and unusual punishment must also extend to an innocent person who is in prison for a crime he did not commit, and but for ineffectiveness of his trial lawyer in not having the new evidence made available for trial, he would not have been found guilty. *Mitchell v Reese,* 114 F 3d 571, 579, n. 12 (6th. Cir. 1997).

The US Court of Appeals for the Sixth Circuit observed that, the US Supreme Court precedent supports the view that, "fundamental miscarriage of justice occurs when the appellant submits new evidence indicating that a constitutional violation has probably resulted in a conviction of one who is actually innocent". Citing, *Schlup,* supra; *Herrera v Collins,* 506 US 390, 402 (1993); *Sawyer v Whitley,* 505 US 333, 339-342 (1992); *McCleskey v Zant,* 499 US 467, 494 (1991); *Murray v Carrier,* 477 US 478, 495-496 (1986), and *Williams v Bagley,* 380 F 3d 932 (6th. Cir. 2004). A miscarriage of justice entail "cruel and unusual punishment" where an innocent man in behind bars for a crime he did not commit. US Const. Am. VIII, Const. 1963, art 1, § 16.

Petitioner submitted new reliable documentary evidence, (Affidavit of Mr. Bereza), which was not provided to, or available for, the jury's consideration during trial, and proves-innocence, or calls into question the change in the cause of death. He has maintained his innocence of murder for numerous years during his incarceration. Other than the faulty investigation by Detective Oppenheim, and the elusive reason why the death certificates were changed by Dr. Millard, (Tr XII p 22), no other evidence supports the prosecution's theory that Petitioner caused the death of Ms. Boothby, unless this Court focus solely on the perjury admitted to by Ms. Burnette, (Tr XI pp 5-6; pp 16-17).

The true facts about the victim's death was never disclosed to the jury because Dr. Millard did not testify due primarily to trial counsel's ineffectiveness for not summoning him. The jury only heard Dr. Palutke's version of why he changed his opinion, not the cause of death, which was changed by Dr. Millard. (Tr XII p 22). Therefore, the verdict was based on perjury from two witnesses, one of whom was Ms. Burnette, (Tr XI pp 16-17), who flunked the 'polygraph test, claiming it was Petitioner who ran

over the victim, and the focus was thereafter on Petitioner. . The jury did not have the benefit of hearing the new evidence for their deliberation. cf. *Bagley*, 380 F 3d, at 973. Id.

Petitioner is mindful that *Herrera* is often cited for the proposition that a claim of actual innocence is not itself a constitutional claim. e.g. *Mansfield v Dormire*, 202 F 3d 1018, 1024 (8th. Cir. 2000). However, the appellate Court in *Carriger v Stewart*, 132 F 3d 463, 476 (9th. Cir. 1997), noted:

> "A majority of the US Supreme Court assumed, without deciding, that execution of an innocent person would violate the Constitution. A different majority of the Justices would have explicitly so held. Compare id. at 417, 113 S Ct at 869 (majority opinion) with id, at 419, 113 S Ct at 870 (O'Connor, J., joined by Kennedy, J., concurring) and id, at 430-437, 113 S Ct at 876-879 (Blackmun, J., joined by JJ Stevens and Souter, dissenting)," [Underlying Emphasis added].
> -*-

Minimally, *Herrera*, allows for the possibility that a *truly persuasive* demonstration of "actual innocence" made after trial [would] ... warrant federal habeas relief, although the threshold showing of such an assumed right would necessarily be extraordinarily high. Id. at 417; *United States v Quinones*, 313 F 3d 49, 52 (2d Cir. 2002); *Williams v Bagley*, 380 F 3d, at 973. Michigan, however, has yet to address such a posture under Const. 1963, art 1, § 16.

