# 1

**POOR QUALITY
- ORIGINALS ATTACHED -**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTTIE BERNARD SHAVER,

        Petitioner,

v.

BONITA HOFFNER,

        Respondent.

_____/

Case No 1:17-cv-_____
Hon. _____
Magistrate. _____

**EXHIBITS/ATTACHMENTS**
For Habeas Corpus Petition and Addendum

Dated: August 30, 2017

## HABEAS CORPUS PETITION EXHIBITS
### I N D E X

Exhibit-A  ........................................................ Michigan Supreme Court's Order
of July 25, 2017

Exhibit-B  ........................................................ Court of Appeals Order
of September 22, 2016

Exhibit-C  ........................................................ Van Buren Circuit Court's Order
of December 4, 2015

Exhibit-D  ........................................................ US District Court Order of 10-07-14
Dismissing the Petition without Prejudice

Exhibit-E  ........................................................ Affidavits of Mr. Thomas G. Bereza
[Expert Accident Reconstructionist]

Exhibit-F  ........................................................ Affidavit of Codefendant Ivory Shaver
regarding Adrian Travier

Exhibit-G  ........................................................ Van Buren Medical Examiner, Dr. Millard
Cause of Death on April 29, 1998

Exhibit-H  ........................................................ Final Autopsy Report on Boothby death
by Dr. Waldemar A. Palutke, on April 27, 1998

\*\*\*\*\*

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 25, 2017

Stephen J. Markman,
Chief Justice

154619 & (17)(19)

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
  Plaintiff-Appellee,

v

             SC: 154619
             COA: 332920
             Van Buren CC: 10-017031-FC

SCOTTIE BERNARD SHAVER,
  Defendant-Appellant.

_____/

   On order of the Court, the motion for miscellaneous relief is GRANTED.  The application for leave to appeal the September 22, 2016 order of the Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).  The motion to remand is DENIED.





I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 25, 2017
_____

s0717

            Clerk

EX- A

# Court of Appeals, State of Michigan

## ORDER

People of MI v Scottie Bernard Shaver

Docket No.    332920

LC No.    10-017031-FC

Jane E. Markey
Presiding Judge

David H. Sawyer

Mark T. Boonstra
Judges

The Court orders that the motion to waive fees is GRANTED and fees are WAIVED for this case only.

The Court further orders that the motion to remand for an evidentiary hearing is DENIED.

The Court orders that the delayed application for leave to appeal is DENIED because defendant has failed to establish that the trial court erred in denying the motion for relief from judgment.

*Jane E. Markey*
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

SEP 2 2 2016
Date

Chief Clerk

Ex-B

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY

PEOPLE OF THE STATE OF MICHIGAN,
Plaintiff,

HON. KATHLEEN M. BRICKLEY

v

File No. 10-17031-FC

SCOTTIE BERNARD SHAVER, #405867,
Defendant.

**ORDER DENYING
DEFENDANT'S MOTION FOR
RELIEF FROM JUDGMENT**

BILL SCHUETTE (P32532)
Attorney General
G. Mennen Williams Building, 7th Floor
525 W. Ottowa St.
P.O. Box 30212
Lansing, MI 48909

SCOTTIE SHAVER, #405867
Defendant In Pro Per
Lakeland Correctional Facility
141 First St.
Coldwater, MI 49036

Courtesy Copy To:
MICHAEL J BEDFORD (P48853)
Van Buren County Prosecutor
212 E. Paw Paw St.
Paw Paw, MI 49079

At a session of said Court held in the Courthouse,
Village of Paw Paw, Michigan on December 4, 2015.

PRESENT:  HONORABLE KATHLEEN M. BRICKLEY, CIRCUIT JUDGE

### INTRODUCTION

On June 9, 2011, a jury convicted Defendant Scottie Shaver of first-degree murder. He is currently serving with the Michigan Department of Corrections a sentence of life without the possibility of parole. Having exhausted his opportunities to appeal under subchapters 7.200 and 7.300 of the Michigan Court Rules, Defendant brings this Motion for Relief From Judgment pursuant to MCR 6.501, *et. seq.* He claims entitlement to relief on various grounds. He also requests an evidentiary hearing and the appointment of counsel. For the reasons stated below, the court concludes that Defendant's motion and requests should be denied.

Ex-C  i

## STATEMENT OF FACTS

In 2010, Defendant Scottie Shaver and three co-defendants were tried by jury for the killing of Deborah Boothby.  On October 10, 2010, a jury convicted one of the co-defendants of first-degree murder.    Another jury deadlocked on the charges against Defendant and the other co-defendants.  In 2011, Defendant and the remaining co-defendants were retried by jury. On June 9, 2011, all were convicted of first-degree murder. The court thereafter sentenced Defendant to life without the possibility of parole.

Defendant appealed his conviction and sentence to the Michigan Court of Appeals.  On September 12, 2013, in an unpublished opinion, that court affirmed Defendant's conviction.  On February 28, 2014, the Michigan Supreme Court considered and denied Defendant's application for leave to appeal the judgment of the Court of Appeals.

On April 3, 2015, Defendant filed the instant Motion for Relief From Judgment, after having had an insufficient motion returned by this court.  Defendant requests in his motion an evidentiary hearing and a new trial.  He also requested the appointment of counsel, a request this court denied on May 11, 2015. This court ordered the prosecuting attorney to file a response and the prosecuting attorney has done so.  On October 9, 2015, Defendant filed a Motion to Amend 6.500. This court granted that motion. The court allowed the prosecuting attorney an opportunity to respond, but the prosecuting attorney elected not to do so.

## BASIS FOR REVIEW

Subchapter 6.500 of the Michigan Court Rules establishes the procedures for pursuing post-appeal relief from a criminal conviction.  This subchapter is the exclusive means to challenge a conviction in Michigan once a defendant has exhausted the normal appellate process or when the conviction and sentence are not subject to appellate review under subchapter 7.200 or 7.300. MCR 6.501.  The Michigan Supreme Court has held that post conviction relief is reserved only for the "extraordinary case in which a conviction constitutes a miscarriage of justice." *People v Reed*, 449 Mich 375, 381; 535 NW2d 469 (1995).

MCR 6.508(D) states that a defendant "has the burden of establishing entitlement to the relief requested."  MCR 6.508(D) also sets out three procedural bars to relief from judgment. *People v McSwain*, 259 Mich App 654, 679; 676 NW2d 236 (2003).  The court rule states that a court may not grant relief from judgment if: (1) the defendant's motion seeks relief from a judgment that is still subject to challenge on appeal under subchapters 7.200 or 7.300;  (2) the defendant's motion alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under subchapter 6.500 "unless the defendant establishes that a retroactive change in the law has undermined the prior decision"; or  (3) the defendant's motion "alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter."    MCR 6.508(D); *McSwain*, 259 Mich App at 679-680.

2

Relief may not be granted for non-jurisdictional claims under the third bar unless the defendant demonstrates both good cause for failure to have raised the grounds for relief on appeal or in a prior motion under the subchapter and actual prejudice from the alleged irregularities that support the claim for relief. MCR 6.508(D)(3); *People v Watroba*, 193 Mich App 124, 126; 483 NW2d 441 (1992). The court may waive the "good cause" requirement if it concludes that there is "a significant possibility that the defendant is innocent." MCR 6.508(D). "Actual prejudice" means the defendant would have had a "reasonably likely chance of acquittal" following trial but for the alleged error, or the "irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case." MCR 6.508(D)(3)(b)(i) and (iii).

