# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SCOTTIE BERNARD SHAVER,
405867,

     Petitioner,                  CASE NO. 1:17-cv-809

v.                                 HON. Gordon J. Quist

BONITA HOFFNER,             MAG. Ray Kent

     Respondent.

_____

## ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

# TABLE OF CONTENTS

Introduction ................................................................................ 1

    Statements in Compliance with Habeas Rule 5(b) ......................... 5

       A.    Statute of Limitations ............................................. 5

       B.    Exhaustion ............................................................ 5

       C.    Procedural Default ................................................. 5

       D.    Non-retroactivity Doctrine ..................................... 5

Statement of the Case ................................................................ 6

       A.    Trial Facts ............................................................. 6

       B.    Procedural History ................................................. 9

Standard of Review Pursuant to AEDPA ................................... 15

Argument ................................................................................. 20

I.    The Michigan Court of Appeals reasonably rejected Habeas
    Claim I, regarding sufficiency of the evidence, on the merits ....... 20

       A.    The state appellate court's decision ...................... 20

       B.    Clearly established federal law regarding sufficiency of
            the evidence ........................................................ 24

       C.    Analysis ............................................................. 27

II.    Habeas Claim II, alleging prosecutor misconduct, is
    inexcusably procedurally defaulted and, in any event, the
    Michigan Court of Appeals reasonably rejected this claim on
    the merits. ............................................................................ 31

       A.    Shaver's claim is procedurally defaulted. ............... 32

|   |   | 1. | Habeas Claim V, alleging ineffective assistance of appellate counsel, does not establish cause and prejudice to excuse the default. | 34 |
|---|---|---|---|---|
|   |   | 2. | Failure to review this claim will not result in a fundamental miscarriage of justice. | 37 |
|   | B. |   | This claim is also meritless. | 41 |
|   |   | 1. | The state appellate court's decision | 41 |
|   |   | 2. | Clearly established federal law regarding prosecutor misconduct | 41 |
|   |   | 3. | Analysis | 44 |
|   |   | 4. | Harmless error | 45 |
| III. |   |   | Habeas Claim III, alleging a violation under *Brady v. Maryland*, is inexcusably procedurally defaulted and meritless. | 46 |
|   | A. |   | This claim is procedurally defaulted. | 47 |
|   | B. |   | This claim is also meritless. | 50 |
|   |   | 1. | The state appellate court's decision | 50 |
|   |   | 2. | Clearly established federal law regarding the prosecution's obligation to disclose exculpatory evidence under *Brady v. Maryland* | 52 |
|   |   | 3. | Analysis | 54 |
|   |   | 4. | Any error was harmless. | 55 |
| IV. |   |   | Habeas Claim IV, alleging a violation under the Confrontation Clause, is inexcusably procedurally defaulted and meritless. | 55 |
|   | A. |   | This claim is procedurally defaulted. | 56 |
|   | B. |   | This claim is also meritless. | 57 |

C.    Any error was harmless. ........................................................ 59

V.    Habeas Claim VI, alleging various instances of ineffective assistance of trial counsel, is inexcusably procedurally defaulted and meritless .................................................................. 59

    A.    This claim is procedurally defaulted. .................................. 60

    B.    This claim is also meritless ................................................. 61

        1.    The state trial court's decision .................................... 61

        2.    Clearly established federal law regarding ineffective assistance of trial counsel ......................... 70

        3.    Analysis ...................................................................... 73

VI.    Habeas Claim VII, alleging actual innocence, is not cognizable and meritless. .............................................................. 74

    A.    This claim is not cognizable. ............................................... 75

    B.    This claim is otherwise meritless. ....................................... 76

VII.    Habeas Claim VIII, alleging a violation under the Confrontation Clause and judicial bias, is procedurally defaulted and, in any event, the Michigan Court of Appeals reasonably rejected this claim on the merits ................................ 76

    A.    This claim is procedurally defaulted. .................................. 77

    B.    In any event, this claim is meritless .................................... 77

        1.    The state appellate court's decision ............................. 77

        2.    Clearly established federal law regarding confrontation and judicial bias ................................... 82

        3.    Analysis ...................................................................... 84

        4.    Any error was harmless. .............................................. 86

Conclusion ........................................................................................ 87

Relief ................................................................................................. 92

Certificate of Service ....................................................................... 93

## INTRODUCTION

Petitioner, Scottie Bernard Shaver, along with several cohorts, beat, kidnapped, and murdered the victim, Deborah Boothby, in 1998. The case went cold for nearly a decade until the Michigan State Police reinvestigated in 2007.

Police learned that Shaver and others were at a lounge with the victim when they beat the victim unconscious in the parking lot. They then put her in a car and drove her to a park, where they took her back out when she awoke. She begged for help, only to be beaten and choked until she was quiet. The group then formulated a plan: they would take the victim back to the lounge, put her in the road, and run her over to make it look like a hit-and-run accident. They did just that. After one of the codefendants ran over the victim once, Shaver instructed someone else to run her over a second time, saying, "Run that bitch over and make sure she's dead this time."

As a result of his Van Buren County jury-based conviction of first-degree murder, Mich. Comp. Laws § 750.316, the State now holds Shaver in custody in the Michigan Department of Corrections. Shaver

is currently serving a sentence of life imprisonment without the
possibility of parole.

Shaver commenced this action under 28 U.S.C. § 2254 by filing a
petition with this Court.[1]  The State understands the petition to be
raising the following claims:

I.     Petitioner Shaver is entitled to habeas relief where
       there was insufficient evidence proven by the
       prosecutor beyond a reasonable doubt that he had the
       intent to commit first degree, or felony murder.

II.    Petitioner is entitled to a new trial where the state
       prosecutor knowingly allowed false and perjured
       testimony to gain an unconstitutional conviction. US
       Const. Amend. XIV.

III.   Petitioner was the victim of a Brady violation where
       material evidence crucial to his guilt or punishment
       was withheld depriving him of his rights to a fair trial
       requiring habeas relief. US Const. Amend. XIV.

IV.    Petitioner was denied his constitutional right to
       confront and cross-examine a crucial witness against
       him regarding the cause of death which was changed

---

[1] Shaver initially filed a petition for a writ of habeas corpus in this
Court on August 19, 2014 and immediately moved this Court for a stay
to allow him to exhaust additional claims in the state courts.  (*See*
8/19/14 Pet., Case No. 1:14-cv-877.)  This Court dismissed the petition
without prejudice for lack of exhaustion, noting that the statute of
limitations did not expire until May 19, 2015, unless Shaver tolled the
limitations period by filing a post-conviction motion in the state courts
before that date.  (10/7/14 Op. at 8, Pg ID 20.)  Shaver did so and, after
completing his state post-conviction proceedings, filed the instant
habeas petition under a new case number.

from accident to homicide requiring relief. US Const. Amend. VI.

V.   Petitioner was denied his Sixth Amendment right to the effective assistance of counsel on his appeal of right requiring habeas relief. US Const. Amends. VI and XIV.

VI.  Petitioner is entitled to a new trial where his trial attorney was constitutionally defective by failing to investigate the case; failing to utilize the compulsory process to obtain witnesses for the defense, and failed to move for an expert accident reconstructionist requiring relief. US Const. Amenda. [sic] VI and XIV.

VII. Petitioner is entitled to a new trial where new evidence which was unavailable for his jury trial establish [sic] his actual innocence of murder requiring reversal or release from custody. US Const. Amend. XIV.

VIII. Petitioner is entitled to a new trial where the state trial judge abused his judicial discretion by circumventing a Sixth Amendment right to confront a specific witness displaying judicial bias against him. US Const. Amends. VI and XIV.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading. To the extent that Shaver failed to raise any other claims that he raised in the state courts, those claims are now abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting

the issue in his brief).  Thus, habeas review of abandoned claims is barred.

The State now answers the petition and requests that it be denied.

# STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

## A.    Statute of Limitations

The State is not arguing that any of Shaver's habeas claims are barred by the statute of limitations.

## B.    Exhaustion

The State is not arguing that consideration of any of Shaver's habeas claims is barred by the failure to exhaust a claim for which a state court remedy exists.

## C.    Procedural Default

The State asserts that Shaver has procedurally defaulted Habeas Claims II, III, IV, VI, and VIII, as more fully discussed below.

## D.    Non-retroactivity Doctrine

The State is not arguing that consideration of any of Shaver's claims is barred by the non-retroactivity doctrine.

**STATEMENT OF THE CASE**

**A.     Trial Facts**

The Michigan Court of Appeals accurately summarized the facts

adduced at trial as follows:

> Defendants' convictions stem from the death of Deborah
> Boothby, hereafter the victim. Police responded to a call and
> discovered the victim's body on the Blue Star Highway at
> about 2:30 a.m. on April 26, 1998. The victim was almost on
> the center line of the roadway and there was a large amount
> of blood around her head. The victim's jacket was ripped and
> it appeared that she had been hit by a vehicle. The victim
> was still alive, and was rushed to the South Haven
> emergency room. However, the victim died during transport.
> Police assumed the victim's death was the result of a hit and
> run accident. After no significant progress was made, the
> case was eventually closed. The case was re-opened in
> September 2007 by the Michigan State Police. In the course
> of the new investigation of the victim's death, Adrienne
> Burnette admitted to her involvement in the murder and
> cooperated with police, leading them to Ivory, Scottie, and
> Shevolier. Another break for police came in 2009, when
> Adrian Travier, an inmate who was incarcerated with Ivory,
> wrote a letter to the prosecutor indicating that Ivory
> confessed to the murder and stated that Scottie, Shevolier,
> and Ed Foster were involved.
>
> Testimony at trial established that on April 25, 1998, the
> victim went to the Blue Star Lounge. The victim and Ivory
> had an on and off romantic relationship. Ivory was at the
> Blue Star Lounge that night with Shevolier. Witnesses
> described an argument between the victim, Ivory, and
> Shevolier, and testified that the victim threw her drink at
> Ivory and/or Shevolier. After the altercation between the
> victim, Ivory, and Shevolier, the lights came on at the lounge
> and everyone was asked to leave. Witnesses testified that

the parking lot was crowded after the lounge was closed early, and a crowd of people formed around the victim, who was being hit, kicked, and stomped on. Witnesses specifically identified Ivory, Scottie, and Shevolier as among the people who were beating the victim. After the victim was apparently unconscious, several witnesses testified to observing Ivory and Scottie lift the victim up and place her in the backseat of Shevolier's car.[3] Witnesses testified that Shevolier was in the driver's seat, and that Ivory got into the front passenger seat and Ed Foster got into the backseat with the victim.

Burnette testified to observing all the above-stated events, and then testified that as she was waiting in a line of cars to leave the lounge Scottie got into the front passenger seat of her car and told her to follow Shevolier's car. Burnette, who knew Scottie and was previously romantically involved with him, complied with his command and turned left toward Covert. She followed Shevolier's car into a park about a mile away from the lounge. The two cars drove through the park until they reached a turnaround area near an old pump house. At that point, Scottie got out of Burnette's car and Ivory, Shevolier, and Ed got out of Shevolier's car. The victim was pulled out of the car and dragged to a grassy area. The victim was conscious again and was screaming for help and begging defendants to stop. Burnette testified that Shevolier choked the victim while the men continued to beat her. Eventually, the victim stopped moving. Shevolier asked if the victim was dead, and Ivory stated that they were going to take her back to the lounge, dump her on the side of the road, and run her over with the car so it would appear that the victim was killed in a hit and run accident.