This habeas corpus case presents such a question which should be address by the Judiciary. Otherwise Michigan, is allowing an innocent man to languish in prison for a crime he did not commit. The trial court deciding his actual innocence claim, simply stated:

> As to Dr. Palutke, the record reflects defense counsel did cross examine him on his change of opinion from accidental death to homicide, (Tr XIV, pp 62-67; pp 77-88). Furthermore, defense counsel engaged the service of an expert forensic pathologist, Dr. Brian Hunter, who testified at trial on Defendant's behalf and advanced the same theory of hit-and-run Defendant asserts today, (Tr XVII p 83-89). (Opinion p 10, ¶ 6). The judge failed to consider that the jury was not afforded an opportunity to hear the new evidence from the expert reconstructionist, which is a supporting theme of 'hit-and-run.'
> ***

Consequently, a constitutional violation has resulted in the conviction of an innocent person, justice demands relief even in the absence of a showing of cause for any subsequent default, *Murray*, supra, 477 US, at 496. The case of *Murray v Carrier*, when read *in tandem* with the post conviction procedures of MCR 6. 508(D)(3)(b)(iii), would preclude any procedural bar preventing the State Courts from granting relief. Other than the 'unreasonably-wrong' application of *Schlup v Delo, House v Bell*, supra, Petitioner had a very likely chance of reversal on his post appeal, by constitutional mandate.

46

Mich. Const. 1963, art 1, §§ 16,17; US Const. Ams. VIII and XIV.

Petitioner asserts that the *Carrier* Court noted, for the most part, "victims of fundamental miscarriage of justice will meet the cause and prejudice standard", and it held that, in some cases, "the principle of comity and finality that formulates the concept of cause and prejudice, must yield to the imperative of correcting a fundamentally unjust incarceration." Id, at 495-496 (quoting, *Engle v Isaac*, 456 US 107, 135 (1982). This cruel and unusual punishment should be corrected by Petitioner's release from the unlawfully custody of Respondent. US Const. Am XIV.

To illustrate that Petitioner Shaver was wrongfully convicted, he must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented. In this case, the sworn affidavit of Mr. Bereza, is evidence that sufficiently undermine the second trial's outcome. (Affidavit, p 2, ¶¶ 3-4). cf. *Schlup*, 513 US, at 327; *Williams v Bagley*, 380 F 3d, at 973.

Petitioner did not order Ms. Burnette to run over the victim, he did not participate in any beating of the victim. He is actually innocent of this murder. In *Smith v Cain*, infra, the Supreme Court reversed a horrendous murder conviction because of eyewitness statements withheld from the jury. The Court reasoned that the evidence was material because there was a reasonable probability that, had the evidence been disclosed, the results of the proceedings would have been different. cf. *Cone v Bell*, 556 US 449, 469-470; 173 L Ed 2d 701 (2009), where the Court opined:

> "A reasonable probability means that the likelihood of a different results is great enough to undermine confidence in the outcome of the trial. cf. *Kyles v Whitley*, 514 US 419, 434; 115 S Ct 1555; 131 L Ed 2d 490 (1995). Evidence impeaching an eyewitness's testimony may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *United States v Agurs*, 427 US 97, 112-113; 96 S Ct 2392; 49 L Ed 2d 342 (1976)." Id. 132 S Ct, at 628-629.
> -*-

There is no eyewitness testimony linking Petitioner to the crime, other than the 'perjury' by Ms. Burnette, which was procured by Detective Diane Oppenheim, who failed to keep any records of her investigation into the case. Thus, a new trial is mandated. US Const. Am.XIV; *Smith v Cain*, 132 S Ct, at 631. Petitioner's petition should be granted pursuant to Title 28 USC § 2254(d)(1) and (d)(2), as the State Courts misapplied the clearly established law as determined by the US Supreme Court, such as *House; Schlup,* and *Murray v Carrier*, all of which deals with claims of actual innocence.

47

## ARGUMENT-VIII

PETITIONER IS ENTITLED TO A NEW TRIAL WHERE THE STATE TRIAL JUDGE ABUSED HIS JUDICIAL DISCRETION BY CIRCUMVENTING A SIXTH AMENDMENT RIGHT TO CONFRONT A SPECIFIC WITNESS DISPLAYING JUDICIAL BIAS AGAINST HIM. US CONST. AMENDS. VI AND XIV.

### Habeas Review and Inquiry:

On habeas corpus review, the inquiry is whether or not the state trial judge's ruling was contrary to, or an unreasonable application of clearly established federal law as decided by the US Supreme Court on confrontation-cross examination of witnesses against the accused. That is, was the ruling contrary to *Crawford v Washington,* 541 US 36; 158 L Ed 2d 177; 124 S Ct 1354 (2004), citing, *Lill v Virginia,* 527 US 116, 134; 144 L Ed 2d 117 (1999): *Bruton v United States,* 391 US 123, 126-128; 88 S Ct 1620; *Douglas v Alabama,* 380 US 415, 418-420; 13 L Ed 2d 934 (1968).