If the procedural rules set forth above do not bar recovery, the court may proceed in any lawful manner and may apply the rules applicable to civil or criminal proceedings, as it deems appropriate. MCR 6.508(A). After reviewing the motion and response, if any, as well as the record, the court determines whether an evidentiary hearing is required. MCR 6.508(B). If the court decides an evidentiary hearing is not required, it may rule on the motion or allow oral argument, at its discretion. *Id.*

The Michigan Supreme Court has held that post conviction relief is reserved only for the "extraordinary case in which a conviction constitutes a miscarriage of justice." *Reed*, 449 Mich at 381. The trial court's grant or denial of relief from judgment is reviewed for an abuse of discretion and the findings of fact supporting its ruling are reviewed for clear error. *McSwain*, 259 Mich App at 679-80.

## DISCUSSION

The court has reviewed the motion, amendment, and response, as well as the record. The court has determined that an evidentiary hearing is not required. As indicated, the court will not appoint counsel. MCR 6.508(B), 6.505(A).

In his pleadings, Defendant raises a myriad of issues concerning what he describes as newly discovered evidence, *Brady* violations, prosecutorial misconduct and due process violations, insufficient or improper evidence, jury tampering, and ineffective assistance of both trial and appellate counsel. It appears that Defendant's claims are posited under MCR 6.508(D)(2) and (3). As it relates to MCR 6.508(D)(3), the court does not conclude that there is a significant possibility that Defendant is innocent, so the court will not waive the "good cause" requirement.

## I.    "NEWLY DISCOVERED" EVIDENCE

Defendant presents a letter and affidavits from expert accident reconstruction specialist Thomas Bereza. Mr. Bereza interviewed Defendant and his trial counsel and reviewed the case and investigative materials he received from them. It is unclear whether he reviewed the transcripts of either trial and it appears he did not interview witnesses. From what he did review, he opines that the death was not a murder but rather a hit and run accident for which Defendant is not responsible. Defendant asserts as his good cause under MCR 6.508(D)(3)(a) that this is newly

discovered evidence entitling him to relief.  He avers that this evidence meets the *Cress* Test and "[i]f the jury would have heard this testimony, from someone trained to determine this type of event, it is possible one juror would have accepted this evidence.... [m]aking a different result possible. "

"For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) "the evidence itself, not merely its materiality, was newly discovered"; (2) "the newly discovered evidence was not cumulative"; (3) "the party could not, using reasonable diligence, have discovered and produced the evidence at trial"; and (4) "the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003).

Defendant fails to explain how the evidence itself was newly discovered. As the prosecution illustrates, Mr. Bereza reviewed materials he obtained from trial defense counsel to form his opinion. Nothing in the letters or affidavits suggests that the reviewed materials were unknown to Defendant prior to trial. In fact, it appears that they were known to Defendant prior to trial. It cannot be said, therefore, that they are "newly discovered."

He also fails to explain how he could not, using reasonable diligence, have discovered and produced the evidence at trial.   Certainly Defendant could have engaged an accident reconstructionist to review the case prior to trial and the record supports that the court was willing to grant expert witness fees.  In fact, Defendant argues elsewhere in his pleading that defense counsel was inadequate for failing to produce such an expert based on these materials. Defendant cannot logically argue that the evidence could not have been discovered using reasonable diligence and also argue that counsel was ineffective for failing to discover it. As well, based on the other evidence produced at trial, and considering the anticipated value of Mr. Bereza's testimony once tested by cross-examination, Defendant cannot show that his opinion would make a different result probable on retrial. Defendant fails to present good cause.  He also fails to show actual prejudice pursuant to MCR 6.508(D)(3)(b)(i) and (iii).  For these reasons, and because the court finds the argument meritless, Defendant is not entitled to relief on this issue.

## II.    *BRADY* VIOLATION

Defendant argues *Brady* violations.  These appear to be based on allegations that police influenced a witness, Adrienne Burnette, to lie and that the government should have hired a particular type of expert to reconstruct the scene.

To establish a constitutional *Brady* violation, a defendant must establish that (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material. *People v Chenault,* 495 Mich 142, 155; 845 NW2d 731 (2014) citing *Strickler v Greene*, 527 US 263, 281-282; 119 SCt 1936; 144 LEd2d 286 (1999); *Brady v Maryland*, 373 US 83; 83 SCt 1194; 10 LEd2d 215 (1963).

As to the testimony of Ms. Burnette, Defendant appears to bring this claim under MCR 6.508(D)(2).  The prosecution aptly notes that this issue was raised and decided against the Defendant on appeal:

4

"We also reject Scottie's argument that Burnette's testimony was untrustworthy and should not have been believed.... Scottie's argument regarding the credibility of Burnette's testimony has no merit....

* * *

Next, Scottie argues that there was insufficient evidence to support his conviction because Burnette's testimony was false. We find this argument unavailing because credibility questions are for the jury and will not warrant reversal on appeal. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support Scottie's conviction, as discussed, *supra*.

Next, Scottie raises an apparent prosecutorial misconduct claim because he alleges that the prosecution intentionally introduced perjury when it called Burnette to testify. This issue was not raised during trial and is accordingly reviewed for plain error affecting defendant's substantial rights. We conclude that the record does not support Scottie's claim. The record contains no evidence to support defendant's claim that the prosecution admitted known perjury or that any witnesses testified to events of which they had no personal knowledge, and Scottie does not cite the record to support his argument. Moreover, questions regarding the truthfulness of witnesses are questions for the finder of fact. Thus, because defendant simply fails to support his claim in any way, and because there is nothing in the record to suggest any prosecutorial misconduct, we conclude that defendant is not entitled to any relief."
*People v Shaver*, unpublished opinion of the Court of Appeals, issued September 12, 2013 (Docket Nos 305944, 305945, 306288) p. 21 (internal citations omitted).

As well, Defendant has not argued, let alone established, any retroactive change in the law which has undermined the Court of Appeals decision. Defendant's issue lacks merit and he is not entitled to relief under MCR 6.508(D)(2).

Defendant also asserts as a *Brady* violation the government's failure to retain an appropriate accident reconstructionist. The prosecution correctly observes that law enforcement has no constitutional duty to hire a particular type of expert preferred by the defense. Also, there can be no *Brady* violation when the prosecution never possessed the evidence Defendant claims was withheld. There was simply no evidence suppressed by the prosecution. In addition, the prosecution properly points out the deficiencies in the foundation of Mr. Bereza's opinion. As a result, Defendant has not established that accident reconstructionist testimony would be favorable or material. This claim is also without merit and Defendant has shown neither good cause nor actual prejudice.

## III.   PROSECUTORIAL MISCONDUCT AND DUE PROCESS VIOLATIONS

Defendant raises various violations of due process and right to confrontation, as well as prosecutorial misconduct.  He raises these under headings four, five, six, and seven of his brief concerning the testimony of five witnesses: Adrienne Burnette, Adrian Travier, Detective Diane Oppenheim, Michelle Ruiz, and Medical Examiner/Forensic Pathologist Dr. Palutke.  The court will address each of in turn.