Ivory, Ed, and Shevolier got back into Shevolier's car, and the victim was placed back in the backseat. Burnette testified that she was "numb," and scared of what would happen to her. Scottie got back into Burnette's car and told her to follow Shevolier's car, which Ivory was now driving. Burnette testified that she followed Shevolier's car back

toward the Blue Star Lounge, and that Scottie explained to her that their plan was to run the victim over and make her death look like an accident. Burnette testified that Shevolier's car drove just north of the lounge, and that Ivory and Ed got out of Shevolier's car and placed the victim behind it. She testified that they put the car in reverse and ran over the victim and then rolled forward back over her. Ivory was the driver. Scottie told Burnette to drive up to the Blue Star Lounge parking lot where he sold drugs to Keith Owens, a bouncer at the lounge. After the drug transaction, Scottie told Burnette that she was "going to leave this bar, you're going to run that bitch over and make sure she's dead this time." Burnette testified that she told Scottie she did not want to run the victim over, and Scottie said "you're going to run her over or else I'm going to pull you out and you're going to end up like her." So Burnette "did what [she] was told." The victim was still on the ground at this time, toward the side of the road with her upper body in the lane of traffic and her head toward the center line. Burnette testified that she was driving 25 or 30 miles per hour when she ran over the victim. After running over the victim she went back to her house with Scottie, who spent the night.

Burnette testified at defendants' trial pursuant to a plea agreement. Burnette pleaded guilty to second-degree murder and perjury. Pursuant to the deal, she agreed to provide truthful testimony at each and every court proceeding regarding the victim's murder. The plea deal also included a sentence agreement stating that Burnette would be sentenced to eight to 20 years' imprisonment for each count, and that the sentences would run concurrently. The entire agreement was admitted as evidence and read into the record during trial.

*People v. Shaver*, No. 305945, 2013 WL 4864204, at *1-2 (Mich. Ct. App.

Sept. 12, 2013).  This recitation of the facts is entitled to the

presumption of correctness under § 2254(e)(1), and Shaver has not

demonstrated through clear and convincing evidence that this summary is incorrect.

The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981)).

The State opposes any factual assertions made by Shaver that are not directly supported by—or consistent with—the state court record, because Shaver has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

## B.    Procedural History

Shaver was convicted of first-degree murder under two different theories, premeditated murder and felony murder. The trial court sentenced him to life imprisonment without parole.

Following his conviction and sentence, Shaver filed a claim of appeal in the Michigan Court of Appeals, which raised the following claims:

I.    Was there sufficient evidence proven by the prosecution beyond a reasonable doubt that Defendant Scottie Shaver had the intent necessary to warrant convictions of first degree premeditated murder and first degree felony murder?

II.   Was it error for the court to deny Defendant Scottie Shaver's motion for a separate trial?

Shaver subsequently filed his own pro per brief, known in Michigan as a Standard 4 brief, in which he raised the following additional claims:

I.    Whether there was insufficient evidence to support the jury's verdict.

II.   Whether the trial court obtained a conviction through the knowing use of perjured testimony and coercion of witnesses therefore offending the Defendant-Appellant's due process protections guaranteed under the Fourteenth Amendment.

III.  Whether there was sufficient evidence to support the jury's verdict.

IV.   Did the judge in this case fail to fulfill his obligation by violating the Defendant's rights and civil liberties to due process by bounding him over without the presence of probable cause.

The Michigan Court of Appeals affirmed Shaver's conviction in an unpublished opinion. *Shaver*, 2013 WL 4864204, at *21. The Michigan Court of Appeals also denied Shaver's motion for reconsideration. (10/25/13 Mich. Ct. App. Order at 1.)

Shaver subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claims as in the Michigan Court of Appeals, along with one new claim:

I.      Ineffective assistance of counsel by trial counsel and appellant counsel

The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Shaver*, 843 N.W.2d 517 (Mich. 2014) (unpublished table decision).

Shaver returned to the trial court and filed a motion for relief from judgment, which contained the following claims:

I.      Defendant is entitled to a new trial based on newly discovered impeachment evidence.

II.     Defendant was denied a fair trial where his lawyer failed to investigate his case adequately and completely.

III.    Defendant believes he was denied his state and federal constitutional rights where the prosecution withheld evidence.

IV.     Prosecution misconduct by commission of fraud upon the court within [sic] knowingly seeking to deceive jury with perjured testimony.

V.      The prosecution use of unsubstantiated hearsay violated Defendants [sic] 5th and 14th Amendment rights to a fair and impartial trial.

VI.  Defendant was denied a fair trial where he was not able to confront his accusser [sic], violating his state and federal constitutional rights and due process of the law.

VII.  The trial court committed reversible error when it failed to act sua sponte with suppressing perjured testimony.

VIII. The Defendant was denied the effective assistance of counsel, where counsel failed to motion the court for suppression of obviously perjured testimony.

IX.  Defendant was deprived of his 6th Amendment right to compulsory process and his right to effective assistance of counsel.

X.  Defense counsel absence at a critical stage of the adversarial process deprived Defendant a viable defense.

XI.  Defendant was denied his state and federal liberties, where he was denied his due process, by counsel failure to challenge the unconstitution [sic] felony murder doctrine.

XII.  Counsel was ineffective for failing to challenge the great weight of evidence, due to the verdict being contrary to the great weight of evidence.

XIII. Defendant was denied his right to a fair trial, where he was denied an impartial jury, due to jury tampering.

XIV. Defendant-Appellant was not afforded the type of assistance of Appellant [sic] counsel guaranteed by the federal and state constitution, where counsel failed to raise issue 1 through 13, supra on appeal.

The trial court denied the motion for relief from judgment both on the merits and under Mich. Ct. R. 6.508(D)(3). (12/4/15 Van Buren Cir. Ct. Order at 14.)

After the trial court denied the motion for relief from judgment, Shaver filed an application for leave to appeal in the Michigan Court of Appeals, in which he raised the following claims:

I.  Was Appellant the victim of a Brady violation where material evidence, crucial to his guilt or punishment, was withheld depriving him of a right to a fair trial requiring reversal. US Const. Amend. XIV; Const. 1963, Art 1, § 17?

II.  Was Appellant deprived of his Sixth Amendment right to confront and cross examine a crucial witness against him regarding the cause of death from accident to accident to homicide violating his right to a fundamental fair trial requiring reversal. US Const. Amends. VI, XIV; Const. 1963, Art 1, §§ 17 and 20?

III.  Whether or not Appellant Shaver is entitled to relief because he was denied his right to effective assistance of counsel on his direct appeal. US Const. Amends. VI and XIV; Const. 1963, Art 1, §§ 17 and 20?

IV.  Is Appellant entitled to a new trial where his trial attorney was constitutionally defective by failing to investigate the case, utilize the compulsory process to obtain witnesses for the defense, and failed to move for an expert accident reconstructionist, requiring relief. US Const. Amends. VI and XIV?

V.  Is Appellant entitled to a new [sic] trial because he was denied due process and a fair trial where his new

evidence, which was not available for the jury, establishes his innocence of murder requiring reversal. US Const. Am. XIV; Mich. Const. 1963, Art 1, § 17?

VI.   Does Appellant's new evidence establishes [sic] a constitutional violation which resulted in the conviction of an innocent person and but for the violation, no reasonable juror would have voted to find him guilty of murder mandating reversal and discharge from custody. US Const. Amends. VIII, XIV; Const. 1963, Art 1, §§ 16 and 17?

VII.   Was Appellant deprived of his constitutional right to a fair trial where the judge abused his judicial discretion by circumventing a Sixth Amendment right to confront a specific witness, thereby displaying judicial bias against Appellant. US Const. Amend. VI and XIV?

VIII. Whether or not Appellant is entitled to reversal of his unconstitutional conviction, where a fraud was perpetrated upon the court by the prosecutor who provided fraudulent information and testimony to the jury depriving Appellant of his right to a fair trial. US Const. Amend. XIV; Const. 1963, Art 1, § 17?

The court denied the application for leave to appeal for failure to establish that the trial court erred in denying the motion for relief from judgment. (9/22/16 Mich. Ct. App. Order at 1.)

Shaver applied for leave to appeal this decision in the Michigan Supreme Court, but was also denied relief under Michigan Court Rule 6.508(D). *People v. Shaver*, 898 N.W.2d 606 (Mich. 2017) (unpublished table decision).

14

## STANDARD OF REVIEW PURSUANT TO AEDPA

Shaver's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  AEDPA prevents a federal court from granting habeas corpus relief based on any claim "adjudicated on the merits" in state court, unless the petitioner can establish that the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d)(1), the petitioner must establish that "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Metrish v. Lancaster*, 569 U.S. 351, 357 n.2 (2013) (internal quotation marks and citation omitted).

Under the "unreasonable application" clause of § 2254(d)(1), the petitioner must establish that, after "identif[ying] the correct governing legal principle from the Supreme Court's decisions, [the state court] unreasonably applie[d] that principle to the facts of [his] case." *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (alteration omitted). "[T]he state court's decision must have been more than incorrect or erroneous[;]" rather, it must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)). "[E]ven clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Again, the state court's determinations of law and fact must be "so lacking in justification" as to give rise to error "beyond any possibility for fairminded disagreement." *Dunn v. Madison*, 138 S. Ct. 9, 12 (2017) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Moreover, not just any Supreme Court decision will do under § 2254(d)(1). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per

curiam) (internal quotations and citations omitted). Where no Supreme Court case has confronted "the specific question presented" by the habeas petitioner, "the state court's decision [cannot] be contrary to any holding from this Court." *Woods v. Donald*, 135 S. Ct. at 1377 (internal quotation marks and citation omitted). Moreover, the Supreme Court decision must have been on the books at "the time the state court render[ed] its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks and emphasis omitted); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted).

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted). As the Supreme Court has repeatedly pointed out, "circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court." *Kernan v. Cuero*, 138 S. Ct. 4, 8 (2017) (per curiam) (quoting *Glebe v. Frost*, 135 S. Ct. 429, 430 (2014)) (per curiam). Likewise, neither do

"state-court decisions, treatises, or law review articles" constitute

clearly established Federal law as determined by the Supreme Court.

*Cuero*, 138 S. Ct. at 8.

And federal court of appeals precedent cannot "refine or sharpen a

general principle of Supreme Court jurisprudence into a specific legal

rule that [the Supreme] Court has not announced."  *Marshall v.*

*Rodgers*, 569 U.S. 58, 63,  (2013) (per curiam) (citation omitted); *see also*

*Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (providing that absent a decision

by the Supreme Court addressing "the specific question presented by [a]

case" a federal court cannot reject a state court's assessment of claim).

Further, AEDPA requires the federal court to afford deference to

the state court's decision, as opposed to its reasoning.  *See Richter*, 562

U.S. at 98–99; *Makiel v. Butler*, 782 F.3d 882, 887 (7th Cir. 2015).  This

is because a "bad reason does not necessarily mean that the ultimate

result was an unreasonable application of established doctrine."

*Makiel*, 782 F.3d at 906 (quoting *Bradly v. Pfister*, 711 F.3d 818, 827

(7th Cir. 2013)).

Under § 2254(d)(2), the "unreasonable determination" subsection,

"a determination of a factual issue made by a State court shall be

presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Wood v. Allen*, 558 U.S. 290, 293 (2010). "[A] state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks and citation omitted).

Finally, Shaver's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

# ARGUMENT

## I. The Michigan Court of Appeals reasonably rejected Habeas Claim I, regarding sufficiency of the evidence, on the merits.

In Habeas Claim I, Shaver contests the intent elements of first-degree premeditated and felony murder. But the Michigan Court of Appeals reasonably rejected this claim on the merits, finding that there was sufficient evidence for the jury to determine that Shaver shared in cohorts' intent that the victim die. Thus, Shaver is not entitled to habeas relief on this claim.