It is clearly established that the inquiry involving a trial judge's misconduct is a question of constitutional law that is reviewed de novo. *People v Pipes,* 475 Mich 267, 274; 715 NW 2d 290 (2006). Additionally, once the reviewing court has concluded that judicial misconduct has denied the defendant a fair trial, a structural error has occurred and automatic reversal is required. *Arizona v Fulminante,* 499 US 279, 309; 111 S Ct 1246 (1991). The inquiry in this case is whether the conduct of the trial judge, by allowing codefendant's statement into the trial by testimony from a prosecution's witness who had a motive to lie, deprived Petitioner of his right to a fair trial, by the prejudice of the testifying witness. *People v Banks,* 438 Mich 408; 475 NW 2d 769 (1991). [Reversible error because of prejudice]. These state court cases supports Petitioner's legal posture.

### Intorduction

Petitioner was tried twice in this case. The first trial ended in a hung jury. The second trial ended in a conviction of first degree murder. Prior to the trials, an evidentiary hearing was conducted on May 09, 2011, with respect to the issue of codefendant Ivory Shaver's alleged statements to a fellow prison inmate, Adrian Travier. Judge Richard R. Lamb, had already ruled that this statement would not be allowed in a codefendant's trial who was being tried separately. At the conclusion of

48

the evidentiary hearing, Judge Lamb issued his findings and ruled that the statement could be

testified to by Adrian Travier. (Hr. Tr. pp 59-62). Specifically, Judge Lamb noted on the record that:

> I -- as I've indicated, I don't see anything that says there's antagonistic defenses so I recall from the last trial that even with the testimony from Defendant Gill, there was nothing that appeared to be antagonistic to the theories advanced by Ivory Shaver and Scottie Shaver. This case is different because at the last trial we didn't have Mr. Travier as a witness and the statements that he made -- or not he, but the statements that Mr. Ivory Shaver made to Mr. Travier, which has been the subject of an earlier ruling and concern with the defense attorneys, um, but taking into account the factors of my finding on the admissibility of the declarations against penal interest, that's an evidentiary question for admissibility. The weight that's going to be given to that testimony will be determined by the fact finders who in this case will be a jury and the jury will be instructed as they were in the last trial, each Defendant's case, although the Defendants if they were tried jointly would all be sitting at the same trial, that each case has to be evaluated individually and there's -- there's an instruction that's usually requested and given that mere presence at the scene of a crime, even if someone knows a crime is occurring, does not make that person guilty unless that person joins in the acts, A-C-T-S, along with the necessary criminal intent to render that particular person guilty of that offense and there may be other limiting instructions. (Hr. Tr. p 60).

> I don't know. I can't anticipate it here, but at this point in time the difference, even with Mr. Travier's statement being admissible, is something that can come in under the declaration against penal interest and under the Michigan ruling on that rule and it comes in as substantive evidence against all three codefendants, but that's because of the evidentiary rules in Michigan and the rules that this Court must follow, and as I say, jurors are told evaluate the evidence as against each particular defendant and their cases are to be evaluated on an individual basis and jurors are presumed to follow the instructions of the Court, so because the rules of evidence in Michigan is somewhat different than what the Federal Courts follow and because this Court must follow the Michigan Supreme Court decision and because if this case were tried three times, the same evidence would come in as to each Defendant. So taking into account the Court's resources and the timing of trial and the right of both the People of the State of Michigan and the Defendants to a fair trial, I won't grant a severance as to the trials or I won't grant individual juries, so if you have -- Counsel, you'll have plenty of time to think about this, but if you have requested instructions which are appropriate for the jury, I'll certainly entertain them and if -- I'm revisiting this now because there's changed circumstances from the last time I ruled on this motion and if you -- if your position changes with reference to whether or not a particular Defendant would testify and if you think that would impact come of the decisions I'm talking about here, of course bring it up, but I'm operating right now under the premise that all of the Defendants will be exercising their -- their privilege against testifying, but if that changes, let me know and we can address it. (Hr. Tr pp 61-62).
> ***