### a.   TESTIMONY OF ADRIENNE BURNETTE

Defendant raises a prosecutorial misconduct claim alleging the prosecution intentionally introduced perjury when it called Adrienne Burnette to testify.  He asserts his right to a fair trial was infringed by the introduction of this perjured testimony.   As noted earlier, claims regarding the testimony of Ms. Burnette were raised on appeal by both appellate counsel and by Defendant in his Standard 4 Brief. The claims regarding her testimony were decided against him. See *People v Shaver*, *id.*

Defendant has not argued, let alone established, any retroactive change in the law which has undermined the Court of Appeals decision regarding the testimony of Ms. Burnette. Therefore, Defendant is not entitled to relief under MCR 6.508(D)(2). As noted by the Court of Appeals, this argument is unavailing.

### b.   STATEMENTS OF IVORY SHAVER  TO ADRIAN TRAVIER

Defendant raises a prosecutorial misconduct claim relating to the statements Ivory Shaver made to Adrian Travier.  As these same claims were raised on appeal and decided against Defendant, this argument appears to be made pursuant to MCR 6.508(D)(2).

> "[T]he statements [of Ivory Shaver to Travier] were properly admitted against both Ivory and his co-defendants. Accordingly, the trial court did not abuse its discretion [by admitting co-defendant Ivory's statement to Travier as evidence against his co-defendants]." *People v Shaver, supra* p.18.

*This was not raised on Appeal. Raised before trial*

Defendant has not argued, let alone established, any retroactive change in the law which has undermined the Court of Appeals decision. Therefore, Defendant is not entitled to relief on this issue. MCR 6.508(D)(2).  Even if it was not raised and decided against him, Defendant has failed to show good cause or actual prejudice so the claim fails under MCR 6.508(D)(3).  As well, the claim is without merit.

### c.   STATEMENTS OF BOBBY WALKER JR. TO  DETECTIVE DIANE OPPENHEIM

Defendant argues he was denied due process when Detective Diane Oppenheim was allowed to testify about testimonial hearsay statements made to her by confidential informant Bobby Walker Jr. He also argues his right to confrontation was violated when Mr. Walker was not produced for trial.

The Prosecution properly points out that Defendant fails to support his argument with citations to the record where Mr. Walker's statements appear. The only citation Defendant does provide in his amendment in support of this argument is a citation to witness Glen Moore's testimony, not Detective Oppenheim's testimony. Instead, the prosecution has directed the court to Det. Oppenheim's testimony, which reveals that there was no statement from Bobby Walker introduced at trial and that the information was provided to show its effect on law enforcement. TT, VII, 143-144. Accordingly, it was neither hearsay nor violative of Defendant's rights of confrontation. It should be noted that other statements were elicited on cross-examination in response to defense questioning. These appear to apply Mr. Walker's statements. In any event, this was clearly trial strategy designed to criticize the quality of the investigation. As well, the prosecution had no obligation to produce Mr. Walker. TT, VII, 178.

Defendant has failed to establish entitlement to relief under MCR 6.508(D)(3) and this issue lacks merit.

### d. STATEMENTS OF SHEVOLIER GILL TO MICHELLE RUIZ

Defendant argues he was denied due process when Michelle Ruiz was allowed to testify about hearsay statements made to her by co-defendant Shevolier Gill. This issue was raised in Defendant's appeal in connection with his severance argument. This issue was decided against him:

> "Shevolier's testimony did not implicate any of the other defendants in the murder, and she denied making the statement about it being a trip to be there when someone is killed. Moreover, even the testimony that Shevolier allegedly made such a statement is not prejudicial to Scottie because it does not mention him or any other defendant. Finally, review of the record demonstrates that the trial court correctly determined that if three separate trials were held it would be necessary to repeat the evidence three times resulting in an unnecessary expenditure of judicial resources. Thus, because defendant does not support his claims of prejudice with specific evidence, and because there is nothing in the record to suggest that defendant was prejudiced by the joint trial, we conclude that the trial court did not abuse its discretion by denying defendant's motion for severance." *People v Shaver*, *supra*. p. 11.

Defendant has not argued, let alone established, any retroactive change in the law which has undermined the Court of Appeals decision. Therefore, Defendant is not entitled to relief on this issue. MCR 6.508(D)(2).Even if it was not raised and decided against him, Defendant has

failed to establish entitlement to relief under MCR 6.508(D)(3).  As well, this issue is without merit.

### e.  TESTIMONY OF DR. PALUTKE

Defendant argues he was denied due process when Dr. Palutke was allowed to give allegedly perjured testimony. This argument is threaded throughout the motion, and is based upon the doctor changing his initial findings from accidental death to homicide. Defendant notes: "The pathologist, within the initial trial, in whom changed its findings of Ms. Boothby's death being "accidental", to that of homicide after the statements of Adrienne Burnette to law enforcement, even though testimonial and physical evidence suggested otherwise (e.g., There were paint chips that was collected which came from two separate vehicles)."

The record does not support that Dr. Palutke committed any perjury, only that the expert reevaluated his initial opinion, made in 1998, after hearing the statements made by Ms. Burnette. The record is clear that defense counsel vigorously cross-examined Dr. Palutke about the change of his opinion. TT Vol. 14, pgs. 62-67, 72, 77-78.   This argument is unavailing and Defendant has failed to show entitlement to relief under MCR 6.508(D)(3).

## IV.   JURY TAMPERING

Defendant argues a violation of his constitutional rights when a court officer was allowed to sit in on jury deliberations. The record is devoid of any support for this argument and the court finds it to be without merit.  As well, Defendant has not established entitlement to relief under MCR 6.508(D)(3).

## V.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Weaved throughout Defendant's motion is the theme of ineffective assistance of trial counsel.  He asserts ineffective assistance of appellate counsel as his reason for failing to raise these issues previously.  He brings these claims now under MCR 6.508(D)(3).

In proving ineffective assistance of counsel, a defendant must overcome the presumption that the challenged action or inaction was a matter of strategy. *People v Leonard*, 224 Mich App 569, 592; 569 NW2d 663 (1997). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland v Washington*, 466 U.S. 668, 686; 104 S Ct 2052 (1984).  "Reasonably effective assistance" is the standard. *Id.* "A convicted defendant making a claim of ineffective assistance must identify the acts or omission of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.   not call Dr. Mallard
not Hiring Some to determine cause of accident

8

*me a fair and fair process*

### a. INSUFFICIENT INVESTIGATION

Defendant argues many areas in which defense counsel's "investigation" was insufficient. He makes sweeping claims that defense counsel failed to investigate Adrienne Burnette's testimony. He argues defense counsel should have called Glover Dandridge, Evita Rivera, and LaTisha Hollings as witnesses. He alleges that the Medical Examiner was a critical witness who was "somehow overlooked by counsel" who changed his findings "based solely on Ms. Burnette's perjured testimony." He argues that had defense counsel conducted an adequate investigation, the result of his trial probably would have been different.

An attorney has a duty to conduct a reasonable investigation, and failure to do so can amount to ineffective assistance of counsel. *People v Grant*, 470 Mich 477, 485-486; 684 NW2d 686 (2004). The investigation must be reasonably conducted to permit a strategic choice on what evidence to present. *Wiggins v Smith*, 539 US 510, 522-523; 123 SCt 2527; 156 LEd2d 471 (2003).

However, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Davis (On Rehearing)*, 250 Mich App 357, 368; 649 NW2d 94 (2002). The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 312; 688 NW2d 308 (2004). A defense is substantial if it might have made a difference in the outcome of the trial. *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990); *LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

*did not investigate incident*

The record reflects trial counsel did investigate Ms. Burnette's testimony. Counsel used the readily available evidence to impeach her credibility by questioning her extensively about her investigative subpoena testimony that was the basis for her perjury conviction. TT Vol. 12, pgs. 82-170. This cross-examination included an admission from Burnette that she lied under oath. TT Vol. 12, pg. 157. Defense counsel called witness Angela Goodwin to testify that when Burnette had made previous statements regarding the incident, she never implicated Defendant in the death. TT Vol. 17, pgs. 106, 109-112.

As to the witnesses Glover Dandridge, Evita Rivera, and LaTisha Hollings who were not called, the court finds the decision not to call them to be a matter of trial strategy. As well, none of the witnesses' testimony would have been outcome determinative. The court notes that there is inherent risk in calling any witness, and counsel must engage in a risk benefit analysis of each potential witness. Here, the prosecution properly highlights the many risks associated with these witnesses, and the minimal benefit in their proposed testimony. Furthermore, Defendant's portrayal of their testimony at the first trial is not complete, and omits testimony that would have been damaging to him had they been called at the second trial. *First trial ended in hung jury*

Defendant avers Mr. Dandridge testified there was no fight in the parking lot. However, Mr. Dandridge testified that there was a commotion in the parking lot and a group of 20 to 25 people on the north side of the parking lot, but that he could not see into the crowd. He also testified about the establishment's liquor license, and the importance of the liability attached to it. He testified it was important to get everyone off of the premises when the commotion started in the bar. He testified he knew the disturbance in the bar involved people fighting, pushing, and shoving, and knew about the commotion in the parking lot. However, he stated never saw any of those

involved in either incident nor did he see any actual punches thrown. He also stated he couldn't remember if Defendant, Ivory Shaver, Shevy Gill or Edward Foster were even at the bar that night. 2010 TT Vol. 7, 41-126.

Defendant avers Ms. Hollings testified that the victim was laying on her car after the altercation, and that she offered the victim a ride home that was rebuffed. While this is true, she only testified to this after being asked a leading question on cross-examination. On direct examination she did not mention that she had any contact with the victim in the parking lot. She also testified that during the investigation she was extensively questioned about whether or not she may have hit the victim. She also testified as to having a poor memory of the evening, as she repeatedly answered "I don't remember" to specific questions about the night. She also testified that when she went outside, she saw a big crowd in the parking lot and saw the Defendant, Ivory, and Shevy fighting and hitting the victim with fists in the center of the crowd. She testified she saw the victim fall to the ground more than once in the crowd. She was also asked about telling an officer the day after the incident that she didn't see any fight. 2010 TT Vol. 9, 164-199.

Ms. Holling's testimony conflicts with Defendant's portrayal of Mr. Dandridge's testimony. She clearly testified that there was a fight in the parking lot involving Defendant, Ivory, and Shevy fighting and hitting the victim. Mr. Dandridge didn't say there was "no fight" in the parking lot; he testified there was a commotion and a group of 20-25 people in the parking lot. His testimony is consistent with Ms. Holling's testimony, as he would not have been able to see into the middle of the crowd. He also testified he was watching the people due to liability concerns, which is consistent with the several witnesses who testified that there was a fight in the parking lot.

Contrary to Defendant's assertions, both Ms. Holling and Mr. Dandridge had motive to portray themselves in a positive light. Testimony that Mr. Dandridge watched the crowd break up and leave with no reason to call the police, and that Ms. Holling offered the victim a ride home after she was pushed off of her car, would insulate them from seeming indifferent to the violence that night. As well, it is clear they would have given testimony that would be damaging to Defendant. Both would have generally corroborated Ms. Burnette's version of events, and Ms. Holling would have confirmed that Defendant was in the middle of the crowd fighting with the victim.

Ms. Rivera testified that she was wasted when the bar cleared and doesn't remember the night with clarity. She testified that she didn't know or recognize any of the Defendants. Her impeachment of Ms. Burnette was equivocal at best, as she testified that it was inaccurate but possible that she and Ms. Burnette went to the bar together that evening. She also corroborates that there was a big crowd in the parking lot. 2010 TT, Vol. 14, 26-47.

While her testimony provides some impeachment value, it is clear that she would also confirm that there was a crowd in the parking lot in direct contradiction to Defendant's contention that there was no fight in the parking lot. Again, she also has a motive to avoid looking indifferent to the violence that night.

As to Dr. Palutke, the record reflects defense counsel did cross examine him on his change of opinion from accidental death to homicide. TT Vol. 14, pgs. 62-67, 72, 77-78. Furthermore, defense counsel engaged the services of an expert forensic pathologist, Dr. Brian Hunter, who

testified at trial on Defendant's behalf and advanced the same theory of hit-and-run Defendant asserts today. TT Vol. 17, pgs. 4-38, 83-89.

In his amendment, Defendant also alleges defense counsel should have called Dr. Mallard to testify why he changed his findings from accidental to homicide. However, the record shows that it was Dr. Palutke who changed his opinion from accidental death to homicide as discussed above. It is unclear who Dr. Mallard is and how he is connected to this case from Defendant's amendment and the record. As such, Defendant's argument as to Dr. Mallard is without merit.

In addition, defense counsel also engaged a private investigator who was paid significant sums of money to investigate Defendant's case. In sum, the record supports that defense counsel's investigation of law and facts relevant to plausible options for the defense allowed him to make strategic decisions on what evidence to present. Defendant's sweeping claims that defense counsel failed to investigate the testimony of Ms. Burnette are not supported by the record, and he points to no specific fact or law that defense counsel should have investigated that would have been outcome determinative in his case. The same can be said for his arguments regarding Dr. Palutke, Mr. Dandridge, Ms. Rivera, and Ms. Hollings, as he was not deprived of a substantial defense. Defendant has failed to show that his counsel was ineffective in his investigation or presentation of witnesses, nor has he shown substantial prejudice. This argument fails under MCR 6.508(D)(3) and is without merit.

### b. PERJURED TESTIMONY

Defendant argues defense counsel was ineffective for failing to move the court to suppress perjured testimony by Adrian Travier and Adrienne Burnette. It appears he positions these arguments under 6.508(D)(3). As noted above, the Court of Appeals ruled that Defendant's arguments as to Ms. Burnette's credibility were without merit. As well, the Court of Appeals determined that the statements of Ivory Shaver to Adrian Travier were admissible as to all co-defendants.

An attorney is not ineffective for failing to make a futile objection, *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998), nor is an attorney ineffective for failing to file a meritless motion, *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). Whether to object to a perceived impropriety is a matter of trial strategy. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

As to Adrian Travier's testimony, the trial court ruled the testimony was admissible after hearing arguments from the parties on the Prosecutor's Motion in Limine to introduce this evidence and a co-defendant's Motion to Preclude it. The court noted at the hearing on these motions that defense counsel filed a written response to the prosecution's motion. Evidentiary Hearing Transcript, May 2, 2011, pg. 170, ln 5-7. Defense counsel concurred with co-defense counsel's extensive arguments on this issue, and he vigorously argued against the motion. *Id.* pg. 209-214. As such, defense counsel did object to this evidence, and was not ineffective as Defendant suggests. Furthermore, the Court of Appeals affirmed the trial court's decision to allow the evidence, which suggests any further defense counsel efforts to exclude the evidence would have been futile.