### A. The state appellate court's decision

The Michigan Court of Appeal rejected this claim on the merits:

> On appeal, Scottie first argues that there was insufficient evidence to support his conviction of first-degree murder. Specifically, he maintains that Burnette's testimony was untrustworthy, there was no evidence that he forcibly moved the victim from one place to another for the purpose of murdering her, and that the evidence showed he was merely present.

> We review de novo challenges to the sufficiency of the evidence. *People v. McGhee,* 268 Mich.App 600, 622; 709 NW2d 595 (2005). The evidence is viewed in a light most favorable to the prosecution to determine whether a rational jury could find that each element of the crime was proved beyond a reasonable doubt. *People v. Ericksen,* 288 Mich.App 192, 195–196; 793 NW2d 120 (2010).

Scottie Shaver was convicted of first-degree murder supported by two theories: premeditation and felony murder. MCL 750.316. To sustain a conviction of first-degree premeditated murder the prosecution must prove that the defendant killed the victim and that the killing was done with premeditation and deliberation. *People v. Bowman,* 254 Mich.App 142, 151; 656 NW2d 835 (2002). Premeditation means "to think beforehand." *People v. Plummer,* 229 Mich.App 293, 300; 581 NW2d 753 (1998). There is no specific time requirement for premeditation, but "sufficient time must have elapsed to allow the defendant to take a second look." *People v. Anderson,* 209 Mich.App 527, 537; 531 NW2d 780 (1995). "The previous relationship between the defendant and the victim, the defendant's actions before and after the crime, and the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted" may all be considered when determining whether the defendant acted with premeditation. *Plummer,* 229 Mich.App at 300; *Unger,* 278 Mich.App at 229.

To sustain a conviction of first-degree felony murder the prosecution must prove:

> (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316. [*People v. Seals,* 285 Mich.App 1, 12; 776 NW2d 314 (2009) (citation omitted) ].

Kidnapping is one of the specifically enumerated felonies. MCL 750.316(1)(b). In 1998, when the victim was allegedly kidnapped and murdered, the kidnapping statute provided, in relevant part, that:

Any person who willfully [sic], maliciously and without lawful authority shall forcibly or secretly confine or imprison any other person within this state against his will, ... or with intent either to cause such person to be secretly confined or imprisoned in this state against his will, ... shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years.

The Michigan Supreme Court interpreted the version of the kidnapping statute that was in effect at the time of defendants' criminal acts and concluded that if an underlying crime involves murder, movement incidental to that crime is sufficient to establish a valid statutory kidnapping. *People v. Wesley,* 421 Mich. 375, 387–388; 365 NW2d 692 (1984).

The jury was also instructed on aiding and abetting. Michigan's aiding and abetting statute provides: "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." MCL 767.39. Aiding and abetting is a theory of prosecution that "permits the imposition of vicarious liability for accomplices;" it is not a separate substantive offense. *People v. Robinson,* 475 Mich. 1, 6; 715 NW2d 44 (2006). Michigan law provides that "a defendant who intends to aid, abet, counsel, or procure the commission of *a* crime, is liable for that crime as well as the natural and probable consequences of that crime." *Id.* at 3 (emphasis in original).

There are three elements that must be proved beyond a reasonable doubt to convict on an aiding and abetting theory:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*Robinson,* 475 Mich. at 6.]

Specifically, the intent required to establish that a person aided and abetted in the commission of a crime may be inferred from circumstantial evidence. *People v. Wilson,* 196 Mich.App 604, 614; 493 NW2d 471 (1992). "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor." *Id.*

Because intent is inherently difficult to prove, minimal circumstantial evidence can establish a defendant's intent. *People v. Cameron,* 291 Mich.App 599, 615; 806 NW2d 371 (2011). Intent can be inferred from the facts and circumstances of a case, *People v. Kissner,* 292 Mich.App 526, 534; 808 NW2d 522 (2011), including a defendant's acts, *Cameron,* 291 Mich.App at 615.

In this case, the evidence demonstrated that Scottie was more than merely present, and that he forcibly moved the victim with the purpose of kidnapping or murder. Several witnesses testified that Scottie actively participated in the beating of the victim in the parking lot of the Blue Star Lounge, and that he assisted Ivory in picking the victim up and placing her in Shevolier's car. Burnette testified that Scottie ordered her to follow Shevolier's car. The jury could have inferred from this testimony that Scottie placed the victim in Shevolier's car for the purpose of kidnapping her or moving her to a more remote location in order to kill her. Moreover, this evidence shows that Scottie was not merely present, but rather, was actively participating in beating

and moving the victim. Further, Burnette testified that once they arrived at the park, Scottie continued to beat the victim, and that after the victim appeared to be unconscious, Scottie got back into Burnette's car and ordered her to run the victim's body over to ensure the victim was dead. This evidence also demonstrates Scottie's intent and active participation in the victim's murder.

We also reject Scottie's argument that Burnette's testimony was untrustworthy and should not have been believed. It is the responsibility of the finder of fact to make decisions about the credibility of witnesses and the probative value of evidence. *People v. Wolfe,* 440 Mich. 508, 514–515; 489 NW2d 748 (1992), amended 441 Mich. 1201 (1992); *People v. Harrison,* 283 Mich.App 374, 378;768 NW2d 98 (2009). Moreover, we must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v. Nowack,* 462 Mich. 392, 400; 614 NW2d 78 (2000). Thus, Scottie's argument regarding the credibility of Burnette's testimony has no merit. Accordingly, when the evidence is viewed in the light most favorable to the prosecution, there was sufficient evidence to support Scottie's conviction beyond a reasonable doubt.

*Shaver*, 2013 WL 4864204, at *8-10.

## B. Clearly established federal law regarding sufficiency of the evidence

Due process requires that the prosecutor present sufficient evidence to convince any reasonable juror that the petitioner is guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, "a federal habeas corpus court faced with a record

of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," and is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 319, 324 n.16. Due to the great deference afforded to the trier of fact under this standard, "a defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc) (internal citation and quotation marks omitted).

The U.S. Supreme Court recently iterated the limited scope of sufficiency claims on habeas review. *Cavazos v. Smith*, 132 S. Ct. 2 (2011) (per curiam). In that case, the Court stated that *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.*

at 3-4. "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if *no* rational trier of fact could have agreed with the jury." *Id.* at 4 (emphasis added). A federal court sitting in habeas "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court;" rather, the court "may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Renico v. Lett,* 559 U.S. 766, 773 (2010)).

The Supreme Court also emphasized that the *Jackson* standard is broad: "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Cavazos*, 132 S. Ct. at 4. Indeed, the Sixth Circuit Court of Appeals has noted that the *Jackson* standard is "exceedingly general." *Davis*, 658 F.3d at 535. And "the more general the rule at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—the more leeway state courts have in reaching outcomes in case-by-case determinations." *Lett*, 559 U.S. at 776 (internal citations and quotations marks omitted).

In addition, sufficiency claims are entitled to double deference on habeas review. *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam) ("In light of this twice-deferential standard, it is abundantly clear that the [state court's] rejection of Matthews' sufficiency claim is controlling in this federal habeas proceeding."); *accord Cavazos*, 132 S. Ct. at 6 ("When the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review . . . there can be no doubt of the Ninth Circuit's error below.").

## C.    Analysis

The elements of first-degree premeditated murder are (1) an intentional killing of a human being (2) with premeditation and deliberation. *People v. DeLisle*, 509 N.W.2d 885, 888 (Mich. Ct. App. 1993). "It is well settled that the intent to kill may be inferred from any facts in evidence." *People v. Unger*, 749 N.W.2d 272, 286 (Mich. Ct. App. 2008). "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill." *Id.*

"The elements of [first-degree] felony murder are (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a

high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony." *People v. Lane*, 862 N.W.2d 446, 459 (Mich. Ct. App. 2014).

The second element of felony murder essentially requires a finding of malice. *People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999). "The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Werner,* 659 N.W.2d 688, 692 (Mich. Ct. App. 2002) (citation and quotation marks omitted). "The facts and circumstances of the killing may give rise to an inference of malice. A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Carines*, 597 N.W.2d at 136.

Further, a defendant aids and abets if:

(1) the crime charged was committed by the defendant or some other person;

(2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and

>  (3) the defendant intended the commission of the crime or
>  had knowledge that the principal intended its commission at
>  the time that [the defendant] gave aid and encouragement.

*People v. Robinson*, 715 N.W.2d 44, 47-48 (Mich. 2006) (internal citation and quotation marks omitted).  The Michigan Supreme Court has held that the Legislature intended to punish aiders and abettors for both the intended offense "as well as the natural and probable consequences of that offense . . . ."  *Id.* at 49.

In this case, viewed in the light most favorable to the prosecution, the prosecution presented more than sufficient evidence demonstrating Shaver's intent to kill.  Shaver directly participated in beating the victim on several occasions that night.  (9/29/10 Trial Tr. at 214; 9/30/10 Trial Tr. at 77-78; 10/1/10 Trial Tr. at 20-21, 124, 216-17; 10/4/10 Trial Tr. at 115-16; 10/6/10 Trial Tr. at 28-29.)  Shaver also helped kidnap the victim by picking her up and putting her in the car and ordering Burnett to follow the car in which the victim had been placed.  (9/30/10 Trial Tr. at 8, 79; 10/1/10 Trial Tr. at 25-26, 180; 10/6/10 Trial Tr. at 35-36, 40-41.)  Shaver further helped pull the victim back out of the car and beat her again.  (10/6/10 Trial Tr. at 41-45.)

Moreover, Shaver heard Ivory tell the group they were going to stage the victim's death as a hit and run by putting her in the middle of the road and running over her body. (10/6/10 Trial Tr. at 45.) The victim was put back in the car and yet again Shaver told Burnett to follow the car. (*Id.* at 46-47.) Shaver told Burnett the plan to kill the victim and ordered Burnett to also run over the victim while Shaver conducted a drug transaction. (*Id.* at 48.) Shaver told Burnett, "Run that bitch over and make sure she's dead this time." (*Id.* at 53, 57.)

All of this evidence shows that Shaver not only aided and abetted the kidnapping and murder, but that he actively participated in both. His argument that he was "merely present" is absurd.

Further, Shaver asks this Court to discredit Burnett's testimony. But it is well established that a reviewing court cannot reevaluate witness credibility as that is solely the province of the jury. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "A fundamental premise of our criminal trial system is that the *jury* is the lie detector." *United States v. Scheffer*, 523 U.S. 303, 313 (1998) (internal citation and quotation marks omitted). It is the jury's province to determine "the weight and credibility of witness testimony," because jurors "are

presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *Id.* (internal citation and quotation marks omitted). In this case, the jury believed Burnett. To hold otherwise would invade the province of the jury and would fail to view the case in the light most favorable to the prosecution, as is required. *Jackson*, 443 U.S. at 319.

Accordingly, the Michigan Court of Appeals' rejection of this claim on the merits was objectively reasonable: Shaver is not entitled to habeas relief on this claim.

## II. Habeas Claim II, alleging prosecutor misconduct, is inexcusably procedurally defaulted and, in any event, the Michigan Court of Appeals reasonably rejected this claim on the merits.

In his second habeas claim, Shaver contends that the prosecutor committed misconduct by presenting perjured testimony from Burnett. But this claim is procedurally defaulted because the Michigan Court of Appeals reviewed it for plain error. In addition, the Michigan Court of Appeals reasonably rejected this claim on the merits, and any error was harmless. Thus, Shaver is not entitled to habeas relief on this claim.