Because of this erroneous ruling, Petitioner had no way of testing the recollection of the

witness for truthfulness as to the alleged statements by Ivory Shaver. Although the statement

pertained to Ivory, the spill over affect of the prejudicial nature of the statements harmed Petitioner

as the court indicated, Mr. Travier did not testify at the first trial. The question was not whether the

statements was allowable under the rules of evidence, the constitutional inquiry was the confrontation

aspect of the Sixth Amendment. This was addressed in *Lilly v Virginia*, 527 US 116; 119 S Ct 1887

(1999), where the Court explained that, an accomplice testimony is not admissible in joint trials, when the confessor exercise his Fifth Amendment right not to testify. Therefore, allowing Adrian Travier to testify regarding the 'confession' made by Ivory was a violation of the right to confront an accuser. *People v Pipes*, 475 Mich 267; 715 NW 2d 290 (2006). [a Sixth Amendment violation].

<u>Joint Trials and the Confrontation Clause</u>

Here, there is no dispute that Petitioner was jointly tried with his codefendants. There is no dispute that codefendant Ivory Shaver exercised his Fifth Amendment privilege not to testify. His statement to Travier, which amounts to a 'confession' should not have been admitted under the confrontation clause because Petitioner had no opportunity to confront Ivory regarding the 'confession.' This is exactly what the confrontation clause is designed to prevent. <u>Accord,</u> *Bruton v United States*, 391 US 123, 126 (1968), where the Court opined:

> "The confession of a codefendant who exercise his/her Fifth Amendment right not to testify is not admissible against the other defendant because that defendant has no opportunity to cross-examine the codefendant. The admission of a codefendant's confession at a joint trial under these circumstances violate the other defendant's right to confrontation if the confession incriminates that defendant." 391 US, at 126. <u>Ibid.</u>
> _-*-_

In the instant case, Judge Lamb agreed to instruct the jury regarding Ivory's 'confession' to witness Travier. This did not purge the taint of the constitutional violation. In fact, the US Supreme Court addressed this factor in *Bruton*, and opined:

> "An instruction that the jury should not consider the confession as evidence against the defendant is insufficient to render the confession admissible." 391 US, at 137. <u>Id.</u>
> _-*-_

Here, *sub judice,* the 'confession' to Travier by Ivory did indeed implicate Scottie as one of the persons involved. The spill over affect from Travier's testimony was prejudicial to Petitioner because the term 'nephew' was easily recognized by the jury as Scottie Shaver. This was prejudicial error and Judge Lamb simply disregarded the constitutional right of Petitioner. The judge's ruling to allow the statement by way of the rules of evidence was violative of the US Supreme Court's ruling in *Richardson v Marsh*, 481 US 200, 211 (1987); *Gray v Maryland*, 532 US 185, 192 (1998). Witness Travier did not say Scottie's name, but the jury was not fooled because he was convicted. Unlike the first trial where the testimony of Travier was not used, that jury could not find guilt. Thus, Travier's

testimony was indeed prejudicial as to Petitioner, the 'nephew and codefendant' of Ivory Shaver. (Tr XV pp 93-95). [Ivory, allegedly, confided in Travier that he, his nephew, Ed, and Shevy were involved in beating a white girl to death, and running her over with an automobile]. This amounted to a 'confession' by Ivory, used against Petitioner causing the conviction of an innocent person.

The Michigan Supreme Court addressed such a claim in *People v Banks*, supra and determined that such an error is significantly prejudicial. In *People v Pipes*, the Court ruled that the error was a violation of the Sixth Amendment right of confrontation, but was not prejudicial. Here, however, the error was not harmless beyond any reasonable doubt as it not only violated the constitutional right to confront, it was the deciding factor in the case because there was no verdict from the first trial where the error was not committed. Thus, Judge Lamb created a judicial partiality scene when he allowed the 'confession' to enter the trial under the guise of the MRE's. cf. *People v Stevens*, 497 Mich 898; 855 NW 2d 752 (2014); *People v Stevens*, 2015 Mich Lexis 1637, at * 7, citing *People v Conley*, 270 Mich App 301, 308; 715 NW 2d 377 (2006).