11

Defendant cites to *People v Poole*, 444 Mich 151; 506 NW2d 505 (1993), abrogated on other grounds by *People v Taylor*, 482 Mich 368, 378-379; 795 NW2d 361 (2008), in support of his argument that a motion to exclude Ms. Burnette's trial testimony would have been successful. This argument lacks merit.

Defendant also argues counsel should have motioned the court for the suppression of Burnette's testimony because it conflicted with the testimony offered by other witnesses. Defendant provides no law in support of his argument that testimony should be excluded simply because it conflicts with other testimony. This would have been a futile motion and defense counsel is not ineffective for failing to make futile motions.

Defendant's arguments on these claims are unavailing and fail to satisfy either MCR 6.508(D)(2) or (D)(3).

### c.  BREAKDOWN OF ATTORNEY-CLIENT RELATIONSHIP

Defendant argues counsel (1) refused to meet with him; (2) refused to receive phone calls from him; (3) failed to master the record to make timely post-conviction motions; and (4) failed to adequately prepare for pretrial proceedings. He argues these four issues resulted in a total breakdown in the attorney-client relationship depriving him of effective assistance of counsel and a fair trial.

As noted above, the record indicates Defendant was not deprived of a substantial defense, and his argument that there was a total breakdown of the attorney-client relationship with counsel is without merit. Defendant has also failed to show good cause for failing to raise this issue in his Standard 4 Brief on appeal or actual prejudice.

### d.  FELONY MURDER DOCTRINE

Defendant avers that felony murder is unconstitutional and that his counsel was ineffective for failing to raise it.   Specifically, he theorizes that, because he was never charged with the predicate kidnapping, his first-degree murder conviction based on a felony murder theory is unconstitutional.  Finally he avers the trial court erred by failing to instruct on the law of malice, which he claims must be proven to get a felony murder conviction citing to *People v Aaron*, 409 Mich 672; 299 NW2d 304 (1980).

The Court in *Seals* addresses the issues raised by Defendant:

> "We adopt the holdings of the other jurisdictions. Michigan's felony-murder statute requires only proof that the murder occurred during the commission of a specified felony. There is no additional requirement that the defendant be *charged and convicted of* the underlying felony.... The decision in *Ream* reinforces that felony murder and the underlying felony are separate offenses. The state's inability to prosecute the predicate crime because of a time limitation has no effect on the question whether the predicate crime was actually committed.

* * *

In considering defendant's argument that counsel was ineffective for failing to object to the first-degree murder charge having been brought on a predicate felony whose limitations period had expired, we would note that at the time of trial there was no binding authority to support defendant's argument. With this Court's resolution of the issue contrary to defendant's position and the fact that there was no prior established caselaw on which to base an objection, counsel cannot be said to have been ineffective for failing to object." *People v Seals*, 285 Mich App 1, 16, 18; 776 NW2d 314 (2009).

Pursuant to *Seals,* Defendant's argument regarding kidnapping is without merit. As well, his malice argument is unavailing. Defendant has also failed to show good cause or actual prejudice under MCR 6.508(D)(3).

### e.  GREAT WEIGHT OF THE EVIDENCE

Lastly, Defendant argues counsel was ineffective for failing to challenge the great weight of the evidence in this case. His argument must fail as the Court of Appeals has decided this issue against him. Appellate counsel presented this argument to the Court of Appeals by challenging the sufficiency of the evidence. Trial counsel was not ineffective for failing to make the same challenge in the trial court because the challenge would have been futile. This argument fails under both MCR 6.508(D)(2) and (3) and is without merit.

## VI.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Defendant argues appellate counsel was ineffective for failing to raise the above issues on appeal. Due to this refusal, he submitted his own Standard 4 Brief to the Court of Appeals. Notably, Defendant argues appellate counsel was ineffective for failure to raise the issue of ineffective assistance of trial counsel, yet Defendant never alleged that trial counsel was ineffective in his own Standard 4 Brief.

The court first notes that appellate counsel presented the following arguments to the Court of Appeals as evidenced by their opinion: (1) insufficient evidence; (2) Burnette's testimony was untrustworthy and should not have been believed; and (3) that the trial court erred by denying his motion for a separate trial.

The court also notes that Defendant presented the following arguments to the Court of Appeals in his Standard 4 Brief as evidenced by their opinion: (1) denial of a fair trial due to the absence of an African American on the jury; (2) there was insufficient evidence to support his conviction because Burnette's testimony was false; (3) that investigators asked two witnesses to change their testimony; (4) the prosecution intentionally introduced perjury when it called Burnette to testify; and (5) that he was bound over without probable cause.

As with trial counsel, "reasonably effective assistance" is the standard for appellate counsel. *Strickland,* 466 U.S. at 690. Appellate counsel need not raise every possible appellate

13

claim.  Appellate counsel may be selective as a matter of discretion and strategy when choosing which meritorious issues to raise on appeal. *Reed,* 449 Mich at 397. The court has found meritless the issues Defendant claims appellate counsel should have raised. The court cannot fault appellate counsel for failure to present these non-meritorious issues to the Court of Appeals, and the decision not to do so falls squarely within appellate counsel's discretion.  Defendant has not established that counsel's performance was deficient or prejudicial.  This issue too is without merit and Defendant has failed to show either good cause or actual prejudice entitling him to relief.

## CONCLUSION

For these reasons noted, the court denies Defendant's Motion for Relief From Judgment.

IT IS SO ORDERED.

KATHLEEN M. BRICKLEY, CIRCUIT JUDGE

## CERTIFICATE OF MAILING

I certify that on this date copies of the above order were mailed to the attorneys and/or defendant at the addresses shown by first class ordinary mail.

Dated: _12-4-15_

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTTIE BERNARD SHAVER,

               Petitioner,                   Case No. 1:14-cv-877

v.

                                               Honorable Gordon J. Quist

KENNETH McKEE,

               Respondent.

_____/

**OPINION**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary

review of the petition to determine whether "it plainly appears from the face of the petition and any

exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES

GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed.

Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen

out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which

raise legally frivolous claims, as well as those containing factual allegations that are palpably

incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the

review required by Rule 4, the Court will dismiss the petition without prejudice for failure to exhaust

available state-court remedies.

**Discussion**

I.       Factual allegations

      Petitioner Scottie Shaver presently is incarcerated at the Bellamy Creek Correctional

Facility. Following a jury trial in the Van Buren County Circuit Court, Petitioner was convicted of

EX-D

review.  Instead, Petitioner asserts that he intends to raise additional issues in a motion for relief from judgment under MICH. CT. R. 6.502, including a claim based on newly discovered evidence. He asks the Court to stay his habeas petition and hold it in abeyance pending exhaustion of his state-court remedies.

II.        Exhaustion of State Court Remedies

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971), *cited in Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Petitioner raised two issues in the Michigan Court of Appeals, but his attempt to raise supplemental issues was denied by that court as untimely.  Petitioner appealed to the Michigan Supreme Court, but it is unclear what issues he raised.  At best, therefore, he may have

court, Petitioner must appeal that decision to the Michigan Court of Appeals and the Michigan Supreme Court. *See Duncan*, 513 U.S. at 365-66.