## A. Shaver's claim is procedurally defaulted.

To the extent a petitioner deprives the state court of the opportunity to review his habeas claims by failing to follow reasonable state court procedures, review of the claims is procedurally defaulted. "[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Also, a state court does not fail to sufficiently rely on a procedural bar by ruling on the merits in the alternative. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1996).

A state court's review for plain error constitutes a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 336-37 (6th Cir. 2012). Plain-error review enforces "procedural default on an independent and adequate state ground." *Id.* at 337; *accord Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("[P]lain error analysis does not save a

petitioner from procedural default.").  Michigan appellate courts apply plain-error review when an issue, including a constitutional one, is unpreserved, typically a result of failing to contemporaneously object at trial.  *Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011); *see also People v. Carines*, 597 N.W.2d 130, 761-64 (Mich. 1999).  The contemporaneous-objection rule is firmly established and regularly followed in the Michigan courts and the rule serves as an adequate and independent state ground.  *Id.*

Here, Shaver failed to contemporaneously object to the prosecutor-misconduct claim.  The last state court to issue a reasoned opinion on his claim was the Michigan Court of Appeals, which denied relief because Shaver failed to demonstrate plain error.  *Shaver*, 2013 WL 4864204, at *21.  This reason for denying relief constitutes a procedural default.  *Wogenstahl*, 668 F.3d at 336-37.

A State prisoner who fails to comply with a State's procedural rule waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of

justice.  *Coleman v. Thompson*, 501 U.S. 722, 748–50 (1991); *Sutton v. Carpenter*, 745 F.3d 787, 789–90 (6th Cir. 2014).

Notably, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284–85 (6th Cir. 1989)).  For example, plain error review does not constitute a waiver of state procedural default rules.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012).  Nor does a State court fail to sufficiently rely upon a procedural default by otherwise ruling on the merits in the alternative.  *See Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001).

### 1. Habeas Claim V, alleging ineffective assistance of appellate counsel, does not establish cause and prejudice to excuse the default.

To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule.  *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680, 690–91 (6th Cir. 2007).  A petitioner must present a substantial reason to excuse the default.  *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *see also Amadeo v. Zant*, 486 U.S.

214, 222–23 (1988) (reviewing a claim that a document was concealed by officials). One recognized reason includes attorney error rising to the level of ineffective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991). This procedural default is not excused by Habeas Claim V, alleging ineffective assistance of appellate counsel.

To demonstrate ineffective assistance of appellate counsel, the petitioner must show that counsel performed deficiently and that there is a reasonable probability of a different result on appeal had counsel performed differently. *Strickland v. Washington*, 466 U.S. 668 (1984).

Appellate counsel performs deficiently if he or she fails "to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Because appellate attorneys "need not (and should not) raise every nonfrivolous claim," petitioners contending that their appellate counsel was ineffective for failing to raise a particular claim will necessarily find it "difficult to demonstrate that counsel was incompetent." *Id.* at 288.

For prejudice, a petitioner "must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That is, a petitioner must show that his appellate attorney was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir. 1992) (en banc), *cert. den.*, 508 U.S. 975 (1993); *West v. Seabold*, 73 F.3d 81, 94 (6th Cir. 1996).

Essentially, a petitioner must show that the claim he contends should have been raised on appeal was a "dead-bang winner." *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003), *aff'd*, 104 F. App'x 461 (6th Cir. 2004). "A 'dead-bang winner' is an issue which was obvious from the trial record . . . and one which would have resulted in a reversal on appeal." *Id.* (internal citations and quotation marks omitted). In fact, the Supreme Court has rejected the claim that counsel was ineffective simply because counsel did not take action when "there was nothing to lose by pursuing it." *Knowles v. Mirzayance*, 556 U.S. 111, 121-22 (2009).

Here, Shaver fails to demonstrate ineffective assistance of appellate counsel. This claim would not have prevailed on direct appeal had counsel raised it. Counsel cannot be faulted for failing to advocate a meritless position. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014). Moreover, Shaver cannot demonstrate prejudice because *he* raised this claim on direct appeal and the Michigan Court of Appeals rejected it. *Shaver*, 2013 WL 4864204, at *21.

Thus, Shaver's ineffective-assistance-of-appellate-counsel claim does not excuse his procedural default.

### 2. Failure to review this claim will not result in a fundamental miscarriage of justice.

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

To show that his case is the "extraordinary" one warranting application of this exception, Shaver must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 321, 327. While Shaver claims to have new evidence establishing his actual innocence (Habeas Claim VII), that evidence is insufficient. The state trial court addressed and rejected this alleged new evidence:

> Defendant presents a letter and affidavits from expert accident reconstruction specialist Thomas Bereza. Mr. Bereza interviewed Defendant and his trial counsel and reviewed the case and investigative materials he received from them. It is unclear whether he reviewed the transcripts of either trial and it appears he did not interview witnesses. From what he did review, he opines that the death was not a murder but rather a hit and run accident for which Defendant is not responsible. Defendant asserts as his good cause under MCR 6.508(D)(3)(a) that this is newly discovered evidence entitling him to relief. He avers that this evidence meets the *Cress* Test and "[i]f the jury would have heard this testimony, from someone trained to determine this type of event, it is possible one juror would have accepted this evidence .... [m]aking a different result possible."
>
> "For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) "the evidence itself, not merely its materiality, was newly

discovered"; (2) "the newly discovered evidence was not cumulative"; (3) "the party could not, using reasonable diligence, have discovered and produced the evidence at trial"; and ( 4) "the new evidence makes a different result probable on retrial." *People v Cress,* 468 Mich 678, 692; 664 NW2d 174 (2003).

Defendant fails to explain how the evidence itself was newly discovered. As the prosecution illustrates, Mr. Bereza reviewed materials he obtained from trial defense counsel to form his opinion. Nothing in the letters or affidavits suggests that the reviewed materials were unknown to Defendant prior to trial. In fact, it appears that they were known to Defendant prior to trial. It cannot be said, therefore, that they are "newly discovered."

He also fails to explain how he could not, using reasonable diligence, have discovered and produced the evidence at trial. Certainly Defendant could have engaged an accident reconstructionist to review the case prior to trial and the record supports that the court was willing to grant expert witness fees. In fact, Defendant argues elsewhere in his pleading that defense counsel was inadequate for failing to produce such an expert based on these materials. Defendant cannot logically argue that the evidence could not have been discovered using reasonable diligence and also argue that counsel was ineffective for failing to discover it. As well, based on the other evidence produced at trial, and considering the anticipated value of Mr. Bereza's testimony once tested by cross-examination, Defendant cannot show that his opinion would make a different result probable on retrial. Defendant fails to present good cause. He also fails to show actual prejudice pursuant to MCR 6.508(D)(3)(b)(i) and (iii). For these reasons, and because the court finds the argument meritless, Defendant is not entitled to relief on this issue.

(12/4/15 Van Buren Cir. Ct. Order at 3-4.)

The state trial court's determination was reasonable. The opinion Shaver now presents from an accident reconstructionist is just that: an opinion. It does not *prove* his actual innocence. Moreover, the standard is not whether a single juror would have believed the reconstructionist's opinion, as Shaver contends, but that *no reasonable juror* would have found Shaver guilty in light of that opinion. *Schlup*, 513 U.S. at 321, 327. This opinion also has not been subjected to cross-examination nor review by a second expert in this field.

Further, an expert finding that the death resulted in this case from a hit-and-run accident only shows that the defendants were successful in their attempt to conceal the true nature of the victim's death, considering the plan all along was to stage it as a hit-and-run. In other words, a finding that the *cause* of death was a hit-and-run does not preclude homicide as the *manner* of death. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Shaver's claim.

Accordingly, Habeas Claim II is inexcusably procedurally defaulted, and habeas relief is barred. *See Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

### B.     This claim is also meritless.

#### 1.     The state appellate court's decision

The Michigan Court of Appeals also rejected this claim on the

merits:

> Next, Scottie raises an apparent prosecutorial misconduct
> claim because he alleges that the prosecution intentionally
> introduced perjury when it called Burnette to testify. This
> issue was not raised during trial and is accordingly reviewed
> for plain error affecting defendant's substantial
> rights. *Carines,* 460 Mich. at 752–753. We conclude that the
> record does not support Scottie's claim. The record contains
> no evidence to support defendant's claim that the
> prosecution admitted known perjury or that any witnesses
> testified to events of which they had no personal knowledge,
> and Scottie does not cite the record to support his
> argument. Moreover, questions regarding the truthfulness of
> witnesses are questions for the finder of fact. *Wolfe,* 440
> Mich. at 514–515. Thus, because defendant simply fails to
> support his claim in any way, and because there is nothing
> in the record to suggest any prosecutorial misconduct, we
> conclude that defendant is not entitled to any relief.

*Shaver*, 2013 WL 4864204, at *21.

#### 2.     Clearly established federal law regarding prosecutor misconduct

The "clearly established Federal law" relevant to a habeas court's

review of a prosecutorial error claim is the Supreme Court's decision in

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*,

132 S. Ct. 2148, 2153 (2012). In *Darden*, the Supreme Court held that a

"prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The standard enunciated in *Darden* constitutes a general rule, which entitles the state court to "more leeway" in reaching its determination. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

"Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins,* 209 F.3d 486, 529 (6th Cir. 2000). This court does "not possess supervisory powers over state court trials." *Id.* "It is the responsibility of the state courts to police their prosecutors; [this court has] no such authority." *Id.* "Therefore, on habeas review, our standard is limited to 'the narrow one of due process.'" *Id.* (quoting *Darden*, 477 U.S. at 181); *see Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) ("'[T]he appropriate standard of review for ... a claim [of prosecutorial misconduct] on a [petition for a] writ of habeas corpus is

the narrow one of due process, and not the broad exercise of supervisory power.'") (quoting *Darden*, 477 U.S. at 181).

A reviewing habeas court must ask whether the state court's decision denying the petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 132 S. Ct. at 2155, (quoting *Harrington*, 131 S. Ct. at 786-87. "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial." *Byrd*, 209 F.3d at 529-30 (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). "The Court must examine 'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett,* 117 F.3d at 964 (quoting *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle*, 457 F.3d at 516 (quoting *Donnelly*, 416 U.S. at 645).

### 3. Analysis

As the Michigan Court of Appeals determined, Shaver fails to prove this claim that Burnette gave false testimony.[2]  Rather, Shaver merely disagrees with Burnette's testimony, asking this Court not to believe her.  But, as already noted in Argument I(C) above, reviewing courts may not reevaluate witness credibility because is solely in the province of the jury.  *Brown*, 567 F.3d at 205.  The fact is, the jury believed Burnette's testimony in finding the defendants guilty.  Shaver has not *shown* that Burnette lied; he only voices his disagreement with her testimony.  That, however, is wholly insufficient to warrant federal habeas relief.[3]

---

[2] Even though this claim is procedurally defaulted, the Michigan Court of Appeals' ruling that Shaver has not established plain error is entitled to AEDPA deference.  Federal constitutional claims reviewed for plain error by a state court *are* claims adjudicated on the merits and are entitled to review under AEDPA standards.  *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017); *see also Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009).

[3] To the extent Shaver contests the propriety of the state post-conviction process, that claim is not cognizable on federal habeas review.  *Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007).

### 4. Harmless error

A habeas petitioner is not entitled to relief based on State trial-court error unless he demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993); *Holland v. Rivard*, 800 F.3d 224, 243 (6th Cir. 2015). This is so even where the state appellate court did not recognize the error and review the claim for harmlessness. *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007).