This case is on equal footing as the case of *Cruz v New York*, 481 US 186, 193 (1987), where the US Supreme Court applied the *Bruton* ruling and opined:

> "The codefendant's confession must be excluded even when it merely corroborates the defendant's own confession." 481 US, at 193, Id.
> _*_

Petitioner Shaver asserts that the testimony provided by Travier was nothing less than a 'confession' from Ivory. This testimony implicated him and the others in the alleged criminal episode. The ruling by Judge Lamb to allow such a statement to enter the joint trial violated clearly established law by the US Supreme Court regarding such an issue. cf. *Crawford v Washington*, 541 US, at 68; *Davis v Washington*, 547 US, at 822; *Whorton v Bockting*, 127 US 1173, 1179 (2007). It is noteworthy to mention that the confrontation clause applies to testimonial hearsay *United States v Moncivias*, 492 F 3d 652, at 659 (6th. Cir. 2007). Ivory's 'confession' to Travier was testimonial because it was induced under the belief that Travier obtained this 'confession' for use at a judicial proceeding, for the purpose of currying favors from the prosecution for himself and he tried to induce another prisoner to join him in the episode. (Tr XVIII pp 142-145; pp 149-154; pp 178-184;

51

pp 205-209) [Testimony from Robert Boyd]. Therefore, the trial judge obliterated the Constitutional rights of Petitioner when he allowed the testimony of Travier. This judicial abuse, and conduct mandates a new trial. *People v Anderson,* 446 Mich 392, 404-405; 521 NW 2d 538 (1994); *Stevens,* 2015 Mich Lexis, at \*22. See too, *In re Murchison,* 349 US 133, 136-139 (1955) -- [Due process requires that a judge possess neither 'actual' nor 'apparent' bias]. A new trial should be granted. US Const. Amends. VI, XIV.

This case, like *Crawford v Washington,* supra, should be held to the strictures of the constitutional mandate of the Sixth Amendment guarantee. Here, as in *Crawford,* the state court allowed a testimonial statement, allegedly made by codefendant Ivory Shaver to a prison inmate. The statement was allowed against Petitioner even though he had no apparent opportunity to cross examine the person who allegedly made the out of court statement. This alone is sufficient to make out a violation of the Sixth Amendment. *Crawford,* 124 S Ct, at 1374.

Petitioner urge this Habeas Corpus Court to find that the state court's adjudication on this claim was not only contrary to and an unreasonable application of clearly established law, i.e. Crawford v Washington, supra, but was constitutionally wrong in light of the guarantee of confrontation and cross examination. Indeed, the *Crawford,* Court clearly stated that: "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation". cf 541 US, at 68; 124 S Ct, at 1734. Ibid

Accordingly, habeas relief is warranted on this claim in accords with 28 USC § 2254(d)(2); *Roberts v Russell,* 392 US 293, 294-295; 88 S Ct 1921 (1968); *Bruton v United States,* 391 US, at 126-128 [We similarly excluded accomplice confession where the defendant had no opportunity to cross examine]. These cases were cleraly established law as determined by the US Suprenme Court, at the time of Petitioner's state court jury trial and for the State to allow the out of court statement/confession of codefendant to be used against Petitioner was clearly a violation of the Sixth Amendment right to confrontation where the codefendant did not testify. US Const. Amend. VI.

## RELIEF REQUESTED

WHEREFORE, and in light of all the foregoing listed and the severe constitutional violations having occurred in the state court jury trial, Petitioner prays that this habeas court will grant his petition and issue an order that the state release him on the insufficiency of the evidence claim without a retrial as no other evidence exists to support the case going to a jury which would only amount to reinstatement of the former unconstitutional conviction. Accordingly, relief is mandated under Title 28 USC § 2254(d)(1) and (d)(2). US Const. Amend. XIV.

Respectfully submitted,

Dated: Aug. 30, 2017

Scottie Bernard Shaver, #405867
In Propria Persona
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036

Scottie Shavee #405867

L.C.F

141 Fiest St

Coldwater MI 49036



U.S District Court

399 Fed. Bld

110 Michigan St NW

Grand Rapids MI
49503