Because Petitioner has some claims that are exhausted and some that are not, his petition is "mixed." Under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), district courts are directed to dismiss mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust remedies. However, since the habeas statute was amended to impose a one-year statute of limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often effectively precludes future federal habeas review. This is particularly true after the Supreme Court ruled in *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), that the limitations period is not tolled during the pendency of a federal habeas petition. As a result, the Sixth Circuit adopted a stay-and-abeyance procedure to be applied to mixed petitions. *See Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002). In *Palmer*, the Sixth Circuit held that when the dismissal of a mixed petition could jeopardize the timeliness of a subsequent petition, the district court should dismiss only the unexhausted claims and stay further proceedings on the remaining portion until the petitioner has exhausted his claims in the state court. *Id.*; *see also Rhines v. Weber*, 544 U.S. 269, 277 (2007) (approving stay-and-abeyance procedure); *Griffin v. Rogers*, 308 F.3d 647, 652 n.1 (6th Cir. 2002).

Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1). Under § 2244(d)(1)(A), the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on February 28, 2014. Petitioner did not petition for certiorari to the United States Supreme Court, though the ninety-day period in which he could have sought review in the United States Supreme Court is

dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court already has determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr.*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

This Court denied Petitioner's application on the procedural ground of lack of exhaustion. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTTIE BERNARD SHAVER,

          Petitioner,                    Case No. 1:14-cv-877

v.                                    Honorable Gordon J. Quist

KENNETH McKEE,

          Respondent.

_____/

### ORDER

In accordance with the Opinion entered this day:

**IT IS ORDERED** that Petitioner's motion to stay the petition (docket #1) is

**DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability from the judgment

issued this date is **DENIED** because a reasonable jurist could not conclude either that the district

court erred in dismissing the petition for failure to exhaust or that the petitioner should be allowed

to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated:  October 7, 2014                        /s/ Gordon J. Quist
                                        GORDON J. QUIST
                              UNITED STATES DISTRICT JUDGE

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SCOTTIE BERNARD SHAVER,

                 Petitioner,                        Case No. 1:14-cv-877

v.                                                  Honorable Gordon J. Quist

KENNETH McKEE,

                 Respondent.

_____/

### JUDGMENT

In accordance with the Opinion entered this day:

**IT IS ORDERED** that the petition for writ of habeas corpus is **DISMISSED**

**WITHOUT PREJUDICE** under Rule 4 of the Rules Governing § 2254 Cases for lack of

exhaustion of available state-court remedies.


Dated:  October 7, 2014                         _____/s/ Gordon J. Quist_____
                                                GORDON J. QUIST
                                                UNITED STATES DISTRICT JUDGE

Certified as a True Copy
By_____
         Deputy Clerk
    U. S . District Court
Western Dist. of Michigan
Date____OCT - 8 2014____

THOMAS INVESTIGATIVE SERVICES
ACCIDENT RECONSTRUCTION CONSULTANT
810 PENDLETON DRIVE N.E.
COMSTOCK PARK, MICHIGAN 49321

THOMAS G. BEREZA

(616) 784-0490

FAX (616) 784-0210
EMAIL: THOMASINV@AOL.COM

December 16, 2014

Scottie Bernard Shaver,    No.:405-867
Bellamy Creek Corrections
1727 West Blue Water Highway
Ionia, Michigan 48846

## RE: STATE OF MICHIGAN V. SCOTTIE BERNARD SHAVER

# AFFIDAVIT

That I , Thomas G. Bereza, if duly sworn, will testify to the following facts and information regarding the listed file.

That I have attached a copy of my C.V. to this Affidavit.

That since my retirement from the Michigan State Police in 1986, I have been self employed as a Private Investigator in the State of Michigan. The sole concentration of my practice has been as a Traffic Accident Investigator and Accident Reconstruction Specialism.

That I have been retained to conduct work on accidents in over three thousand cases in Twenty Three States and Canada. This would include investigating and testifying as an expert witness in a diverse assortment of court systems and at every level of jurisdiction from Federal on down.

That on January 12 , 2014, I was retained on this file to complete a review of same and its' Investigation.

That this event and subsequent trial occurred April 26, 1998. The initial investigation involved a pedestrian named Deborah Kay Boothby who was struck by a car and subsequently died. This was not a hit and run accident.

That this accident occurred in VanBuren County, Covert Township on the Blue Star Highway at or near the entrance of the Blue Star Lounge, at approximately 2:30 A.M.

That at the time of the accident, Chief Winans, of the Covert Police Department, stated that the scene was very dark and it was raining very hard with low visibility. The status of this file was left open and it, the file, became a "cold case" until January of 2009

That prior to 2009, this was a cold case file. Prior to this date, the Covert Police Department never contacted the Michigan State Police for assistance with an investigation. That would have included an Accident Reconstruction or Crime Laboratory Personal.

Ex-E

THOMAS INVESTIGATIVE SERVICES

ACCIDENT RECONSTRUCTION CONSULTANT
810 PENDLETON DRIVE N.E.
COMSTOCK PARK, MICHIGAN 49321

THOMAS G. BEREZA                    (616) 784-0490                                              FAX (616) 784-0210
                                                                                         EMAIL: THOMASINV@AOL.COM

Mr. Shaver:
Page 2

That this file brought to the attention of D/Sgt. Diane Oppenheim of the Michigan State Police
South Haven Post, complaint No.055-0001422-99..A Supplemental Report was issued on
September 26, 2007. The question arises as to how you can make a report two years before the
case is reopened.

That D/Sgt Oppenheim conducted a large number of investigation interviews of persons that she
thought were involved in this accident. None of these interviews were <u>recorded</u> by her. All of the
data is her own interpretation of the interviews. There are no copies of these interviews in the file.
This means of investigation is against proper protocol for an investigation.

That there are important issues that I have listed that are completely contrary to the opinions given
by D/Sgt Oppenheim.:

1. Prior to leaving the Bar, there was no knocked down dragged out fight within the Bar.-
   According to witnesses.
2. Deborah Kay Boothby did fall off of a barstool without assistance. Her blood alcohol level
   Was w/.27.
3. Deborah Kay Boothby walked out of the bar and was then leaning against a parked car until
   She was pushed away from the car by its' owner - according to witnesses.
4. Deborah Kay Boothby then walked fifty plus yards west out to Blur Star Highway. She was
   seen staggering around the Highway by the Black Sisters who were driving by. They turned
   around to go back and assist her. They observed two vehicles leaving the bar parking lot
   before they got back to her. They then saw Deborah Boothby laying prone on the pavement
   of the northbound lane. No one else was around the area.
5. The Police were called as was the Ambulance who transported her to the hospital.
6. Ms. Boothby was run over by one of or both vehicles who left the parking lot of the bar.
   The impact broke her spine and she could not move after impact. Boothby died at the
   Hospital.
7. This is the sequence of her death.
8. That her body showed no signs of a beating .

That I have enclosed two letters to show medical examiner evidence ( the body).

1. A letter to Dr.Cabaltica, VanBuren County Medical Examiner from Joyce L. deJong, D.O.
   Medical Director of Forensic Pathology from Sparrow Health Systems, addressing the
   issue of changing the cause of death of Boothby to a beatings. It was changed to murder.
2. The information was from D/Sgt Oppenheim. What evidence did she have? She is not a
   Medical Examiner or a Reconstructionist.
3. The second letter - see charge - Label (0900-1) / Murder- Negligent Manslaughter.