A showing of "substantial and injurious effect or influence" means "actual prejudice." *Gover v. Perry*, 698 F.3d 295, 299 (6th Cir. 2012) (citing *Brecht*, 507 U.S. at 637). *See also Davis v. Ayala*, 135 S. Ct. 2187, 2197–98 (2015). This means that the habeas court is left in "grave doubt" over a matter so "evenly balanced" that the court concludes it is in a "virtual equipoise" as to the harmlessness of the error. *Davis*, 135 S. Ct. at 2211 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).

Here, any error was harmless because Burnett was not the only witness against Shaver. Lewis, Thomas, Turman, Ruiz, Martinez, and Jones all saw Shaver beat the victim. (9/29/10 Trial Tr. at 214; 9/30/10

Trial Tr. at 77-78; 10/1/10 Trial Tr. at 20-21, 124, 216-17; 10/4/10 Trial

Tr. at 115-16.)  Lewis, Turman, and Martinez saw Shaver help place the

victim in the car.  (9/30/10 Trial Tr. at 8, 79; 10/1/10 Trial Tr. at 25-26,

180.)  Ivory also confessed to a fellow inmate that Shaver, amongst

others, helped him beat "Debbie" to death and ran her over twice to

make it look like a hit-and-run accident.  (10/11/10 Trial Tr. at 94, 104-

05.)  And when Shaver confronted Martinez about what she saw that

night, she responded, "Nothing," to which Shaver said, "Good."  (10/1/10

Trial Tr. at 46.)

Thus, Shaver is not entitled to habeas relief on this claim.

## III.   Habeas Claim III, alleging a violation under *Brady v. Maryland*, is inexcusably procedurally defaulted and meritless.

Shaver argues in Habeas Claim III that the prosecution violated

*Brady v. Maryland*, 373 U.S. 83 (1963) by failing to produce the victim's

updated death certificate indicating the manner of death was homicide.

But this claim is procedurally defaulted because Shaver never

presented this claim to the state courts and cannot go back and do so

now, rendering his claim inexhaustible.  Further, the claim is meritless

and any error was harmless.  Thus, Shaver is not entitled to habeas

relief on this claim.

## A.     This claim is procedurally defaulted.

Before a federal court may grant habeas relief to a state prisoner,

the prisoner must exhaust remedies available in the state courts.  28

U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To

fulfill the exhaustion requirement, the prisoner must have fairly

presented the federal claims to all levels of the state appellate system.

*Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *see also* 28 U.S.C. §

2254(c) ("An applicant shall not be deemed to have exhausted the

remedies available in the courts of the State, within the meaning of this

section, if he has the right under the law of the State to raise, by any

available procedure, the question presented.").

If the prisoner fails to present his claims to the state courts, but

has no remaining state remedy, the claims are considered exhausted,

but procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161-

62 (1996); *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010).  If a

petitioner fails to exhaust his claims in the state courts, but "the court

to which the petitioner would be required to present his claims in order

to meet the exhaustion requirement would now find the claims procedurally barred," then "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Petitioners must present each factual issue to the state courts to properly exhaust a habeas claim. *O'Sullivan*, 526 U.S. at 843-45. "It is not enough that all the facts necessary to support the federal claim were before the state court, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

In this case, Shaver failed to exhaust the instant claim under *Brady v. Maryland*, 373 U.S. 83 (1963). While he did present *a* claim under *Brady* to the state trial court in his motion for relief from judgment, he did not present *this* claim under *Brady* to any state court. *See* Procedural History, *supra*, at 12-13. In the state courts, Shaver argued that the prosecution withheld *Brady* material related to witness Burnett. (3/26/15 Mot. for Relief from J. at 7-8.) On habeas review, however, Shaver argues that the prosecution withheld the victim's updated death certificate. (Addendum to Pet. at 24-25.) Thus, this

claim was never exhausted in the state courts.  *O'Sullivan*, 526 U.S. at 843-45.

But Shaver is now procedurally barred under state law from filing another motion for relief from judgment unless he satisfies an exception, which he cannot.  The Michigan Court Rules dictate that, after August 1, 1995, "one and only one motion for relief from judgment may be filed with regard to a conviction."  Mich. Ct. R. 6.502(G)(1).  "A defendant may file a second or subsequent motion based on [1] a retroactive change in law that occurred after the first motion for relief from judgment or [2] a claim of new evidence that was not discovered before the first such motion."  Mich. Ct. R. 6.502(G)(2).

Here, Mich. Ct. R. 6.502(G)(1) applies because Shaver already filed a motion for relief from judgment and he cannot satisfy either exception under Mich. Ct. R. 6.502(G)(2) to file a second, because there has not been a retroactive change in the law, and his new-evidence claim fails, as shown in Argument II(A)(2).  Thus, the state court would now find the claim procedurally barred.  *Coleman*, 501 U.S. at 735 n.1.

Accordingly, Shaver's instant *Brady* claim is considered exhausted but procedurally defaulted.  And the default is not excused for the

reasons stated in Argument II(A).  Thus, this claim cannot entitle Shaver to federal habeas relief.

## B.    This claim is also meritless.

### 1.    The state appellate court's decision

While Shaver raises a different *Brady* claim in his habeas petition, it is important to note nonetheless that the state trial court rejected his other *Brady* claim on the merits:

> Defendant argues *Brady* violations. These appear to be based on allegations that police influenced a witness, Adrienne Burnette, to lie and that the government should have hired a particular type of expe11 to reconstruct the scene.

> To establish a constitutional *Brady* violation, a defendant must establish that (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material. *People v Chenault,* 495 Mich 142, 155; 845 NW2d 731 (2014) citing *Strickler v Greene,* 527 US 263, 281-282; 119 SCt 1936; 144 LEd2d 286 (1999); *Brady v Mmyland,* 373 US 83; 83 SCt 1194; 10 LEd2d 215 (1963).

> As to the testimony of Ms. Burnette, Defendant appears to bring this claim under MCR 6.508(D)(2). The prosecution aptly notes that this issue was raised and decided against the Defendant on appeal:

> "We also reject Scottie's argument that Burnette's testimony was untrustworthy and should not have been believed.... Scottie's argument regarding the credibility of Burnette's testimony has no merit. ...

* * *

Next, Scottie argues that there was insufficient evidence to support his conviction because Burnette's testimony was false. We find this argument unavailing because credibility questions are for the jury and will not warrant reversal on appeal. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support Scottie's conviction, as discussed, *supra.*

Next, Scottie raises an apparent prosecutorial misconduct claim because he alleges that the prosecution intentionally introduced perjury when it called Burnette to testify. This issue was not raised during trial and is accordingly reviewed for plain error affecting defendant's substantial rights. We conclude that the record does not support Scottie's claim. The record contains no evidence to support defendant's claim that the prosecution admitted known perjury or that any witnesses testified to events of which they had no personal knowledge, and Scottie does not cite the record to support his argument. Moreover, questions regarding the truthfulness of witnesses are questions for the finder of fact. Thus, because defendant simply fails to support his claim in any way, and because there is nothing in the record to suggest any prosecutorial misconduct, we conclude that defendant is not entitled to any relief." *People v Shaver,* unpublished opinion of the Court of Appeals, issued September 12, 2013 (Docket Nos 305944, 305945, 306288) p. 21 (internal citations omitted).

As well, Defendant has not argued, let alone established, any retroactive change in the law which has undermined the Court of Appeals decision. Defendant's issue lacks merit and he is not entitled to relief under MCR 6.508(D)(2).

Defendant also asserts as a *Brady* violation the goverlll11ent's failure to retain an appropriate accident reconstructionist. The prosecution correctly observes that law enforcement has no constitutional duty to hire a

particular type of expet1 preferred by the defense. Also, there can be no *Brady* violation when the prosecution never possessed the evidence Defendant claims was withl1eld. There was simply no evidence suppressed by the prosecution. In addition, the prosecution properly points out the deficiencies in the foundation of Mr. Bereza's opinion. As a result, Defendant has not established that accident reconstructionist testimony would be favorable or material. This claim is also without merit and Defendant has shown neither good cause nor actual prejudice.

(12/4/15 Van Buren Cir. Ct. Order at 4-5.)

  **2. Clearly established federal law regarding the prosecution's obligation to disclose exculpatory evidence under *Brady v. Maryland***

  In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

  To prove prejudice (and materiality) under *Brady*, a petitioner must show that "the nondisclosure was so serious that there is a

reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281. "A reasonable probability of a different result is . . . shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (internal quotation marks and citations omitted). That is, to establish a *Brady* violation, a petitioner must show "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435. "No *Brady* violation occurs, however, where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source." *Workman v. Bell*, 178 F.3d 759, 767 (6th Cir. 1998), *cert. denied*, 528 U.S. 913 (1999) (internal quotation marks and citation omitted).

"The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady,* makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). But the same is not true with respect to preserving potentially

exculpatory evidence.  *Id.*  The Supreme Court has refused to impose on the police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."  *Id.* at 58.  Thus, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  *Id.*

### 3.    Analysis

Here, Shaver argues that the prosecution failed to disclose the victim's update death certificate before trial.  But that is not the case.  Not only did Dr. Palutke testify that the manner of death had been changed to homicide in the death certificate, but the updated death certificate was actually shown to Dr. Palutke during the trial.  (10/5/10 Trial Tr. at 222; 10/6/10 Trial Tr. at 20-21.)  Thus, Shaver's claim fails from the outset.

Moreover, the updated death certificate was not exculpatory or favorable to the defense.  The certificate was changed *to* homicide, not *from* homicide.  While the latter would have been favorable to the defense, the former was not.

Finally, the updated certificate was not material. Regardless of what the death certificate said in the past or the present, the jury was free to find Shaver guilty of murder in light of all of the other evidence presented at trial, including the fact that Shaver participated in beating and kidnapping the victim and told Burnett to run the victim over a second time to ensure that she was dead. In short, the updated certificate would not have cast the case in an entirely different light. *Kyles*, 514 U.S. at 435.

Thus, Shaver is not entitled to habeas relief on this claim.

### 4. Any error was harmless.

For the same reasons that Shaver did not suffer any prejudice, any error was harmless. *Brecht*, 507 U.S. at 622.

## IV. Habeas Claim IV, alleging a violation under the Confrontation Clause, is inexcusably procedurally defaulted and meritless.

In Habeas Claim IV, Shaver contends that his right to confront the witnesses against him was violated when Dr. Mallard was not called to testify regarding the update to the death certificate to reflect the manner of death as homicide. But this claim is inexcusably

procedurally defaulted, because Shaver failed to exhaust this claim and cannot now return to the state courts to do so. Additionally, this claim is meritless and any error was harmless. Thus, Shaver is not entitled to federal habeas relief on this claim.

### A. This claim is procedurally defaulted.

This claim is also procedurally defaulted due to inexhaustibility. *Coleman*, 501 U.S. at 735 n.1. Shaver never presented this claim to the state trial court, raising it for the first time in his application for leave to appeal in the Michigan Court of Appeals from the denial of his motion for relief from judgment. *See* Procedural History, *supra*, at 12-13. Thus, this claim was never exhausted in the state courts, and Shaver cannot return to the state courts to file another motion for relief from judgment, for the same reasons stated in Argument III(A). Accordingly, this claim is procedurally defaulted.

Moreover, the default cannot be excused by Shaver's claims of ineffective assistance of appellate counsel (Habeas Claim V) nor his alleged newly discovered evidence. *See* Argument II(A).

Thus, Shaver procedurally defaulted this claim, barring federal habeas review.

**B.    This claim is also meritless.**

Here, Shaver contends that he was deprived of his rights under the Confrontation Clause because Dr. Millard did not testify at the trial. Not so.