THOMAS INVESTIGATIVE SERVICES
ACCIDENT RECONSTRUCTION CONSULTANT
810 PENDLETON DRIVE N.E.
COMSTOCK PARK, MICHIGAN 49321

THOMAS G. BEREZA

(616) 784-0490

FAX (616) 784-0210
EMAIL: THOMASINV@AOL.COM

Mr. Shaver:
Page 3

That there are two different scenarios to evaluate in this death
1.  The factual evidence given by the witnesses describing the accident on the highway.
2.  The unrecorded interviews and tthe analysis of D/Sgt. Oppenheim

That I have investigated over two hundred (200) pedestrian accidents in my carrier. Many of them involving the same factors.
1.  Driving under the influence of alcohol,
2.  Poor conspiquity - unable to see,
3.  Pedestrian under the influence,
4.  Very dark conditions, inclement weather,
5.  Investigation by Police tainted,
6.  Poor investigation by the Medical Examiner of VanBuren County.

That as a result of my investigation, I have reached the following opinion as to the cause of the Death of Deborah Kay Boothby.
1.  Adrian Burnette was driving a vehicle under the influence of alcohol when she struck and killed Deborah Kay Boothby. She pled guilty to a reduced charge.
2.  Scottie Bernard Shaver was a passenger in the vehicle driven by Adrian Burnette that struck and killed Ms. Boothby - testimony of Ms. Burnette.

Further Affient Sayeth Not on this 17th day of December, 2014

Thomas G. Bereza

Notary Public
Kent County, Michigan

KELLY M CARLSON
Notary Public - Michigan
Oakland County
My Commission Expires May 15, 2020
Acting in the County of _Kent_

My Commission expires: _May 15th, 2020_

THOMAS INVESTIGATIVE SERVICES
ACCIDENT RECONSTRUCTION CONSULTANT
810 PENDLETON DRIVE N.E.
COMSTOCK PARK, MICHIGAN 49321

THOMAS G. BEREZA                          (616) 784-0490                    FAX (616) 784-0210
                                                                    EMAIL: THOMASINV@AOL.COM

January 23, 2015

Scottie Bernard Shaver - No: 405-867
Michigan Department of Corrections
9625 Pierce Road
Freeland, Michigan 48623

**RE:  STATE OF MICHIGAN  V.  SCOTTIE BERNARD SHAVER**

# AFFIDAVIT

That I, Thomas G. Bereza, if duly sworn, will testify to the following facts and information regarding the aforementioned file.

That I issued my initial report on October 1. 2014. Copy attached.

That I issued a signed Affidavit on December 16, 2014. Copy attached.

That on April 26, 1998, at approximately 2:34 A.M., Officer J. Allen responded to an accident on the Blue Star Highway, VanBuren county, covert Township, where Deborah Kay Boothby had been struck by an automobile.

That from the onset of this event, the officers knew that this was a "hit and run" fatal car-pedestrian accident. That as the Chief of Police, Winans of the Covert Police Department stated - It was very dark, raining very hard with low visibility. As a result, <u>No</u> assistance by a trained accident reconstructionist was requested.

That I have attached a ten (10) page Covert Police report that was submitted. (See this report of interviews of witnesses.)

That I, as a Professional Accident Reconstruction Specialist, have reached the opinion that this accident causing the death of Deborah Kay Boothby could have and should have been investigated and solved within days after it occurred.

That at this time, I will cover the primary work that could have and would have been conducted by an Accident Reconstruction investigator, again <u>IF</u> they had been called out that night.

EX-E

THOMAS INVESTIGATIVE SERVICES
ACCIDENT RECONSTRUCTION CONSULTANT
810 PENDLETON DRIVE N.E.
COMSTOCK PARK, MICHIGAN 49321

THOMAS G. BEREZA                    (616) 784-0490

FAX (616) 784-0210
EMAIL: THOMASINV@AOL.COM

Mr. Shaver::
Page 2

That RAIN is <u>NOT</u> an excuse for not working the scene.
1. The scene could have been lit up by the fire department and spot lights,
2. Survey marks and measurements - blood spots identified, roadway and driveway , the Bar's parking lot, building interior and any scene evidence should have been addressed.
3. The layout and measurements of the scene should have been conducted.

That with the data obtained from witnesses interviews it would have been possible to construct **A TIME LINE** of the movement of the people involved and the vehicles involved.

That <u>VERY IMPORTANT FACTORS</u> critical to this investigation are:
1. Victim walking in the parking lot,
2. Victim walking in the roadway,
3. Position of the body - blood spots on roadway,
4. Investigation from a Forensic Medical Examiner.

That two vehicles were observed leaving the parking lot together,
1. Latisha Corrine Holling was driving a dark car who was behind Adrian Burnette,
2. Adrian Burnette was driving a  white car. However, In the report. Holling's vehicle is Not listed or identified.

That neither vehicles were given a full forensic examination. It is my opinion that one of the drivers hit the victim and the other one ran over the victim

That the clothing of the victim was gathered up by the police. It appears that <u>NO TESTS</u> were ever conducted by the crime lab.
1. Paint transfers to clothing or vehicles can go both ways.
2. This is key evidence and positive information for the examiner.

That Adrian Burnette entered a guilty plea to Perjury in this case. I have read the fact that Scottie Shaver was pointed out by Adrian Burnette as the person causing the death of Deborah Kay Boothby. The fact of this accusation should be closely examined because the information does not support the evidence.

That another fact  very important in this case is the letter signed by Joyce L. delong, D.O., Medical Director of Forensic Pathology of sparrow Health Systems to Dr. Cabaltica. (Copy attached.) This letters deals with changing the cause of death of Deborah Kay Boothby to homicide from blunt force trauma as was originally listed. This was dated in 2007. The question still is what and where is the evidence to support the change in the cause of death.

That I find <u>NO</u> report that list's a reason for this request. This request was made by Detective Diane Oppenheim of the Michigan State Police  - ten (10) years after the accident this was in a cold case file.

THOMAS INVESTIGATIVE SERVICES
ACCIDENT RECONSTRUCTION CONSULTANT
810 PENDLETON DRIVE N.E.
COMSTOCK PARK, MICHIGAN 49321

THOMAS G. BEREZA

(616) 784-0490

FAX (616) 784-0210
EMAIL: THOMASINV@AOL.COM

Mr. Shaver:

That the investigation I have made of this death leads me to believe that the cause of this death is a HIT & RUN FATAL CAR - PEDESTRIAN ACCIDENT.

That there are many questions still to answer as to WHY this became a homicide investigation.

Further Affient Sayeth Not on this 26 th day of January, 2015.


Thomas G. Bereza



Notary Public
Kent County, Michigan

OMAR CUEVAS
Notary Public - Michigan
Kent County
My Commission Expires Feb 22, 2017
Acting in the County of _____

My commission expires: _____

I, ___Tracey L. Shaver___, being duly Sworn, deposes and says:

. My name is ___Tracey L. Shaver___, I am over 21 years of age, and of a sound mind, I have a personal knowledge of the facts stated below.

This affidavit by, ___Tracey L. Shaver___, explains how and why this false statement by Adrian Tavier came about and why I felt that I needed to confirm the facts listed or stated below.

## Reasons for Giving Statement

I feel that Scottie B. Shaver and Shevolier Gill needs to be given another trial, because of the lie that was told by Adrian Tavier that I said that Scottie and Shevolier were involved with me in the death of Debbie Boothby.    ## Affiant's Statement

Never did I tell anyone especially, Adrian Tavier that Scottie B. Shaver, or Shevolier Gill was involved with me in the death of Ms. Debbie Boothby.