"[I]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "[T]his provision bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).  A statement is testimonial if it was made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.  *Crawford*, 541 U.S. at 52.

Here, the statements at issue—the death certificate and the reasons for that change from Dr. Millard—were not testimonial.  Unlike laboratory reports, such as autopsy reports, the Supreme Court has been clear that "medical reports created for treatment purposes" are not testimonial.  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2

(2009). The death certificate in this case as more akin to a medical report than an autopsy report because the death certificate is an administrative or ministerial document, rather than one prepared for and reflecting a medical examiner's opinion on the cause and manner of death for potential prosecution.

In fact, in a similar case, this Court has held that a habeas petitioner was not entitled to relief where a medical examiner testified that he and another examiner had initially concluded the victim's death was accidental, but then updated the autopsy report and death certificate to reflect homicide as the manner of death after additional investigation. *Williams v. Palmer*, No. 1:16-cv-1091, 2017 WL 393385, at *4 (W.D. Mich. Jan. 30, 2017) (concluding that defense counsel did not render deficient performance for failing to object to the medical examiner's testimony recounting that another examiner amended the death certificate).

Thus, the Confrontation Clause was not violated: Shaver is not entitled to habeas relief on this claim.

## C.     Any error was harmless.

In any event, any error was harmless, because Shaver had an opportunity to cross-examine Dr. Palutke about the updated death certificate, the updated certificate was not exculpatory, and, regardless of the finding on the death certificate, the jury was presented with more than sufficient evidence upon which to find Shaver guilty of first-degree murder.  *See* Arguments III(B)(4) & I(C).

Thus, Shaver is not entitled to habeas relief.

## V.     Habeas Claim VI, alleging various instances of ineffective assistance of trial counsel, is inexcusably procedurally defaulted and meritless.

In Habeas Claim VI, Shaver alleges ineffective assistance of trial counsel in several respects.  But his claim is procedurally defaulted, because the state trial court held Shaver did not show good cause and actual prejudice for failing to raise the claims on direct appeal under Michigan Court Rule 6.508(D)(3).  In any event, the state trial court also conducted a merits analysis and concluded that each ineffective-assistance claim was meritless.  Thus, Shaver is not entitled to habeas relief on this claim.

## A. This claim is procedurally defaulted.

The Sixth Circuit Court of Appeals has stated that Mich. Ct. R. 6.508(D)(3) establishes a procedural bar on federal habeas review. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). Moreover, when the Michigan appellate courts issue ambiguous orders citing only Mich. Ct. R. 6.508(D) in affirming the trial court's denial of a motion for relief from judgment, a federal habeas court must "look to the last reasoned state court opinion to determine the basis for the state court's rejection of [the petitioner's] claim." *Id.*

In this case, Shaver failed to comply with a state procedural rule that requires defendants to show good cause and actual prejudice for failing to raise a post-conviction claim on appeal rather than in a motion for relief from judgment. The last state court to issue a reasoned opinion on his claim was the state trial court, which denied relief because Shaver failed to show good cause and actual prejudice for his failure to raise his ineffective-assistance claims on direct appeal. (12/4/15 Van Buren Cir. Ct. Order at 8-13.) This reason for denying relief constitutes a procedural default. *Guilmette*, 624 F.3d at 291.

Moreover, Shaver's procedural default is not excused by his assertions of ineffective assistance of appellate counsel (Habeas Claim V) or newly discovered evidence. *See* Argument II(A).

Accordingly, Habeas Claim VI is procedurally defaulted, barring habeas review.

**B.    This claim is also meritless.**

**1.    The state trial court's decision**

The state trial court also rejected this claim on the merits:

Weaved throughout Defendant's motion is the theme of ineffective assistance of trial counsel. He asserts ineffective assistance of appellate counsel as his reason for failing to raise these issues previously. He brings these claims now under MCR 6.508(D)(3).

In proving ineffective assistance of counsel, a defendant must overcome the presumption that the challenged action or inaction was a matter of strategy. *People v Leonard,* 224 Mich App 569, 592; 569 NW2d 663 (1997). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland v Washington,* 466 U.S. 668, 686; 104 S Ct 2052 (1984). "Reasonably effective assistance" is the standard. *Id.* "A convicted defendant making a claim of ineffective assistance must identify the acts or omission of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.

a. INSUFFICIENT INVESTIGATION

Defendant argues many areas in which defense counsel's "investigation" was insufficient. He makes sweeping claims that defense counsel failed to investigate Adrienne Burnette's testimony. He argues defense counsel should have called Glover Dandridge, Evita Rivera, and LaTisha Hollings as witnesses. He alleges that the Medical Examiner was a critical witness who was "somehow overlooked by counsel" who changed his findings "based solely on Ms. Burnette's perjured testimony." He argues that had defense counsel conducted an adequate investigation, the result of his trial probably would have been different.

An attorney has a duty to conduct a reasonable investigation, and failure to do so can amount to ineffective assistance of counsel. *People v Grant,* 470 Mich 477, 485-486; 684 NW2d 686 (2004). The investigation must be reasonably conducted to permit a strategic choice on what evidence to present. *Wiggins v Smith,* 539 US 510, 522-523; 123 SCt 2527; 156 LEd2d 471 (2003).

However, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Davis (On Rehearing),* 250 Mich App 357, 368; 649 NW2d 94 (2002). The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v Dixon,* 263 Mich App 393, 312; 688 NW2d 308 (2004). A defense is substantial if it might have made a difference in the outcome of the trial. *People v Kelly,* 186 Mich App 524, 526; 465 NW2d 569 (1990); *LaVearn,* 448 Mich 207, 216; 528 NW2d 721 (1995).

The record reflects trial counsel did investigate Ms. Burnette's testimony. Counsel used the readily available evidence to impeach her credibility by questioning her extensively about her investigative subpoena testimony that was the basis for her perjury conviction. TT Vol. 12, pgs. 82-170. This cross-examination included an admission from Burnette that she lied under oath. TT Vol. 12, pg. 157.

Defense counsel called witness Angela Goodwin to testify that when Burnette had made previous statements regarding the incident, she never implicated Defendant in the death. TT Vol. 17, pgs. 106, 109-112.

As to the witnesses Glover Dandridge, Evita Rivera, and LaTisha Hollings who were not called, the court finds the decision not to call them to be a matter of trial strategy. As well, none of the witnesses' testimony would have been outcome determinative. The court notes that there is inherent risk in calling any witness, and counsel must engage in a risk benefit analysis of each potential witness. Here, the prosecution properly highlights the many risks associated with these witnesses, and the minimal benefit in their proposed testimony. Furthermore, Defendant's portrayal of their testimony at the first trial is not complete, and omits testimony that would have been damaging to him had they been called at the second trial.

Defendant avers Mr. Dandridge testified there was no fight in the parking lot. However, Mr. Dandridge testified that there was a commotion in the parking lot and a group of 20 to 25 people on the north side of the parking lot, but that he could not see into the crowd. He also testified about the establishment's liquor license, and the importance of the liability attached to it. He testified it was important to get everyone off of the premises when the commotion started in the bar. He testified he knew the disturbance in the bar involved people fighting, pushing, and shoving, and knew about the commotion in the parking lot. However, he stated never saw any of those involved in either incident nor did he see any actual punches thrown. He also stated he couldn't remember if Defendant, Ivory Shaver, Shevy Gill or Edward Foster were even at the bar that night. 2010 TT Vol. 7, 41-126.

Defendant avers Ms. Hollings testified that the victim was laying on her car after the altercation, and that she offered the victim a ride home that was rebuffed. While this is true,

she only testified to this after being asked a leading question on cross-examination. On direct examination she did not mention that she had any contact with the victim in the parking lot. She also testified that during the investigation she was extensively questioned about whether or not she may have hit the victim. She also testified as to having a poor memory of the evening, as she repeatedly answered "I don't remember" to specific questions about the night. She also testified that when she went outside, she saw a big crowd in the parking lot and saw the Defendant, Ivory, and Shevy fighting and hitting the victim with fists in the center of the crowd. She testified she saw the victim fall to the ground more than once in the crowd. She was also asked about telling an officer the day after the incident that she didn't see any fight. 2010 TT Vol. 9, 164-199.

Ms. Holling's testimony conflicts with Defendant's portrayal of Mr. Dandridge's testimony. She clearly testified that there was a fight in the parking lot involving Defendant, Ivory, and Shevy fighting and hitting the victim. Mr. Dandridge didn't say there was "no fight" in the parking lot; he testified there was a commotion and a group of 20-25 people in the parking lot. His testimony is consistent with Ms. Holling's testimony, as he would not have been able to see into the middle of the crowd. He also testified he was watching the people due to liability concerns, which is consistent with the several witnesses who testified that there was a fight in the parking lot.

Contrary to Defendant's assertions, both Ms. Holling and Mr. Dandridge had motive to portray themselves in a positive light. Testimony that Mr. Dandridge watched the crowd break up and leave with no reason to call the police, and that Ms. Holling offered the victim a ride home after she was pushed off of her car, would insulate them from seeming indifferent to the violence that night. As well, it is clear they would have given testimony that would be damaging to Defendant. Both would have generally corroborated Ms. Burnette's version of events, and Ms. Holling would have

confirmed that Defendant was in the middle of the crowd fighting with the victim.

Ms. Rivera testified that she was wasted when the bar cleared and doesn't remember the night with clarity. She testified that she didn't know or recognize any of the Defendants. Her impeachment of Ms. Burnette was equivocal at best, as she testified that it was inaccurate but possible that she and Ms. Burnette went to the bar together that evening. She also corroborates that there was a big crowd in the parking lot. 2010 TT, Vol. 14, 26-47.

While her testimony provides some impeachment value, it is clear that she would also confirm that there was a crowd in the parking lot in direct contradiction to Defendant's contention that there was no fight in the parking lot. Again, she also has a motive to avoid looking indifferent to the violence that night.

As to Dr. Palutke, the record reflects defense counsel did cross examine him on his change of opinion from accidental death to homicide. TT Vol. 14, pgs. 62-67, 72, 77-78. Furthermore, defense counsel engaged the services of an expert forensic pathologist, Dr. Brian Hunter, who testified at trial on Defendant's behalf and advanced the same theory of hit-and-run Defendant asserts today. TT Vol. 17, pgs. 4-38, 83-89.

In his amendment, Defendant also alleges defense counsel should have called Dr. Mallard to testify why he changed his findings from accidental to homicide. However, the record shows that it was Dr. Palutke who changed his opinion from accidental death to homicide as discussed above. It is unclear who Dr. Mallard is and how he is connected to this case from Defendant's amendment and the record. As such, Defendant's argument as to Dr. Mallard is without merit.

In addition, defense counsel also engaged a private investigator who was paid significant sums of money to

investigate Defendant's case. In sum, the record supports that defense counsel's investigation of law and facts relevant to plausible options for the defense allowed him to make strategic decisions on what evidence to present. Defendant's sweeping claims that defense counsel failed to investigate the testimony of Ms. Burnette are not supported by the record, and he points to no specific fact or law that defense counsel should have investigated that would have been outcome determinative in his case. The same can be said for his arguments regarding Dr. Palutke, Mr. Dandridge, Ms. Rivera, and Ms. Hollings, as he was not deprived of a substantial defense. Defendant has failed to show that his counsel was ineffective in his investigation or presentation of witnesses, nor has he shown substantial prejudice. This argument fails under MCR 6.508(D)(3) and is without merit.