MR. Tavier formulated this lie for his own personal gains. He knew that he was in trouble for a thief ticket that he had gotten just before seeing, the parole board and needed a way to find favor with the parole board, He attempted to recruit a MR. Robert Boyd who testified at trial that MR. Tavier asked him to lie with him and he would get out of prison earlier also. MR. Boyd came to court and testified against MR. Adrian Tavier, and has agreed to give a written statement of this fact.

EX-F

## Therefore

I am willing to take a polygraph test, not for the purpose of admitting it as evidence in Court, but for the purpose of verifying my truthfulness in any proceedings that this Court might grant, and to validate my truthfulness.

I, ___Hubey L. Shaver___, did not see the defendant's Scottie B. Shaver, or Shevolier Gill, put Ms. Debrah Boothby in any Car, nor did I see the defendant's fighting with Ms. Boothby in the Blue-Star Lounge parking lot.

I did not see Ms. Debrah Boothby get ran over at anytime by Scottie B. Shaver or Shevolier Gill.

I Swear that this Statement is true and Voluntary.

___Hubey L Shaver___          ___3/9/16___
Signed by Affiant                        date


___Nathan D. Line___          ___3/9/2016___
Notarized by                            date


Nathan D. Line
Notary Public, State of Michigan, County of Chippewa
My Commission Expires June 27th, 2021

VANBUREN COUNTY MEDICAL EXAMINERS OFFICE

PAGE 1 OF 5

NAME OF DECEASED  Deborah Kay Boothby                    RACE  White            ☐ MALE ☒ FEMALE

DATE OF BIRTH  6/18/63        AGE  34    PHONE  none      DID DEATH OCCUR WHILE ON THE JOB  ☒ NO ☐ YES

ADDRESS  17442 BlueStar Highway          CITY  South Haven          STATE  MI  ZIP 49090

☐ MARRIED  ☐ SINGLE  ☒ DIVORCED  ☐ WIDOWED  ☐ SEPARATED    SOCIAL SECURITY #  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

☐ EMPLOYED → OCCUPATION  unknown          ☐ RETIRED → OCCUPATION                  ☐ OTHER

NEXT OF KIN DATA IF KNOWN  (NAME / ADDRESS / PHONE / RELATIONSHIP)  Marie Atwood  09169 57th Street  Grand Junction, MI
49056  Mother  no phone

SUBJECT ID PER → ☒ DRIVERS LICENSE  ☒ NEXT OF KIN  ☐ OTHER →

DATE / TIME OF DEATH  4/26/98       AT  3:18 AM      DATA IS  ☐ EST  ☒ EXACT  →  ☐ DOA ☐ ER ☐ NH ☐ INPT ☐ AFC ☒ MVA

PRONOUNCED DATE / TIME  4/26/98     AT  3:18 AM     PER  Dr. Fandrich

EXACT ADDRESS OF DEATH  955 South Bailey  South Haven, MI  49090

WITNESS (ADDRESS / PHONE)  none

M.E.I. NOTIFIED OF CASE BY  South Haven ER       DATE / TIME 4/26/98 3:05AM AND ARRIVED ON SCENE  4/26/98 @ 3:05 AM

☒ DEPUTY M.E. CONTACTED   ☒ BODY EXAM COMPLETED   ☐ BODY EXAM DEFERRED   PHOTOS AND/OR VIDEO OF SCENE ☐ NO  ☒ YES → BY  ☒ M.E.I.  ☐ POLICE

CLASS OF DEATH →  ☐ ACCIDENT        ☐ HOMICIDE        ☐ NATURAL        ☐ SUICIDE        ☐ INDETERMINABLE        ☒ PENDING

CAUSE OF DEATH →  unknown pending autopsy

CONTRIBUTING FACTORS  unknown pending autopsy

PAST MEDICAL HISTORY  unknown

PRESCRIBED AND OTC MEDICATIONS →  ☐ NO   ☒ UNKNOWN   ☐ YES, BUT MEDICATIONS UNKNOWN        ☐ YES → ALL LISTED ON SUPPLEMENTAL PAGE

PRIVATE PHYSICIAN  unknown                      ☐ NONE  ☒ UNKNOWN  ☐ ONLY USED E.R. OR MED CENTER

LAST KNOWN DATE AND LOCATION OF MEDICAL CARE  unknown

EMS INVOLVED  ☐ NO  ☒ IF YES →  Covert EMS      DISPATCHED AT  2:37 AM      ARRIVED AT  2:44 AM

POLICE ON SCENE ☐ NO  ☒ YES, OFFICER(S) →  Officer Scott Boling  Covert Police        CASE #  98-040824

POLICE NOT ON SCENE, BUT NOTIFIED ☒ N/A  ☐ NO  ☐ IF YES →

AUTOPSY  ☐ NO  ☒ YES → DATE / TIME  4/27/98      / 9:00 AM LOCATION  Metropolitan Hospital PER  unknown

AUTOPSY NOTIFICATION MADE  ☐ N/A  ☒ TO FAMILY  ☒ TO POLICE  BY  Cindy Zack

TRANSPORTATION OF DECEASED PER  Miller of Bangor       F.H.  ☐ TO FUNERAL LOCATION   ☐ FOR TEMP. STORAGE ONLY   ☒ TO MORGUE

TOXICOLOGY DRAWN ☐ N/A  ☒ TO BE DRAWN AT TIME OF AUTOPSY  ☐ IF YES → DRAWN BY

SPECIMEN TYPE →  ☐ BLOOD   ☐ URINE   ☐ VITREOUS   SPECIMEN SENT TO  ☐ HOSPITAL LAB  ☐ MSP LAB ☐ OTHER

FUNERAL ARRANGEMENTS PER  Calvin/Starks/Frost                                FUNERAL HOME

☒ MEDICAL EXAMINER'S CASE        ☐ REFERRAL →                        TO SIGN

MEDICAL EXAMINER INVESTIGATOR  Cindy Zack            DATE 4/26/98      MILES  3
                    Cindy Zack

DEPUTY MEDICAL EXAMINER  Dr. Millard M D        DATE  4/27/98
                    Dr. Millard

EX-G

COPY

# MICHIGAN FORENSIC MEDICINE, P.C.
## FINAL AUTOPSY REPORT

| | |
|---|---|
| Autopsy Number: | A98-66 |
| Name: | Deborah Boothby |
| Date of Death: | April 26, 1998 |
| Date of Birth: | June 18, 1963 |
| Date of Autopsy: | April 27, 1998 |
| Pathologist: | Waldemar A. Palutke, M.D. |
| Medical Examiner: | Dr. Millard |
| Medical Examiner Investigator: | Cindy Zack |
| County: | VanBuren |
| Location of Autopsy: | Metropolitan Hospital |

## AUTOPSY FINDINGS:

I.   Multiple Blunt Force Injuries.
   A.   Cortical contusion, brain.
   B.   Multiple rib fractures.
      1.   Bilateral hemothoraces.
   C.   Fracture of fifth thoracic vertebra.
      1.   Mediastinal and paraspinous hemorrhage.
      2.   Compression and hemorrhage, thoracic spinal cord.
   D.   Fracture of pelvis.
      1.   Soft tissue hemorrhage, pelvis.
   E.   Fracture of left clavicle.
   F.   Cutaneous lacerations, contusions, and abrasions.

II.  Alcoholic Intoxication.
   A.   Blood alcohol concentration - .27%.

CAUSE OF DEATH:     Multiple Blunt Force Injuries

MANNER OF DEATH:    Undetermined.

_____
Waldemar A. Palutke, M.D.

EX-H