## b. PERJURED TESTIMONY

Defendant argues defense counsel was ineffective for failing to move the court to suppress perjured testimony by Adrian Travier and Adrienne Burnette. It appears he positions these arguments under 6.508(D)(3). As noted above, the Court of Appeals ruled that Defendant's arguments as to Ms. Burnette's credibility were without merit. As well, the Court of Appeals determined that the statements of Ivory Shaver to Adrian Travier were admissible as to all codefendants.

An attorney is not ineffective for failing to make a futile objection, *People v Fike,* 228 Mich App 178, 182; 577 NW2d 903 (1998), nor is an attorney ineffective for failing to file a meritless motion, *People v Traylor,* 245 Mich App 460, 463; 628 NW2d 120 (2001). Whether to object to a perceived impropriety is a matter of trial strategy. *People v Matuszak,* 263 Mich App 42, 58; 687 NW2d 342 (2004).

As to Adrian Travier's testimony, the trial court ruled the testimony was admissible after hearing arguments from the pa1ties on the Prosecutor's Motion in Limine to introduce this evidence and a co-defendant's Motion to Preclude it. The

court noted at the hearing on these motions that defense counsel filed a written response to the prosecution's motion. Evidentiary Hearing Transcript, May 2, 2011, pg. 170, In 5-7. Defense counsel concurred with co-defense counsel's extensive arguments on this issue, and he vigorously argued against the motion. *Id.* pg. 209-214. As such, defense counsel did object to this evidence, and was not ineffective as Defendant suggests. Furthermore, the Court of Appeals affirmed the trial court's decision to allow the evidence, which suggests any further defense counsel effo1ts to exclude the evidence would have been futile.

Defendant cites to *People v Poole,* 444 Mich 151; 506 NW2d 505 (1993), abrogated on other grounds by *People v Taylor,* 482 Mich 368, 378-379; 795 NW2d 361 (2008), in support of his argument that a motion to exclude Ms. Burnette's trial testimony would have been successful. This argument lacks merit.

Defendant also argues counsel should have motioned the court for the suppression of Burnette's testimony because it conflicted with the testimony offered by other witnesses. Defendant provides no law in support of his argument that testimony should be excluded simply because it conflicts with other testimony. This would have been a futile motion and defense counsel is not ineffective for failing to make futile motions.

Defendant's arguments on these claims are unavailing and fail to satisfy either MCR 6.508(D)(2) or (D)(3).

c. BREAKDOWN OF ATTORNEY-CLIENT RELATIONSHIP

Defendant argues counsel (1) refused to meet with him; (2) refused to receive phone calls from him; (3) failed to master the record to make timely post-conviction motions; and (4) failed to adequately prepare for pretrial proceedings. He argues these four issues resulted in a total breakdown in the

attorney-client relationship depriving him of effective assistance of counsel and a fair trial.

As noted above, the record indicates Defendant was not deprived of a substantial defense, and his argument that there was a total breakdown of the attorney-client relationship with counsel is without merit. Defendant has also failed to show good cause for failing to raise this issue in his Standard 4 Brief on appeal or actual prejudice.

## d. FELONY MURDER DOCTRINE

Defendant avers that felony murder is unconstitutional and that his counsel was ineffective for failing to raise it. Specifically, he theorizes that, because he was never charged with the predicate kidnapping, his first-degree murder conviction based on a felony murder theory is unconstitutional. Finally he avers the trial court erred by failing to instruct on the law of malice, which he claims must be proven to get a felony murder conviction citing to *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980).

The Court in *Seals* addresses the issues raised by Defendant:

> "We adopt the holdings of the other jurisdictions. Michigan's felony-murder statute requires only proof that the murder occurred during the commission of a specified felony. There is no additional requirement that the defendant be *charged and convicted of* the underlying felony .... The decision in *Ream* reinforces that felony murder and the underlying felony are separate offenses. The state's inability to prosecute the predicate crime because of a time limitation has no effect on the question whether the predicate crime was actually committed.

> \* \* \*

In considering defendant's argument that counsel was ineffective for failing to object to the first-degree murder charge having been brought on a predicate felony whose limitations period had expired, we would note that at the time of trial there was no binding authority to support defendant's argument. With this Court's resolution of the issue contrary to defendant's position and the fact that there was no prior established caselaw on which to base an objection, counsel cannot be said to have been ineffective for failing to object." *People v Seals,* 285 Mich App 1, 16, 18; 776 NW2d 314 (2009).

Pursuant to *Seals,* Defendant's argument regarding kidnapping is without merit. As well, his malice argument is unavailing. Defendant has also failed to show good cause or actual prejudice under MCR 6.508(D)(3).

e. GREAT WEIGHT OF THE EVIDENCE

Lastly, Defendant argues counsel was ineffective for failing to challenge the great weight of the evidence in this case. His argument must fail as the Court of Appeals has decided this issue against him. Appellate counsel presented this argument to the Court of Appeals by challenging the sufficiency of the evidence. Trial counsel was not ineffective for failing to make the same challenge in the trial court because the challenge would have been futile. This argument fails under both MCR 6.508(D)(2) and (3) and is without merit.

(12/4/15 Van Buren Cir. Ct. Order at 8-13.)

### 2. Clearly established federal law regarding ineffective assistance of trial counsel

To establish ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was objectively unreasonable and that he was prejudiced by counsel's action or inaction. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). Both prongs must be satisfied to establish ineffective assistance; if a petitioner cannot satisfy one prong, the other need not be considered. *Id.* at 697.

With respect to performance, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Yet the reviewing court is required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as he did. *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011). "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 562 U.S. 86, 89 (2011). In addition, the *Strickland* standard "calls for

an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Id.* at 110.

The prejudice prong requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[4] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* That "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Richter*, 562 U.S. at 112). Reviewing courts must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

---

[4] "The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)] harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).

But on habeas review, a petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Durr v. Mitchell*, 487 F.3d 423, 435 (6th Cir. 2007). The question on habeas review "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *accord Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.").

Accordingly, the Supreme Court has indicated that "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Richter,* 562 U.S. at 105. And because the *Strickland* standard is general, "a State court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Mirzayance*, 556 U.S. at 120.

Ineffective-assistance claims adjudicated on the merits in the state court are entitled to double deference on habeas review. The Supreme Court has stressed that the "standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter,* 562 U.S. at 105.

"If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

### 3. Analysis

The State concurs in, and will not repeat, the thorough analysis conducted by the state trial court. Shaver fails to demonstrate any deficiencies in counsel's performance. Indeed, the decision of which witnesses to call at trial is a matter of trial strategy left to the sound discretion of trial counsel. *Robinson v. Lafler*, 643 F. Supp. 2d 934, 939 (W.D. Mich. 2009) (citing *Strickland*, 466 U.S. at 689). Further, "[c]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). And, finally, counsel cannot be faulted for failing to advocate a meritless position.

*Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014). Shaver's numerous complaints about his counsel fall within each of these categories.

Moreover, Shaver fails to demonstrate any reasonable probability of a different outcome. The evidence against Shaver was very strong, including numerous witnesses who saw him beat and assist in kidnapping the victim shortly before two cars ran her over in an effort to stage the murder as an accidental hit-and-run. In fact, Shaver prompted the driver of the second vehicle to, "Run that bitch over and make sure she's dead this time." (10/6/10 Trial Tr. at 53, 57.)

Thus, Shaver is not entitled to habeas relief on this claim.

## VI.  Habeas Claim VII, alleging actual innocence, is not cognizable and meritless.

In Habeas Claim VII, Shaver alleges actual innocence based on a post-conviction accident reconstructionist's opinion that the victim died as a result of a hit-and-run car accident. But because this claim is freestanding, it is not cognizable on federal habeas review. Further, this claim is meritless, as discussed in Argument II(A)(2).

## A.    This claim is not cognizable.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.* "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "The guilt or innocence determination in state criminal trials is 'a decisive and portentous event.'" *Herrera*, 506 U.S. at 401 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)). Accordingly, freestanding actual-innocence claims are not cognizable on federal habeas review. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007).

Petitioners may obtain habeas relief only if the state courts unreasonably applied clearly established federal law, as determined by the U.S. Supreme Court, or unreasonably determined the facts. 28 U.S.C. § 2254(d). The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim

of actual innocence." *McQiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). If an issue remains open, it by definition is not clearly established and, thus, cannot constitute grounds for federal habeas relief. *Daniel v. Wriggelsworth*, 748 F.3d 295, 300-01 (6th Cir. 2014).

Because Shaver presents this as a freestanding actual-innocence claim, it is not cognizable on federal habeas review and, thus, cannot entitle him to relief.

### B.    This claim is otherwise meritless.

As shown in Argument II(A)(2), this claim is meritless.  Thus, Shaver is not entitled to habeas relief on this claim.

### VII.  Habeas Claim VIII, alleging a violation under the Confrontation Clause and judicial bias, is procedurally defaulted and, in any event, the Michigan Court of Appeals reasonably rejected this claim on the merits.

In his final claim, Shaver contends that his rights under the Confrontation Clause were violated by the admission of Ivory's confession to a fellow inmate, along with judicial bias.  But this claim is inexcusably procedurally defaulted.  Additionally, the claim is meritless and any error was harmless.  Thus, Shaver is not entitled to habeas relief on this claim.

## A.     This claim is procedurally defaulted.

For the same reasons stated in Argument IV(A), this claim is inexcusably procedurally defaulted because Shaver raised this claim for the first time in his application for leave to appeal in the Michigan Court of Appeals from the denial of his motion for relief from judgment. Thus, this claim is unexhausted, but because Shaver has already filed one motion for relief from judgment and would not meet the exceptions for filing a second, the claim is procedurally defaulted because it is inexhaustible.  Moreover, the default cannot be excused.  *See* Argument II(A).  Thus, this claim cannot entitle Shaver to habeas relief.

## B.     In any event, this claim is meritless.

### 1.     The state appellate court's decision

While Shaver did not raise this claim on direct appeal, Shaver's co-defendant, Shevolier Gill, with whom Shaver was jointly tried and their cases on appeal heard, *did* raise this claim and the Michigan Court of Appeals rejected it on the merits:

> Next, Shevolier argues that the trial court reversibly erred by admitting co-defendant Ivory's statement to Travier as evidence against her pursuant to MRE 804(b)(3).[6]

> [FN 6:]     Shevolier concedes that under *Crawford v. Washington,* 541 U.S. 36; 124 S Ct 1354; 158

L.Ed.2d 177 (2004), Ivory's statements to Travier were not testimonial; thus, the Confrontation Clause is not implicated by their admission.

We review for an abuse of discretion preserved evidentiary issues. *People v. Lukity,* 460 Mich. 484, 488; 596 NW2d 607 (1999). It is an abuse of discretion to admit evidence that is inadmissible as a matter of law. *Id.* "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v. Young,* 276 Mich.App 446, 448; 740 NW2d 347 (2007). If an abuse of discretion is found, reversal is not required unless "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Lukity,* 460 Mich. at 495–496(quotations omitted); *People v. Knapp,* 244 Mich.App 361, 378; 624 NW2d 227 (2001). When the admission of evidence involves a preliminary question of law such as whether a rule of evidence or statute governs admissibility of the evidence, this Court reviews the question of law de novo. *Lukity,* 460 Mich. at 488.

The disputed evidence was admitted pursuant to Travier's testimony. Travier, who was incarcerated with Ivory, sent a letter to the Van Buren County Prosecutor's Office stating that he had information regarding the investigation of Deborah Boothby's death. Travier testified that he and Ivory walked almost every day together and that they often talked about parole. He testified that Ivory expressed concern about whether his parole decision was being delayed because of an investigation. Travier testified that Ivory eventually told him about a "white girl named Debbie that was beaten to death" and that her death involved Ivory, Ivory's nephew and "Ed and somebody named Shevy, a female named Shevy."[7] Travier testified that later Ivory "flat out told" him what he had done. Travier testified:

[Ivory] said that a female, white female named Debbie was beaten to death and ran over twice to make it look like a hit and run. And he had told his nephew on numerous occasions that she shouldn't, that he should have been quit dealing with her and he kept getting into it with her. And she knew some things that she shouldn't have knew. And they had reason to get rid of her. So they tried to make it look like a hit and run. Beat her to death. Ran over the body twice and threw it out the car on the way to Kalamazoo. That's what he told me.

[FN 7:]    Shevolier testified during trial that people refer to her as Shevy.

Travier testified that he did not ask Ivory questions because he did not want Ivory to be suspicious that he was going to tell law enforcement about what happened. Travier explained that when Ivory told him about the murder, they were having a conversation, and he asked Ivory what happened, and then Ivory told him, but that it was not as if he was trying to pull information out of Ivory. He explained that Ivory stated that "if everyone be quiet and keep they mouth shut, I could be cleared of this case," and that in response Travier asked how many people were with Ivory, and Ivory responded by saying his nephew, a female named Shevy and one other guy were with him.

The trial court permitted Travier to testify to Ivory's statements under the hearsay exception for statements against penal interest, set forth in MRE 804(b)(3), which provides in pertinent part:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against

another, that a reasonable person in the
declarant's position would not have made the
statement unless believing it to be true.

When evaluating a trial court's decision to admit or exclude
an inculpatory statement against penal interest under MRE
804(b)(3), this Court should consider three factors: "(1)
whether the declarant was unavailable, (2) whether the
statement was against penal interest, (3) whether a
reasonable person in the declarant's position would have
believed the statement to be true." *People v.. Barrera,* 451
Mich. 261, 268; 547 NW2d 280 (1996); *People v. Schutte,* 240
Mich.App 713, 716 n 2; 613 NW2d 370 (2000), abrogated on
other grounds by *Crawford v. Washington,* 541 U.S. 36; 124
S Ct 1354; 158 L.Ed.2d 177 (2004). Moreover, such
statements are admissible against a codefendant when "the
declarant's inculpatory statement is made in narrative form,
by his own initiative, and is reliable because as a whole it is
against the delcarant's own interest." *Schutte,* 240 Mich.App
at 717, citing *People v. Poole,* 444 Mich. 151, 161; 506 NW2d
505 (1993), abrogated on other grounds by *People v.
Taylor,* 482 Mich. 368, 378–379; 759 NW2d 361 (2008). The
Court in *Poole* analyzed the admissibility of a defendant's
statement inculpating his codefendant under MRE 804(b)(3),
noting that the exception permits the admission of hearsay
statements "where the circumstances indicate that, unlike
general hearsay statements, such statements may be
presumed to be reliable." *Id.* at 160. It noted that the
"principal concern" of the rule barring the admission of
hearsay is reliability, which can be determined by
considering the content of any statement and the
circumstances in which it was made. *Id.* at 161. The Court
explained that

"[W]here, as here, the declarant's inculpation of
an accomplice is made in the context of a
narrative of events, at the declarant's initiative
without any prompting or inquiry, that as a
whole is clearly against the declarant's penal

> interest and as such is reliable, the whole statement—including portions that inculpate another—is admissible as substantive evidence at trial pursuant to MRE 804(b)(3). [*Id.*]

The Court recently affirmed this analysis in *Taylor,* 482 Mich. at 379.

In this case, it is not disputed that the declarant, Ivory, was unavailable because he exercised his Fifth Amendment right not to testify. Moreover, Ivory's statement was clearly against his penal interest because he admitted to personally murdering a woman with the assistance of codefendants; he did not attempt to minimize his role in the murder. Finally, a reasonable person would recognize the incriminating nature of the statement and would believe that such a confession would be true. See *People v. Ortiz–Kehoe,* 237 Mich.App 508, 518; 603 NW2d 802 (1999). Thus, Ivory's statement to Travier satisfies the requirements for admission under MRE 804(b)(3), and is clearly admissible against Ivory.

In order to be admissible against all defendants, including Shevolier, the statement must satisfy the requirements set forth by *Poole:*that the statement was made in narrative form, by the declarant's own initiative, and is reliable as a whole because it was against the declarant's own interest. *Poole,* 444 Mich. at 161. In this case, Travier testified that he and Ivory were friends while incarcerated together and often discussed parole. He testified that one day Ivory told him he was concerned about his parole being denied due to an investigation, and eventually that Ivory "flat out told" Travier what he had done. Ivory told Travier about the murder in a narrative form. Travier testified that he did not ask probing questions, only that he asked who was with Ivory after Ivory kept referring to "everyone." Travier explained they were just having a normal conversation and he was not trying to pull information out of Ivory. Finally, Ivory's statement was clearly incriminating.

Thus, because Ivory was clearly incriminating himself in his statement, and he volunteered names when Travier asked for a number, and he clearly told the story in narrative form on his own initiative, the statements were properly admitted against both Ivory and his codefendants. Accordingly, the trial court did not abuse its discretion.

*Shaver*, 2013 WL 4864204, at *16-18. Because the Michigan Court of Appeals' decision applies equally to Shaver, the decision is entitled to AEDPA deference. 28 U.S.C. § 2254(d).

### 2. Clearly established federal law regarding confrontation and judicial bias

Under the Sixth Amendment, a criminal defendant is guaranteed the right to confront the "witnesses against him." U.S. Const. amend. VI. The Confrontation Clause protects a defendant's literal right to confront witnesses at the time of trial (cases involving the admission of out-of-court testimonial statements), and a defendant's right to cross-examination (cases involving restrictions on the scope of cross-examination). *Delaware v. Fensterer*, 474 U.S. 15 (1985). A statement is testimonial if it is made in anticipation of criminal prosecution. *Crawford*, 541 U.S. at 52.

With respect to joint trials, *Bruton v. United States*, 391 U.S. 123 (1968) "held that a defendant is deprived of his Sixth Amendment right

of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987).

Further, with respect to judicial bias, "the floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' . . . before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (internal citation omitted). "Trial judges have a wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty." *Brown v. Palmer*, 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

"However, in reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process." *Brown*, 358 F. Supp. 2d at 657. "To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that

during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer." *Id.* "A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted." *Id.*

In fact, a judge's "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556.

### 3.    Analysis

In this case, Shaver contends that the admission of Ivory's confession to Travier violated Shaver's rights under the Confrontation Clause. But because that statement was not testimonial, it necessarily did not violate the Confrontation Clause.

"Because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to

nontestimonial statements." *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009). Confessions typically fall under the Confrontation Clause because they are given to police officers during custodial interviews, which are testimonial. *Crawford*, 541 U.S. at 52. But in this case, Ivory confessed to a fellow inmate, who later wrote a letter to the prosecutor indicating he had information about Shaver. That, as the Michigan Court of Appeals determined, renders Ivory's statement nontestimonial. *Shaver*, 2013 WL 4864204, at *16 n.6. Thus, the Confrontation Clause necessarily was not violated by the admission of the statement in this joint trial.

Further, Shaver claims that the trial court showed judicial bias by ruling to admit the statement over his objection. A simple adverse ruling, however, does not demonstrate judicial bias. *See Brown*, 358 F. Supp. 2d at 657. This ruling was nothing more than "[a] judge's ordinary efforts at courtroom administration . . . ." *Liteky*, 510 U.S. at 556. There was no error.

Consequently, Shaver is not entitled to habeas relief.

### 4. Any error was harmless.

In any event, even if the statement was admitted in error, any resulting error was harmless. There was a plethora of other evidence against Shaver beyond this single contested statement. *See* Argument I(C). Thus, Shaver is not entitled to habeas relief on this claim.

# CONCLUSION

Shaver procedurally defaulted Habeas Claims II, III, IV, VI, and VIII. He has not shown cause and prejudice to excuse the default. In addition, he has not shown failure to review the claims would result in a fundamental miscarriage of justice. Accordingly, as detailed above, habeas review of Habeas Claims II, III, IV, VI, and VIII should be barred.

In any event, the state courts' rejection of Shaver's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Shaver was "entitled to a fair trial but not a perfect one." *Deleware v. Van Arsdall*, 475 U.S. 673, 681 (1986); *see also United States v. Hasting*, 461 U.S. 499, 508–509 (1983) ("[T]here can be no such thing as an error-free, perfect trial" and the Constitution "does not guarantee such a trial.") The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The formidable threshold for granting habeas relief has not been met because fairminded jurists

could disagree on the correctness of the state court's decision. *Yarborough*, 541 U.S. at 664. Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. And the State asserts that Shaver is not entitled to habeas relief because he has not established that the alleged errors had a substantial and injurious effect on the verdict in this matter. *See Brecht*, 507 U.S. at 622.

The State also contends that Shaver has not demonstrated entitlement to discovery. Unlike typical civil litigants, "[h]abeas petitioners have no right to automatic discovery." *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause." R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a). "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are

fully developed, be able to demonstrate that he is . . . entitled to relief.' "
*Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v.
Gramley*, 520 U.S. 899, 908–909 (1997)). "Rule 6 does not 'sanction
fishing expeditions based on a petitioner's conclusory allegations.' "
*Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562
(5th Cir. 1997)); Habeas Rule 6(a). "Conclusory allegations are not
enough to warrant discovery under Rule 6; the petitioner must set forth
specific allegations of fact." *Williams*, 380 F.3d at 974 (internal
quotation marks and citation omitted). Shaver has not met this burden.

If this Court denies the petition, the State asserts that Shaver is
also not entitled to a certificate of appealability (COA) so as to proceed
further. In order to obtain a COA, a petitioner must make "a
substantial showing of the denial of a constitutional right." 28 U.S.C. §
2253(c)(2). To demonstrate this denial, the petitioner is required to
show that reasonable jurists could debate whether, or agree that, the
petition should have been resolved in a different manner, or that the
issues presented were adequate to deserve encouragement to proceed
further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); *see also
Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling

standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack*, 529 U.S. at 483–84, *see also Dufrense v. Palmer*, 876 F.3d 248, 254 (6th Cir. 2017) ("To meet *Slack*'s standard, it is not enough for a petitioner to allege claims that are arguably *constitutional*; those claims must also be arguably *valid* or *meritorious*.")

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find

it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*, *see also Dufrense*, 876 F.3d at 254.

"At the end of the day, 'the gate keeping functions of certificates of appealability [is to] separate the constitutional claims that merit the close attention of . . . this court from those claims that have little or no viability.'" *Dufrense*, 876 F.3d at 254 (quoting *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). Here, this Court should deny Shaver a COA on all of his claims. The claims simply "have little or no viability."

## RELIEF

For the reasons stated above, this Court should deny the petition.

The Court should also deny Shaver any requested discovery,

evidentiary hearings, bond, oral argument, and any other relief he

seeks in this action, including a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

s/<u>Scott Shimkus</u>

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
ShimkusS@michigan.gov
P77546

Dated: March 23, 2018
2012-0000422-C/Shaver, Scottie/Answer

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2018, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE GORDON J. QUIST
MAGISTRATE JUDGE RAY KENT

and I hereby certify that Meagan R. Touhey has mailed by United States Postal Service the papers to the following non-ECF participant:

SCOTTIE BERNARD SHAVER #405867
LAKELAND CORRECTIONAL FACILITY
141 FIRST ST.
COLDWATER, MI 49036

Respectfully submitted,

Bill Schuette
Attorney General

s/Scott Shimkus

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
ShimkusS@michigan.gov
P77546