UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FILED - GR**
April 8, 2024 10:38 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ns  SCANNED BY: KB / 4-8

SCOTTIE BERNARD SHAVER, 405867,

      Petitioner,

                                  No. 17-cv-00809-GJQ-RSK

-v-

BONITA HOFFNER,

      Respondent.

_____

## AMENDED PETITION FOR WRIT OF HABEAS CORPUS
### Pursuant to Title 28 USC § 2254

**Respectfully submitted,**

**Scottie Bernard Shaver, # 405867**
**In Propria Persona**
**Lakeland Correctional Facility**
**141 First Street**
**Coldwater, Michigan 49036**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iv

CASES ............................................................................................................... iv

STATUTES .................................................................................................... viii

OTHER AUTHORITIES ................................................................................ viii

RULES ............................................................................................................ viii

CONSTITUTIONAL PROVISIONS .............................................................. viii

   A.    JURISDICTION ........................................................... 1

   B.    PRIOR PROCEEDINGS ............................................. 1

   C.    TIMELINESS OF PETITION .................................... 7

   D.    EXHAUSTION OF CLAIMS .................................... 8

   E.    STANDARD OF REVIEW ........................................ 8

   F.    STATEMENT OF FACTS ....................................... 10

   G.    GROUNDS: ............................................................... 15

       I.    PETITIONER SHAVER IS ENTITLED TO HABEAS RELIEF WHERE THERE WAS INSUFF1CIENT EVIDENCE PROVEN BY THE PROSECUTOR BEYOND A REASONABLE DOUBT THAT HE HAD THE INTENT TO COMMIT FIRST DEGREE, OR FELONY MURDER............................................. 15

       II.    PETITIONER IS ENTITLED TO A NEW TRIAL WHERE THE STATE PROSECUTOR KNOWINGLY ALLOWED FALSE AND PERJURED TESTIMONY TO GAIN AN UNCONSTITUTIONAL CONVICTION. US CONST. AMEND. XIV. ......................................................................... 20

       III.    PETITIONER WAS THE VICTIM OF A BRADY VIOLATION WHERE MATERIAL EVIDENCE CRUCIAL TO HIS GUILT OR PUNISHMENT WAS WITHHELD DEPRIVING HIM OF HIS RIGHTS TO A FAIR TRIAL REQUIRING HABEAS RELIEF. US CONST. AMEND. XIV. ....................................26

IV.    PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT AND CROSS-EXAMINE A CRUCIAL WITNESS AGAINST HIM REGARDING THE CAUSE OF DEATH WHICH WAS CHANGED FROM ACCIDENT TO HOMICIDE REQUIRING RELIEF. US CONST. AMEND. VI. ...........31

V.    PETITIONER WAS DENIED his SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL ON his APPEAL OF RIGHT REQUIRING HABEAS RELIEF. US CONST. AMENDS. VI AND XIV. ....................................35

VI.    PETITIONER IS ENTITLED TO A NEW TRIAL WHERE HIS TRIAL ATTORNEY WAS CONSTITUTIONALLY DEFECTIVE BY FAILING TO INVESTIGATE THE CASE; Failing TO UTILIZE THE COMPULSORY PROCESS TO OBTAIN WITNESSES FOR THE DEFENSE, AND FAILED TO MOVE FOR AN EXPERT ACCIDENT RECONSTRUCTIONIST REQUIRING RELIEF. US CONST. AMENDA. VI AND XIV. .......................................................39

VII.    PETITIONER IS ENTITLED TO A NEW TRIAL WHERE NEW EVIDENCE WHICH WAS UNAVAILABLE FOR HIS JURY TRIAL ESTABLISH HIS ACTUAL INNOCENCE OF MURDER REQUIRING REVERSAL OR RELEASE FROM CUSTODY. US CONST. AMEND.XIV. ................................................44

VIII.    PETITIONER IS ENTITLED TO A NEW TRIAL WHERE THE STATE TRIAL JUDGE ABUSED HIS JUDICIAL DISCRETION BY CIRCUMVENTING A SIXTH AMENDMENT RIGHT TO CONFRONT A SPECIFIC WITNESS DISPLAYING JUDICIAL BIAS AGAINST HIM. US CONST. AMENDS. VI AND XIV. .................................................50

H.    RELIEF REQUESTED....................................................................53

CERTIFICATE OF SERVICE.............................................................54

# TABLE OF AUTHORITIES

## CASES

*Alcorta v. Texas*, 355 U.S. 28 (1957) ................................................................. 22

*Beasley v. U.S.,* 491 F.2d 687, 696 (6th Cir. 1974) ............................................. 40

*Bell v. Bell,* 512 F.3d 223,231 (6th Cir. 2008) ................................................... 30

*Berger v. U.S.*, 295 US 78, 88 (1935) ................................................................. 36

*Brady v. Maryland*, 373 U.S. 83 (1963) ....................................................... passim

*Brecht v. Abrahamson,* 507 U.S. 619 (1993) ..................................................... 25

*Brown v. Koneth,* 567 F.3d 191, 205 (6th Cir. 2009) ......................................... 18

*Bruton v. U.S.,* 391 U.S. 123, 126 (1968) ..................................................... 52, 53

*Bullcoming v. New Mexico*, 564 U.S. 647 (2011) ............................................... 34

*Byrd v. Collins,* 209 F.3d 486, 517-518 (6th Cir. 2000) ..................................... 26

*California v. Green,* 399 U.S. 149 (1970) ............................................................ 35

*California. v. Trombetta.*, 467 U.S. 479, 485 (1984) ........................................... 24

*Callahan v. U.S.*, 371 F.2d 658, 660 (9th Cir. 1967) .......................................... 35

*Carter v. Anderson*, 585 F.3d 1007-1011 (6th Cir. 2009) .................................. 25

*Case v. Hatch,* 731 F.3d 1015, 1036 (10th Cir. 2013) ........................................ 51

*Chambers v. Mississippi,* 410 U.S. 284 (1973) .................................................. 16

*Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012) ............................... 50

*Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998) .................................................. 26

*Crawford v. Washington*, 541 U.S. 36 (2004) ......................................... 32, 33, 34

*Crow v. Fontenot,* 142 S.Ct. 2777 (2022) .......................................................... 48

*Cruz v. New York*, 481 US 186, 193 (1987) ........................................................ 55

*Cullen v. Pinholster*, 563 U.S. 170, 180 (2011) ................................................. 26

*Darr v. Burford*, 339 U.S. 200, 203 (1950)............................................................................8

*Davis v. Alaska*, 415 U.S. 308, 320 (1974) .........................................................................35

*Davis v. Burke*, 179 U.S. 399, 401-403 (1900) ....................................................................8

*Davis v. Washington*, 547 U.S. 813, 826 (2006) ................................................................36

*Demjanjuk v. Petrovski*, 10 F.3d 348, at 352 (6th Cir. 1993)............................................25

*Early v. Packer*, 537 U.S. 3, 8, (2002) ................................................................................9

*Evitts v. Lucey*, 469 U.S. 387 (1987)..................................................................................37

*Fontenot v. Crow,* 4 F.4th 982 (10th Cir. 2021)..................................................................48

*Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)..............................................................37

*Giglio v. U.S.,* 405 U.S. 150 (1972) .......................................................................22, 23, 25

*Giles v. Maryland*, 386 U.S. 66, 99-101 (1967) .................................................................31

*Gray v. Maryland*, 532 US 185; 192 (1998) .......................................................................54

*Green v. McElroy*, 360 U.S. 474 (1959)..............................................................................35

*Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010)......................................................4

*Hamilton v. Mullin*, 436 F.3d 1181, 1186 (10th Cir. 2006) .................................................9

*Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) ......................................................9, 39

*Hawkins v. Coyle*, 547 F.3d 540, 556 (6th Cir. 2008)........................................................29

*Herrera v. Collins*, 506 U.S. 390, 404 (1993).....................................................................48

*Hinton v. Alabama*, 571 U.S. 263 (2014) ............................................................................41

*House v. Bell,* 547 U.S. 518 (2006)......................................................................................49

*In re Winship*, 397 U.S. 358, 362-363 (1970) ...............................................................passim

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ................................................9, 16, 18, 40

*Johnson v. Williams*, 568 U.S. 289, 302 (2013).................................................................48

*Jones v Barnes*, 463 U.S. 745 (1983) ..................................................................................38

*Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) ........................................................... 41

*Kyles v. Whitley*, 514 U.S. 419, 437 (1985) ............................................... 27, 30, 31

*Lilly v. Virginia*, 527 U.S. 116 (1999) ................................................................... 53

*Mapes v. Tate,* 388 F.3d 187, 194 (6th Cir. 2004) ............................................... 37

*Mattox v. U.S.,* 156 U.S. 237 (1895) .................................................................... 32

*McCleskey v. Zant*, 499 U.S. 467, 502 (1991) ....................................................... 49

*McKenzie v. Smith,* 326 F.3d 721, 728 (6th Cir. 2004) ...................................... 19

*McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir. 1996) .................................... 40

*McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ........................................... 28, 48

*Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009) ........................... 34, 36, 41

*Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000) ........................... 9, 10, 17

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ........................................... 9, 17

*Monroe v. Smith,* 197 F. Supp 2d 753, 762 (E.D. Mich. 2001) ............................. 26

*Mooney v. Holohan,* 294 U.S. 103 (1935) ............................................................... 22

*Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314 (1950) .................................. 35

*Murphy v. Ohio*, 551 F.3d 485, 494 (6th Cir.2009) ............................................... 48

*Murray v. Carrier* 477 U.S. 478, 501 (1986) ...................................................... 39

*Napue v. Illinois*, 360 U.S. 264, 269-272 (1959) ...........................................passim

*New York ex rel Whitman v. Wilson*, 318 U.S. 688 (1943) ................................. 22

*Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ............................................... 48

*Penson v. Ohio*, 448 U.S. 75 (1988) ...................................................................... 37

*People v. Accval,* 282 Mich App 379,389; 764 NW 2d 285 (2009) .................................. 24

*People v. Chenault,* 495 Mich 142, 150; 845 NW 2d 731 (2014) ............................... 27

*People v. Gratsch*, 299 Mich 604, 619, 621 (2013) ............................................... 24

vi

*People v. Johnson*, 502 Mich 541,571; 918 NW2d 676 (2018)........................................47

*People v. Shaver*, 843 N.W.2d 517, 495 Mich. 948 (2014) .................................................3

*People v. Shaver*, 898 N.W.2d 606 (Mich. 2017)..................................................................6

*Picard v. Connor*, 404 U.S. 270, 278 (1971) .........................................................................8

*Pointer v. Texas,* 380 U.S. 400, 403 (1965) ........................................................................32

*Pyle v. Kansas,* 317 U.S. 213 (1942)....................................................................................22

*Richardson v. Marsh*, 481 U.S. 200, 211 (1987)..................................................................54

*Robinson v. Mills*, 592 F.3d 730 (6th Cir. 2010)..................................................................27

*Roe v. Flores Ortega.* 528 U.S. 470 481 (2000)...................................................................45

*Schlup v. Delo,* 513 U.S. 298, 321 (1995)............................................................................48

*Shaver v. McKee*, Case No. l:14-cv-877, 07-12958-GJQ ......................................................3

*Stermer v. Warren*, 360 F. Supp. 3d 639 (E.D. Mich. 2018) ..........................10, 17, 39, 44

*Stermer v. Warren*, 959 F.3d 704 (6th Cir. 2020) ..................................................10, 39, 44

*Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010)............................................19

*Strickland v. Washington*, 9466 U.S. 668 (1984)........................................................passim

*Strickler v. Green*, 527 U.S. 263, 281 (1999)........................................................27, 30, 31

*U.S. v. Agurs*, 427 U.S. 97, 103 (1976) ...............................................................................30

*U.S. v. Bagley*, 473 US 667, 676 (1985)..........................................................................23, 27

*U.S. v. Cook*, 45 F.3d 388, 395 (10th Cir.1995)...................................................................38

*U.S. v. Cronic*, 466 U.S. 648, 666 (1984)............................................................................38

*U.S. ex rel. Kemp v. Pate*, 359 F.2d 749, 751 (7th Cir. 1966)..............................................8

*U.S. v. Flores-Ortega*, 529 U.S. 385 (2001).........................................................................21

*U.S. v. Smith*, 316 U.S. App DC 199, 202; 77 F.3d 571 (1996)..........................................24

*Von Moltke v. Gillies*, 332 U.S. 708, 725-26 (1948).............................................................38

*White v. Rogen*, 324 U.S. 760 (1945) ............................................................................. 22

*Wiggins v. Smith,* 539 U.S. 510, 520 (2003) ...................................................... 43

*Williams v. Taylor,* 529 U.S. 362, 395 (2000)................................................. 9, 41

*Yist v. Nunnemaker*, 501 U.S. 797, 803 (1991) ................................................... 4

**STATUTES**

28 U.S.C. § 2244(d)................................................................................................ 7

28 U.S.C. § 2254(d)...................................................................................... passim

MCL 750.316............................................................................................................ 1

**OTHER AUTHORITIES**

*Black's Law Dictionary* 1199 (9th ed. 2009) .................................................... 47

Garrett & Neufeld, *Invalid Forensic Science Testimony and Wrongful Convictions*, 95
   Va. L.Rev. 1, 14 (2009)................................................................................ 41

*Webster's New International Dictionary* 1540 (2d ed. 1954) ........................... 48

**RULES**

Mich. Ct. R. 6.508(D)(3) ..................................................................................... 4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. VI ............................................................................... passim

U.S. Const. Amend. XIV .............................................................................. passim

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SCOTTIE BERNARD SHAVER, 405867,

      Petitioner,

                            No. 17-cv-00809-GJQ-RSK

-v-

BONITA HOFFNER,

      Respondent.

_____\

## AMENDED PETITION FOR WRIT OF HABEAS CORPUS

      COMES NOW, the Petitioner, SCOTTIE BERNARD SHAVER, 405867, through

his attorney, in custody of the Michigan Department of Corrections, incarcerated at the

Lakeland Correctional Facility, Coldwater, Michigan. The Petitioner seeks the issuance of

the Writ of Habeas Corpus under 28 U.S.C. § 2254. In support thereof, Petitioner states:

## A.   JURISDICTION

      The action does not involve diversity jurisdiction.

## B.   PRIOR PROCEEDINGS

### ORIGINAL CONVICTION[1]

| | |
|---|---|
| **Court:** | Van Buren County Circuit Court |
| **Case Number:** | 10-017031-FC |
| **Date of sentence:** | June 9, 2011 |
| **Terms of sentence:** | LWOP |
| **Offense:** | First-degree murder, MCL 750.316 |
| **Trial:** | Petitioner was tried and convicted by a jury. |

---

[1] Petitioner's first trial ended in a hung jury where the jury could not find guilt based on the evidence. The second trial differed because of one prisoner informant.

## DIRECT APPEAL

**Court:**        Court of Appeals of Michigan.
**Case No:**      305945
**Opinion:**      September 12, 2013.
                  AFFIRMED, Unpublished

I.      Was there sufficient evidence proven by the prosecution
        beyond a reasonable doubt that Defendant Scottie Shaver
        had the intent necessary to warrant convictions of first-
        degree premeditated murder and first-degree felony murder?

II.     Was it error for the court to deny Defendant Scottie Shaver's
        motion for a separate trial?

Petitioner subsequently filed his own pro per brief, known in Michigan as a Standard

4 brief, in which he raised these additional claims:

I.      Whether there was insufficient evidence to support the jury's
        verdict.

II.     Whether the trial court obtained a conviction through the
        knowing use of perjured testimony and coercion of witnesses
        therefore offending the Defendant- Appellant's due process
        protections guaranteed under the Fourteenth Amendment.

III.    Whether there was sufficient evidence to support the jury's
        verdict.

IV.     Did the judge in this case fail to fulfill his obligation by
        violating the Defendant's rights and civil liberties to due
        process by bounding him over without the presence of
        probable cause.

Petitioner applied for leave to appeal in the Michigan Supreme Court, which raised

the same claims as in the Michigan Court of Appeals, along with one new claim:

I.      Ineffective assistance of counsel by trial counsel and appellant
        counsel.

2

The Michigan Supreme Court denied the application on February 28, 2014. *People v. Shaver*, 843 N.W.2d 517, 495 Mich. 948 (2014).

Petitioner filed a habeas petition see *Shaver v. McKee*, Case No. l:14-cv-877, 07-12958-GJQ. On October 07, 2014, the Petition was dismissed without prejudice for failure to exhaust state-court remedies.

## COLLATERAL PROCEEDINGS

Petitioner then sought relief in the state district court contained these claims:

I.     Defendant is entitled to a new trial based on newly discovered impeachment evidence.

II.    Defendant was denied a fair trial where his lawyer failed to investigate his case adequately and completely.

III.   Defendant believes he was denied his state and federal constitutional rights where the prosecution withheld evidence.

IV.    Prosecution misconduct by commission of fraud upon the court within [sic] knowingly seeking to deceive jury with perjured testimony.

V.     The prosecution use of unsubstantiated hearsay violated Defendants [sic] 5th and 14th Amendment rights to a fair and impartial trial.

VI.    Defendant was denied a fair trial where he was not able to confront his accusser [sic], violating his state and federal constitutional rights and due process of the law.

VII.   The trial court committed reversible error when it failed to act sua sponte with suppressing perjured testimony.

VIII.  The Defendant was denied the effective assistance of counsel, where counsel failed to motion the court for suppression of obviously perjured testimony.

3

IX.   Defendant was deprived of his 6th Amendment right to compulsory process and his right to effective assistance of counsel.

X.    Defense counsel absence at a critical stage of the adversarial process deprived Defendant a viable defense.

XI.   Defendant was denied his state and federal liberties, where he was denied his due process, by counsel failure to challenge the unconstitution [sic] felony murder doctrine.

XII.  Counsel was ineffective for failing to challenge the great weight of evidence, due to the verdict being contrary to the great weight of evidence.

XIII. Defendant was denied his right to a fair trial, where he was denied an impartial jury, due to jury tampering.

XIV.  Defendant-Appellant was not afforded the type of assistance of Appellant [sic] counsel guaranteed by the federal and state constitution, where counsel failed to raise issue 1 through 13, supra on appeal.

The trial court denied the motion for relief without holding an evidentiary hearing, claiming to be both the merits and under Mich. Ct. R. 6.508(D)(3). (12/4/15 Van Buren Cir. Ct.) Here, there could not be a procedural bar because no federal claim had been adjudicated on merit but moreover the State Court's order was ambiguous. *See Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010) (en banc) In *Guilmette*, this Court applied the presumption that the unexplained order rested on the same grounds as the previous order. *Id*. at 291–92 (citing *Yist v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

After this denial Petitioner applied for leave to appeal in the Michigan Court of Appeals, raising these claims:

4

I.    Was Appellant the victim of a Brady violation where material evidence, crucial to his guilt or punishment, was withheld depriving him of a right to a fair trial requiring reversal. US Const. Amend. XIV; Const. 1963, Art 1, § 17?

II.   Was Appellant deprived of his Sixth Amendment right to confront and cross examine a crucial witness against him regarding the cause of death from accident to homicide violating his right to a fundamental fair trial requiring reversal. US Const. Amends. VI, XIV; Const. 1963, Art 1, §§ 17 and 20?

III.  Whether or not Appellant Shaver is entitled to relief because he was denied his right to effective assistance of counsel on his direct appeal. US Const. Amends. VI and XIV; Const. 1963, Art 1, §§ 17 and 20?

IV.   Is Appellant entitled to a new trial where his trial attorney was constitutionally defective by failing to investigate the case, utilize the compulsory process to obtain witnesses for the defense, and failed to move for an expert accident reconstructionist, requiring relief. US Const. Amends. VI and XIV?

V.    Is Appellant entitled to anew [sic] trial because he was denied due process and a fair trial where his new evidence, which was not available for the jury, establishes his innocence of murder requiring reversal. US Const. Am. XIV; Mich. Const. 1963, Art 1, § 17?

VI.   Does Appellant's new evidence establishes [sic] a constitutional violation which resulted in the conviction of an innocent person and but for the violation, no reasonable juror would have voted to find him guilty of murder mandating reversal and discharge from custody. US Const. Amends. VIII, XIV; Const. 1963, Art 1, §§ 16 and 17?

VII.  Was Appellant deprived of his constitutional right to a fair trial where the judge abused his judicial discretion by circumventing a Sixth Amendment right to confront a specific witness, thereby displaying judicial bias against Appellant. US Const. Amend. VI and XIV?

VIII. Whether or not Appellant is entitled to reversal of his unconstitutional conviction, where a fraud was perpetrated upon the court by the prosecutor who provided fraudulent information and testimony to the jury depriving Appellant of his right to a fair trial. US Const. Amend. XIV; Const. 1963, Art 1, § 17?

The court denied the application for leave to appeal the denial of Petitioner's motion

5

for relief from judgment. (9/22/16 Mich. Ct. App. Order at 1.)

Petitioner then moved for leave to appeal this decision in the Michigan Supreme Court, but was also denied relief under Michigan Court Rule 6.508(D). *People v. Shaver*, 898 N.W.2d 606 (Mich. 2017) (unpublished table decision).

On August 31, 2017, Petitioner timely filed the underlying habeas corpus petition raising eight grounds for relief:

I.      There was insufficient evidence to prove beyond a reasonable doubt that Petitioner had intent to commit first degree, felony murder.

II.     The state prosecutor knowingly allowed false and perjured testimony to gain an unconstitutional conviction. U.S. Const. Am. XIV.

III.    Petitioner was the victim of a Brady violation where material evidence crucial to his guilt or punishment was withheld depriving him of his rights to a fair trial.

IV.    Petitioner was denied his right to confront and cross-examine a crucial witness against him regarding the cause of death which was changed from accident to homicide.

V.     Petitioner was denied his Sixth Amendment right to the effective assistance of counsel on his appeal of right. U.S. Const. Ams. VI & XIV.

VI.    Petitioner's trial attorney was constitutionally defective by: failing to investigate the case; failing to utilize the compulsory process to obtain witnesses for the defense; and failing to move for an expert accident reconstructionist.

VII.   Petitioner is entitled to relief because new evidence which was unavailable for his jury trial establishes his actual innocence of murder. U.S. Const. Am. XIV.

VIII.  The state trial judge abused his judicial discretion by circumventing a Sixth Amendment right to confront a specific witness, displaying judicial bias against Petitioner. U.S. Const. Ams. VI & XIV.

(Pet., ECF No. 1, PageID.20.) Respondent filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they are not cognizable on habeas review, procedurally defaulted, and/or meritless.

Petitioner, assisted by counsel, filed a reply to Respondent's answer. (ECF No. 7.) In that reply, Petitioner introduced new issues that, according to Petitioner, had not been considered by the state courts. Petitioner moved for stay and abeyance. (ECF No. 12) Which the Court ultimately Granted and stayed the proceedings. (ECF No. 15.)

Petitioner timely returned to state court to exhaust his remedies and moved for relief from Judgment on March 16, 2021 in the State district court. Petitioner requested an evidentiary hearing on his claims but there was no hearing held. On July 9, 2021, the State filed a Response to this application. On August 5, 2021, Petitioner then filed a Reply to the State's Response and ultimately the District Court denied Petitioner's application.

Petitioner then timely sought leave to appeal then on March 16, 2023, Petitioner filed an Amended Reply to the People's Brief in Opposition to his Application for leave to appeal. On May 2, 2023, the Michigan Supreme Court issued an Order denying Petitioner's appeal. On May 22, 2023 Petitioner sought reconsideration of the Michigan Supreme Court's determination but that was denied. This Petition is timely.

## C.    TIMELINESS OF PETITION

The Petitioner asserts this Petition is timely under 28 U.S.C. § 2244(d) the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Respondent has stipulated that Petitioner's previous claims raised in the habeas were not time barred and thus any issues raised herein are timely. Petitioner states that his actual innocence claim is

not barred as his conviction resulted from constitutional error and he has diligently pursued his claims. Petitioner presents new evidence and evidence not previously heard and considered which include 1) a report from an Accident Reconstructionist; 2) sworn affidavit of codefendant Ivory Shaver, which supports his actual innocence of the cold-case homicide formerly ruled as a vehicle-hit and run accident; 3) facts that demonstrate that evidence was fabricated, and 4) the knowing use of testimony the prosecution knew was false. The Petition is timely.

### D.    EXHAUSTION OF CLAIMS

The Petitioner's claims in this petition are exhausted as the state court has had the first opportunity to hear the claim sought to be vindicated in this Federal Habeas proceeding. The Federal Court has required a state prisoner to present the state courts with the same claim he urges upon the Federal Courts. See *Darr v. Burford*, 339 U.S. 200, 203 (1950); *Davis v. Burke*, 179 U.S. 399, 401-403 (1900). Sometimes, "the ultimate question for disposition," *United States ex rel. Kemp v. Pate*, 359 F.2d 749, 751 (7th Cir. 1966), "will be the same despite variations in the legal theory or factual allegations urged in its support." *Picard v. Connor*, 404 U.S. 270, 278 (1971).

### E.    STANDARD OF REVIEW

Federal habeas relief may not be granted for claims subject to 28 U.S.C. § 2254(d) unless it is shown that the state court's decision "was contrary to" federal law then clearly established by the Supreme Court, or it "involved an unreasonable application of" such law, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or it "was based on an unreasonable determination of the facts" in light of the record before the state court, §

2254(d)(2). Petitioner argues that analyzing the Michigan Courts' decision demonstrates that the decision is *"contrary to"* clearly established precedents as the State Court "applies a rule that contradicts the governing law set forth in our cases" and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, *supra*, at 405-406; (quoting *Early v. Packer*, 537 U.S. 3, 8, (2002)). The Court held that avoiding these "pitfalls *does not* require citation of our cases — indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) (citing *Jackson v. Virginia*, 447 U.S. 307, 332 n.5 (1979)).

Even under the AEDPA's deferential standard a federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Hamilton v. Mullin*, 436 F.3d 1181, 1186 (10th Cir. 2006). "If a state court's finding rests on thin air, the petition will have little difficulty satisfying the standards for relief under § 2254." *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000), *Stermer v. Warren*, 360 F. Supp. 3d 639 (E.D. Mich. 2018) *affirmed Stermer v. Warren*, 959 F.3d 704 (6th Cir. 2020). The Michigan Courts' determination under a timely AEDPA analysis involves an unreasonable determination of Supreme Court precedents because the State Court's determination rests partly on thin air. This Court should conclude the Writ should issue.

9

## F.    STATEMENT OF FACTS

On April 26, 1998, Ms. Deborah Kay Boothby died in a motor vehicle accident as determined by Medical Examiner, Dr. David Millard. Her death was believed to be from a vehicle hit and run circumstance where she was found on the side of Blue Star Highway at about 2:30 a.m., in Covert, Michigan. She was taken to the Sparrow Hospital where she later died.

Years later, an anonymous tip led the police to a person, Ms. Adrianne Burnette, who was present at the lounge on the night of April 25, 1998. Ms. Burnette was investigated, and the initial cause of death was changed from an accidental death caused by a vehicle to a homicide in 2007. Ms. Boothby's body was never exhumed for an additional examination supporting the change in the manner of death from vehicle accident to murder. This came because of the State Police investigation into the cold case, nine years later.

In September 2007, the physical evidence gathered at the hit and run scene was examined by Michigan State Police. The case files were brought to the attention of Detective Sergeant Diane Oppenheim of the MSP, South Haven Post, under complaint number 055-0001422-99. Detective Oppenheim made a supplemental report on September 26, 2007. Detective Oppenheim allegedly conducted numerous investigations, none of which were recorded. There were no copies of the interviews in the police files. Further it is unknown why, or by whom, the cause of death was changed but new evidence discussed below shows that the change in death was fabricated.

During the trial, testimony revealed that at 2:30 a.m. on April 26, 1998, police

10

officers were dispatched to the Blue Star Highway on a report of a hit and run. (Tr VI 48-50; Tr VI 217- 218). The Police found a person who was still alive, face down in the roadway. (Tr VI 51-56); (Tr VI 138-141). The victim later died at a local hospital (Tr VI 69). In the initial police investigation, three women reported seeing the victim walking down the road at approximately 2:30 a.m., without injuries. Information also revealed that a white car may have been involved in the victim's death. (Tr VI 61-63). There were no eyewitnesses to the hit and run incident and Police Officer Boling concluded it was a hit and run. (Tr VI 154).

Ivory Shaver, Petitioner's uncle, was interviewed by Officer Boling because he had information that Ivory and Ms. Boothby were involved in an argument at the bar and Boothby was escorted out. (Tr VI 78-79). Ivory claimed that Scottie had broken up the verbal exchange which involved a former relationship between Ivory and Boothby, (Tr VI 84).

Testimony revealed that an anonymous tip led to an investigation of Ms. Adrianne Burnette, who was present at the bar and was driving a white car. Her car had a cracked turn signal and scratches that had been covered up with whiteout. (Tr VI 85-86). Ms. Burnette was evasive and uncooperative, (Tr VI 236; VII 135). She indicated that Boothby was having trouble with Shaver that night. (Tr VII 10-12). No arrests were made until 2007. (Tr VIII 120).

State Police Detective Diane Oppenheim investigated the cold case, and interviewed Ms. Burnette who was later charged with open murder and perjury in connection with the death of Ms. Boothby (Tr XI 14). Burnette entered a guilty plea on October 19, 2009 to

11

second degree murder and agreed to testify in proceedings against Petitioner and codefendants for a sentence of (8 to 20) years. (Tr XI 16-17). She flunked a "polygraph examination" and pleaded guilty.

Pathologist, Dr. Palutke, determined that Boothby died of multiple blunt force injuries and internal bleeding. She had internal bleeding and fractures of her vertebra and pelvis (Tr XVI 68-71). Her blood alcohol level was .27 percent. He opined that she could have walked until the vertebrae in her spine was broken. He indicated that the manner of death was initially undermined. But when the investigators revealed additional information to him, gleaned from their 2007 investigation, the medical examiner amended his findings and changed the manner of death to homicide (Tr XIV. 62-64). Only Dr. Millard's name is affixed to the death certificate from May 05, 1998, listing the cause of death as vehicle accident. Dr. Millard did not testify at trial.

Adrian Travier testified Ivory Shaver confided in him while confined at the Lakeland Correctional Facility. Ivory allegedly told Travier he and his nephew, along with Ed and Shevy were involved in the beating of a white girl and running her over with an automobile to make it look like an accident, (Tr XV. 93-95). He was transferred from the Correctional Facility by offering his cooperation to the Van Buren County Prosecutor's office, (Tr XV. 97-99).

Defense witness, Dr. Brian Hunter, a forensic pathologist, testified that he examined and reviewed Dr. Palutke's report. He believed that the victim's injuries followed a motor vehicle accident, but that he could not rule out that some injuries could have been inflicted by a beating (Tr XVII 21-22). He believed that significant force, such as those involved in

a mother vehicle accident, would have been necessary to produce the posterior rib fracture and less likely that these injuries were produced from a "beatdown." (Tr XVII 25-27). He found that the spinal injury contradicted an assault. (Tr XVII 27-28). He believed the more plausible scenario was that the victim was walking along the road and was run over by a car. (Tr XVII 30). There was no accident reconstruction made by the police in 1998.

Marie Black, Jeannine Black, and Danyale Jones testified they were in the parking lot of the Blue Star Lounge around 12:30 a.m. on the night of April 26, 1998, but were too young to enter the lounge, (Tr XVII 142-144). They left the parking lot, and returned later when they observed a white lady walking down the road, staggering (Tr XVII 176-178). The lady fell and they turned into the parking lot to tell Keith Owens to call the police. Two cars left the lot while they were there. One of the cars was white. One of the women heard a "bloop, bloop" but did not see a car run over the victim. (Tr XVII 148-150); (Tr VIII 223-225).

Shevolier Gill testified on her own behalf. She admitted she was at the lounge on April 25, 1998 with Ivory as she was dating him. She saw Boothby come in stumbling around the bar. Boothby approached Gill and asked if she was with Ivory. Boothby poured a drink on her. (Tr XVIII 5; 11). Gill said there was only a verbal exchange and when the lights came on, she and Ivory went into the parking lot, (Tr XVIII 12-14). Gill observed a group of girls pour beer over Boothby, but Boothby kept walking, and she went to her car, (Tr XVIII 16-18).

Ivory talked to Boothby in the parking lot but got in her car and they went to her house (Tr XVIII 21-23). She saw no fight outside the lounge. (Tr XVIII 55-56). She did

13

not assault Boothby (Tr XVIII 35-37). Gill found out the next day that Boothby was dead. She said the police came to her house the next day and looked at her car and she heard nothing from them again until 2008 (Tr XVIII 57-59). The delay was approximately (9) years later when she was arrested.

Robert Boyd, an inmate at Lakeland testified that Travier and Ivory were both there, but he disputed that Travier and Ivory spent considerable time together. Boyd claimed that Travier only became interested in Ivory in November when he found out that Ivory had been implicated in a homicide in Van Buren County. He said Travier approached him with a proposal that the two should claim Ivory confessed to the murder to reduce their incarceration, but he declined. (Tr XVIII 142-145).

**Facts not of the trial record:**

Thomas G. Bereza, an Accident Reconstructionist Consultant, from Thomas Investigative Services, provided an affidavit stating:

> On April 25, 1998, it was raining, and visibility was low. Police Officer J. Allen responded to an accident on the Blue Star Highway, in Van Buren County, Covert Township, where Deborah Kay Boothby had been struck by an automobile.
>
> That the officers knew this was a 'hit and run' fatal car pedestrian accident That as the Chief of Police, Winans of the Covert Police Department stated it was very dark, raining very hard with low visibility. As a result, no assistance by trained accident reconstructionist was requested. The most telling in this sworn affidavit is page two of the affidavit regarding Dr. Cabaltica the Medical Examiner from Sparrow Hospital indicating the change of the cause of death of Deborah Kay Boothby, and the Investigation allegedly conducted by MSP Detective Diane Oppenheim.
> Petitioner will submit additional facts to clarify his argument and support his

innocence of the homicide. Facts from the evidentiary hearing where the statement to

14

Travier, allegedly from codefendant Ivory was allowed into the trial causing a prejudicial spillover to Petitioner. This extrajudicial statement, allegedly made by codefendant Ivory was allowed against all defendants in the case violating the US Supreme Court's ruling in Bruton v. United States

**G.    Grounds:**

**I.    PETITIONER SHAVER IS ENTITLED TO HABEAS RELIEF WHERE THERE WAS INSUFF1CIENT EVIDENCE PROVEN BY THE PROSECUTOR BEYOND A REASONABLE DOUBT THAT HE HAD THE INTENT TO COMMIT FIRST DEGREE, OR FELONY MURDER.**

### ARGUMENT AND AUTHORITY

The inquiry on this claim under the habeas review and inquiry is whether the state courts applied a contrary to, or the decision reached was an unreasonable application of clearly established law as determined by the US Supreme Court. The inquiry is whether failing to appropriately address the claim amounts to an objectively unreasonable determination under *In re Winshi*p, 397 U.S. 358, 362-363 (1970), where the Court held: "Due process protects a criminal defendant for being convicted of a crime without proof beyond reasonable doubt as to each and every element of the crime charged."

In the case at bar, Petitioner was never proven to have possessed the "specific intent" to commit first degree murder under the statutory elements of MCL § 750.316, or 750.316(1)(b), beyond a reasonable doubt which is a basic tenet of the due process requirement. There was no evidence in this case that Petitioner intended to kill Ms. Boothby by plan or scheme with a premeditated intent for a conviction under either statute about MCL § 750.316, or MCL § 750.316(1)(b). (Tr XXI 56).

15

In our system of justice, the due process clause, which applies to the states by way of the Fourteenth Amendment, guarantees fundamental fairness during the trial. The Supreme Court envisioned the clause as requiring proof of each and every element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This clause acts as a safety valve throughout the trial for both parties. The Constitution guarantees the right to a fair trial. *Chambers v. Mississippi,* 410 U.S. 284 (1973).

**The State Courts' Decision**

This claim was raised on direct appeal and Petitioner argues that because the Michigan Court of Appeals ("MCOA") failed to fully address the claim that it left the Court's inquiry into the "beyond a reasonable doubt" inquiry because the MCOA relied on perjured testimony of Adrianne Burnette to decide this claim. (MCOA Slip Op, p 11, 11 6). Ms. Burnette failed a polygraph examination, and her version of the events changed to add that Petitioner forced her to drive over the victim's body to make sure she was dead.

There is no state court resolution on the sufficiency of the evidence claim regarding the beyond a reasonable doubt standard under the constitutional guarantee of due process as outlined in either *Jackson* or *Winship*. Therefore, Petitioner urges this Court to rule that failing to address the claim amounts to both the contrary to, and unreasonable application of Supreme Court precedence and thus the opinion is not entitled to AEDPA deference. Further, AEDPA's deferential standard of review "does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) As the Supreme Court explained: "A federal court can disagree with a state court's credibility determination and, when guided by AEDPA,

16

conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Id.* "If a state court's finding rests on thin air, the petition will have little difficulty satisfying the standards for relief under § 2254." *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000); *Stermer v. Warren*, 360 F. Supp. 3d 639 (E.D. Mich. 2018).

**Evidence Presented at Trial.**

The only link that Petitioner was involved in the alleged homicide changed from accidental death by a motor vehicle hit and run, nine years after the incident, came from Adrianne Burnette, who changed her testimony several times. Burnette's story finally claimed that Petitioner entered her vehicle and told her to follow Ivory. Allegedly, they traveled to Covert Park and stopped at a pump house. She alleged that all co-defendants got out of their car and began to beat Ms. Boothby. It was alleged that Ivory Shaver formulated a plan to take Boothby back to the bar and dump her on the side of the road and run over her a couple of times making it appear that she had been hit by a car. (Tr XII 40-45). Petitioner told Burnette to follow Ivory back to the lounge to make a drug transaction with Owens (Tr XII 48). As they left the lounge, Petitioner told her to run over Boothby to make sure she was dead. (Tr XII 53).

The required term of beyond a reasonable doubt is missing from the state court's resolution of the insufficiency claim. Beyond a reasonable doubt means, beyond a reasonable doubt. Not a mere speculation, or a fanciful doubt. Additionally, the only testimony linking Petitioner to the death of Ms. Boothby came from several perjurers. The MCOA opinion on this claim was premised on perjury. *See* (COA Slip Op. p 11, 11 11 5-

17

6). Thus, the decision of the MCOA is contrary to and involves an objectively unreasonable determination of *Jackson v. Virginia,* and *Winship*, because the beyond a reasonable doubt as to the elements of either first degree or felony murder, was not addressed by the state court. (COA Slp. Op. pp 10-11). The State Courts' opinion is not entitled to deference under the AEDPA because it rested on thin air.

In a habeas corpus inquiry the reviewing court may not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury. *Brown v. Koneth,* 567 F.3d 191, 205 (6th Cir. 2009). Even if the habeas court concluded that a rationale trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, the court must still defer to the state appellate court's sufficiency determination if it is reasonable. 28 U.S.C. § 2254(d)(2). Although a court may sustain a conviction on circumstantial evidence, *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010), this circumstantial evidence must, as a matter of law, demonstrate that every element of the crime was proven beyond a reasonable doubt. Otherwise, the due process protection clause would be meaningless, if it yields to perjured testimony used to obtain an unconstitutional conviction. Here, there is no finding by Michigan Courts that Petitioner possessed the 'specific intent' to commit murder beyond a reasonable doubt. Therefore, habeas relief is warranted. 28 USC § 2254(d)(2). *Winship,* 397 US, at 364; *McKenzie v. Smith,* 326 F.3d 721, 728 (6th Cir. 2004).

The testimonial evidence linking Petitioner to the death of Boothby was suspect because Ms. Burnette had stated that she may have seen Boothby staggering towards the roadway. Ms. Burnette lied to the police by claiming that Petitioner had done something

18

he did not do. (Tr XII 86). Burnette had told police that Petitioner's brother [Terrence Shaver] was in the woods where Boothby was beaten even though he had nothing to do with the incident. (Tr XIII 91). This evidence, viewed in a light most favorable to the prosecution was insufficient to convict for first degree-felony murder. No one testified that Petitioner drove either vehicle alleged to have run over Boothby. The evidence from Burnette was fabricated after she was arrested on October 7, 2009, for second degree murder and perjury. (Tr XII 6). Burnette admitted that her statements to Detective Oppenheimer were modified on October 19, 2009, about the 1998 crime. (Tr XII 8).

**The MCOA Decision**

In this case, the evidence demonstrated that Scottie [Petitioner] was more than merely present, and that he forcibly moved the victim with the purpose of kidnapping or murder. Several witnesses testified that Scottie actively participated in the beating of the victim in the parking lot of the Blue Star Lounge, and that he assisted Ivory in picking the victim up and placing her in Shevolier's car. Burnette testified that Scottie ordered her to follow Shevolier's car to kidnap her or move her to a more remote location to kill her. This evidence shows that Scottie was not merely present, but was participating in beating and moving the victim. Further, Burnette testified that once they arrived at the park, Scottie continued to beat the victim, and that after the victim appeared to be unconscious, Scottie got back into Burnette's car and ordered her to run the victim's body over to ensure the victim was dead. This evidence also demonstrates Scottie's intent and active participation in the victim's murder. (COA Slip Op. p 11, 1T 6).

Contrary to the Court of Appeals opinion, the physical evidence relied on by that

19

Court was prejudicially flawed and not supported by facts in evidence. Several witnesses testified that they saw Ms. Boothby walking down the road, dressed in black. They observed the lady fall down, (Tr XVII 46). Additional witnesses testified there was no fight in the parking lot (Tr XVII 55-56; 71). Therefore, the opinion of the MCOA was contrary to both *Jackson* and *Winship*.

**II.  PETITIONER IS ENTITLED TO A NEW TRIAL WHERE THE STATE PROSECUTOR KNOWINGLY ALLOWED FALSE AND PERJURED TESTIMONY TO GAIN AN UNCONSTITUTIONAL CONVICTION. US CONST. AMEND. XIV.**

Petitioner asserts that the standard of review for this claim is "plain error" as articulated in *United States v. Flores-Ortega*, 529 U.S. 385 (2001). The State Courts of Michigan adopted the US Supreme Court's ruling in *Napue v. Illinois*, 360 U.S. 264, 269-272 (1959), as a reversible error standard of review. Petitioner urges this habeas court to apply 28 U.S.C. § 2254(d)(1) The inquiry is whether the state courts' opinion was objectively unreasonable considering *Napue v. Illinois* and thus the opinion could not be afforded AEDPA deference.

**Introduction**

Coupled with the perjured testimony from prison inmate-informant, Adrian Traveir, (Tr XVIII 142-145; 178-184; 205-209), the prosecution used testimony from Sharlimar Thomas, who stated, things she testified to were told to her by her cousin and law-enforcement, and not of her own knowledge. (Tr IX 230-236). She specifically answered defense question as to the police telling her where the body was located as "yes", and she indicated she was intimidated by the police, a State Trooper, (Tr IX 249).

20

Ms. Latoyna Thurman also testified that she was intimidated by the State Trooper, and she was just answering "yes" to his questions and inquiries, (Tr VIII 91). This was not enough, so the prosecution injected false testimonial evidence from Adrianne Burnette who testified, telling the jury she was forced to run over the victim (Tr XII 53). She also testified she may have seen the victim "staggering" towards the roadway and about 20 minutes later Petitioner returned and drove towards South Heaven, (Tr XII 203). She said when they left, she felt the big bump and Petitioner got out to look and told her not to talk about anything and keep her mouth shut. (Tr XII 204). She was arrested and convicted of committing perjury and received 8 to 20 years. (Tr XII 6). She agreed that her statements to Detective Oppenheimer were modified on October 19, 2009 about her knowledge of the alleged crimes committed on April 25, 1998. (Tr XII 8). Burnette's modification statement in 2009 served as the basis of Petitioner's arrest.

**Discussion**

It is clearly established and regularly followed by the U.S. Supreme Court that due process is violated when the State allows false testimony to secure a criminal conviction. U.S. Const. Amend. XIV; *Napue v. Illinois*, 360 U.S. 264 (1950); *Giglio v. U.S.,* 405 U.S. 150 (1972); *Mooney v. Holohan,* 294 U.S. 103 (1935); *Alcorta v. Texas*, 355 U.S. 28 (1957); *Pyle v. Kansas,* 317 U.S. 213 (1942); *New York ex rel Whitman v. Wilson*, 318 U.S. 688 (1943); *White v. Rogen*, 324 U.S. 760 (1945).

In *Mooney*, 294 U.S. at 112, the Court held that deliberate deception of the court or jury by the presentation of false evidence is incompatible with "rudimentary demands justice..." *Napue* rejected the Illinois Supreme Court's conclusion that "there was no

21

constitutional infirmity by virtue of false statements." The Court conducted its own independent examination of the record and facts to determine a constitutional violation, and opined:

> The Duty of this Court to make its own independent examination of the record when federal constitutional deprivation are alleged is clear, resting as it does, on our solemn responsibility for maintaining the Constitution inviolate.... A new trial is required if the false testimony could ... in any reasonable likelihood have affected the judgment of the jury...

*Id* at 271.

The Court then concluded that their own independent evaluation of the record compelled them to hold that "the false testimony used by the state in securing the conviction of petitioner may have had an effect on the outcome of the trial." *Id* at 272. The Court has continually made it abundantly clear that a constitutional violation exists when the false evidence relates to the witness credibility and the defendant's actual guilt. In *Napue,* the Supreme Court stated: The principal that a State may not knowingly use false evidence, including false testimony, to obtain a conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. 360 U.S. at 269.

A criminal defendant has a due process right of access to certain information possessed by the prosecution under *Brady v. Maryland*, 373 U.S. 83 (1963). This due process requirement of disclosure applies to evidence that might lead the jury to entertain

a reasonable doubt about a defendant's guilt. *Giglio v. U.S.*, 405 U.S. 150, 154 (1972). Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule because if disclosed and used effectively, such evidence may make the difference between conviction and acquittal. *U.S. v. Bagley*, 473 U.S. 667, 676 (1985) ... The prosecutor must disclose any information that would materially affect the credibility of his/her witness, *U.S. v. Smith,* 316 U.S. App DC 199, 202; 77 F.3d 571 (1996).

The false testimony and police statements by the state's star witness, Adrianne Burnette, were used for two distinct purposes. (1) To have the original autopsy report changed from accident hit and run, to murder, and (2) It was used by the prosecution to secure an unconstitutional conviction. Without it, there was no real chance for a conviction of Petitioner on first degree murder. Thus, Adrianne Burnette was crucial as a witness for this case. This perjury, once it is removed from the case, the new evidence, would make a significant difference at a subsequent retrial. Therefore, Petitioner's right to due process guaranteed by the Fourteenth Amendment is violated when there is a reasonable likelihood that his conviction was obtained by the knowing use of perjured testimony. *People v. Accval,* 282 Mich App 379,389; 764 NW 2d 285 (2009). Habeas relief granted by Judge Arthur J. Tarnow. A prosecutor has an obligation to correct perjured testimony that relates to the facts of the case or a witness credibility. *People v. Gratsch*, 299 Mich 604, 619, 621 (2013). *Id.·* Here, neither the Court, nor the prosecutor undertook this constitutional duty and allowed the tainted convictions to stand.

**The Due Process Violation**

Consistent with the due process clause of the Fourteenth Amendment, criminal

prosecutions must comport with prevailing notions of fundamental fairness. *California. v. Trombetta.*, 467 U.S. 479, 485 (1984). Prosecutors have a constitutional duty and obligation to report to the defense and to the trial court whenever government witnesses lie under oath *Napue v. Illinois,* 360 U.S., at 269-272. This rule of law extends as far back as *Mooney*, supra. To hold otherwise, would be a travesty of justice and contrary to the U.S. Supreme Court's ruling on this subject matter.

In the case at bar, the trial courts' resolution during the post-conviction was contrary to *Napue*, and was an unreasonable application of that decision. 260 US, at 270. *Id. See Demjanjuk v. Petrovski*, 10 F.3d 348, at 352 (6th Cir. 1993); *Carter v. Anderson*, 585 F.3d 1007-1011 (6th Cir. 2009) (addressing perjury as a 'fraud upon the court). The concept of false and perjured testimony was addressed in both state and federal courts and both arenas determined that such a conviction, "resting upon perjured testimony", offends the due process clause and will not be allowed to stand. *Napue*, 360 US at 266; *Giglio v. U.S., supra*. Under this framework, Petitioner is entitled to be discharged from the unlawful custody because he has shown that his conviction rest on a fraud upon the court perpetrated by the representatives of the State.

The perjured testimony had a substantial and injurious affect and influence on the verdict rendered. *Brecht v. Abrahamson,* 507 U.S. 619 (1993). Defendants should be discharged from custody because no additional evidence exists to sustain his conviction under the theory that he forced Ms. Burnette to run over the victim to ensure she was dead. *In re Winship*, 397 U.S. 358, 363 (1970). The precedence from the U.S. Supreme Court cannot be ignored and a new trial must be granted to cure the constitutional violation that

24

occurred with the knowing use of perjured testimony.

As the Court explained in *Napue* no matter what the topic, if it in any real sense reflected the witness's credibility-- a lie is a lie. 360 US, at 269-270. Here, the object of the trial was to elicit the truth and determine what exactly occurred causing the death of Ms. Boothby in 1998. It is well established that for a [Defendant] to prevail on a claim that his/her conviction was obtained by evidence that the government knew to be false, a defendant must show that the statement was actually false, that the statement was material, and the prosecutor knew it was false. *Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998). However, a defendant must show that a witness statement was indisputably false, rather than misleading to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of perjured testimony. *Byrd v. Collins,* 209 F.3d 486, 517-518 (6th Cir. 2000).   A new trial should be granted if the perjury by a government witness undermined the confidence in the outcome of the trial. *Monroe v. Smith,* 197 F. Supp 2d 753, 762 (E.D. Mich. 2001). Thus, at a minimum, an evidentiary hearing is required to determine whether this conviction is the product of perjured testimony. U.S. Const. Amend. XIV. *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Petitioner urges this Court to find that habeas relief is warranted where the State Court decision should not be afforded deference on this claim.

25

### III.  PETITIONER WAS THE VICTIM OF A BRADY VIOLATION WHERE MATERIAL EVIDENCE CRUCIAL TO HIS GUILT OR PUNISHMENT WAS WITHHELD DEPRIVING HIM OF HIS RIGHTS TO A FAIR TRIAL REQUIRING HABEAS RELIEF. US CONST. AMEND. XIV.

Petitioner asserts that the appropriate standard of review to be applied to his claim is whether the state courts applied a contrary to and an unreasonable application of the US Supreme Court precedent as articulated in *Brady v. Maryland,* 373 US 83 (1963) making the state's decision objectively unreasonable under *Brady*. The government has a constitutional obligation to furnish a criminal defendant with any exculpatory evidence related to the defendant's guilt or possible punishment 373 U.S., at 87. Suppression by the prosecution of evidence favorable to an accused ...violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Petitioner asserts the conviction was derived from the violation under the *Brady* trilogy, where the decade old cause of death was changed from accident to murder without the prosecution proving who changed it, and withheld the person and evidence that caused an accident to become a homicide, when he had to disclose that evidence. *Kyles v. Whitley*, 514 U.S. 419, 437 (1985).

#### Discussion

It is well established under *Brady* the prosecution had a duty to disclose all material evidence. This includes impeachment evidence as well as exculpatory [scientific] evidence. Thus, to comply with *Brady* the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf, including the policy. *Strickler v. Green*, 527 U.S. 263, 281 (1999). The Supreme Court has maintained this status

as far back as 1985, when it decided *U.S. v. Bagley*, 473 US 667, 676 (1985) *See also Robinson v. Mills*, 592 F.3d 730 (6th Cir. 2010) (Affirming the grant of a habeas petition on a *Brady* violation claim).

In *People v. Chenault,* 495 Mich 142, 150; 845 NW 2d 731 (2014), after the U.S. Supreme Court's decision in *McQuiggins v. Perkins*, 569 U.S. 383 (2013) removed the due diligence factor in discovering *Brady* violations and thus this claim is also properly before the court. Petitioner only discovered the violation following his second trial.

### Factual Background

Ms. Boothby's death was determined by Dr. David Millard to be a vehicle/pedestrian accident. That was alleged to have changed a decade later to homicide/murder but as addressed below the change was a fabrication of evidence that never occurred. The only evidence regarding the change of the cause of death came from Dr. Palutke who said he did not try to change his medical report based on new information because the case was 12 years old and the medical examiner for Van Buren had already changed the manner of death in the death certificate. (Tr XI 222). He said two death certificates were made. (Tr XI 228). He said he never changed the autopsy report, just his opinion, (Tr XI 247). He said it was Dr. Millard who changed the findings to homicide. (Tr XII 22). He told the jury when Dr. Millard received additional information from the Investigator, he changed the manner of death to homicide. (Tr XIV. 62-64; 80-82; 91-93). These death certificates and the changed cause of death report was never provided to the defense. No where in the trial court's records does these changed reports/death certificates exists. The only death certificate lists the cause of death as vehicle accident in 1998. This

nondisclosure of those documents violated *Brady*. The state trial court, the Court of Appeals, and the Michigan Supreme Court all passed on this claim thus there was no decision on the merit and thus the state court's opinion is not entitled to deference.

Had the Death Certificate been provided to the defense, Petitioner could have challenged the change on the investigator's evidence. It is not known what evidence was provided to Dr. Millard for him to change the cause of death from a hit-and-run accident to homicide. Dr. Millard did not testify at either trial, but the cause of death was still allowed to infect the trial process. The 1998 cause of death was crucial to the actual innocent of murder.

### Due Process Violation Requiring Relief

The withheld evidence was material which would have, more than likely, exonerated Petitioner from the charge as the Brady materials would not have supported a chance in the cause of death without having exhumed the body for further investigation by a pathologist. This is exactly what the Brady rule is designed to prevent. Petitioner is entitled to have a new trial on this claim as the testimony adduced at the trials indicate that it was Dr. Millard, not Dr. Palutke who changed the cause of death to a homicide (Tr XII 22). The jury had a right to know who changed the manner of death after ten years; why he changed it, and on what specific evidence he relied on.

The Sixth Circuit in *Hawkins v. Coyle*, 547 F.3d 540, 556 (6th Cir. 2008), the Court opined: "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may well

28

depend." *Napue v. Illinois*, 360 US 264, 269 (1959). *See too*, *Robinson v. Mills*, 592 F.3d at 735.

The rule of *Brady* arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense. *U.S. v. Agurs*, 427 U.S. 97, 103 (1976). A successful Brady claim requires a three-part showing: (1) that this evidence be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's action resulted in prejudice. *Bell v. Bell,* 512 F.3d 223,231 (6th Cir. 2008). Here, it is clearly established that the new Death Certificate was suppressed by the state, whether in error or intentionally, it was not turned over to the Petitioner after his trials, or during the post-conviction process. The trial judge did not know who Dr. Millard was in her assessment of the case during post-conviction procedures. The suppression resulted in nonharmless constitutional error. As in Brady, this evidence is deemed material because had it been disclosed, there exists a reasonable probability that Petitioner would not have been convicted of first-degree murder, and obviously, the outcome would be different. *Bagley*, 413 US at 628; *Strickler v. Green*, 527 US, at 289-290; *Kyles v. Whitley,* 514 US at 434. Prejudice should be presumed as a matter of fundamental due process protection. U.S. Const. Amend. XIV.

Here, the prosecutor reasonably knew that the change in the cause of death was not turned over to the defense because the Respondent is responsible for disclosure of evidence. Petitioner asserts that the reason it was withheld is because it exonerates him from the first-degree murder charge. Withholding the Medical Report from Dr. Millard, or

the State Police Detective, even if inadvertently, violated the constitutional right to due process and resulted in an unconstitutional conviction of an innocent person. It is established that evidence is deemed material if there is a reasonably probability that, had the evidence been disclosed to the defense, the trial proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickler,* 527 US. at 290. There the Supreme Court explained:

> Bagley's touchstone of materiality is a reasonable probability of a different results, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

*Kyles*, 514 US at 434.

Not allowing the jury to properly consider a claim infringes upon the truth-seeking function of the trial. The suppression of the information unquestionably corrupts the truth-seeking process, and the burden on the defendant in establishing his entitlement to a new trial ought be no different from the burden he would face if related testimony had been elicited by the prosecution. *Giles v. Maryland*, 386 U.S. 66, 99-101 (1967) (concurring in judgment). Dr. Palutke did not change this death certificate. Dr. Millard changed it. (Tr XII 22). Therefore, under Brady, Petitioner is entitled to a new trial. The state's suppression of evidence of Dr. Millard's change, should have been admitted into evidence. *Kyles*, 514 US at 435. Under *Brady*, the suppressed evidence entitles Petitioner to a new trial where the jury can determine whether the new facts support the change, or is simply the old facts influenced by new perjury from Ms. Burnette. (Tr XI p 17).

30

### IV.   PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT AND CROSS-EXAMINE A CRUCIAL WITNESS AGAINST HIM REGARDING THE CAUSE OF DEATH WHICH WAS CHANGED FROM ACCIDENT TO HOMICIDE REQUIRING RELIEF. US CONST. AMEND. VI.

Petitioner asserts that the appropriate standard of review for this claim is de novo, and whether or not the state courts applied a contrary to and an unreasonable application of clearly established law and was constitutionally wrong regarding the Sixth Amendment guarantee. This amendment's guarantee is applicable through the state courts by way of the Fourteenth Amendment of the US Constitution. *Pointer v. Texas,* 380 U.S. 400, 403 (1965). Petitioner urges this Court to apply this standard and review his claim through the lens of the Sixth and Fourteenth Amendment to the US Constitution. Therefore, the inquiry is whether the decision rendered by the trial court was contrary to, or an unreasonable application of clearly established federal law under *Pointer v. Texas,* or *Mattox v. U.S.,* 156 U.S. 237 (1895).

**Discussion**

In the age-old decision of *Pointer v. Texas*, the US Supreme Court outlined the Sixth Amendment confrontation cross examination clause to envision: "In all criminal prosecution, the accused shall enjoy the right . . . to be confronted. with the witnesses against him." U.S. Const. Amend. VI; *Crawford v. Washington*, 541 U.S. 36 (2004)

**Denial of the Right to Confront**

The decade old cold-case of the death of Ms. Deborah Kay Boothby in 1998, was reopened in 2007, by a Detective from the Michigan State Police. It was alleged that from this investigation by Detective Diane Oppenheim, a new cause of death was implemented

31

changing the cause of death from vehicle accident hit-and-run, to murder. At trial, the only evidence for this change came from Dr. Palutke who testified that he did not change the manner of death from accident to homicide, it was Dr. Millard who changed the autopsy report to read homicide. (Tr XII 22). Dr. Millard did not testify at either the first or second trial and the only indication he was the Doctor who changed the autopsy report and death certificates came from Dr. Palutke, (Tr XI 222). These changed medical reports were testimonial in nature under *Crawford v. Washington*, as these were done in anticipation of litigation by the state. The Michigan State Police Department.

In 1998, the medical examiner listed the cause of death of Ms. Boothby as vehicle/pedestrian accident. Dr. David Millard signed the death certificate of Ms. Boothby on May 05, 1998 listing this as the true cause of death. His initial medical examination was inconclusive on April 26, 1998. However, on May he determined the cause of death was accident [hit and run]. Ten years later, he changed his tune on some type of investigation from the State Police Detective, Diane Oppenheim. He was not listed as prosecutions witness to testify as to his change.

Dr. Waldemar A. Palutke, M.D. testified regarding his changes of autopsy from accident to murder. He testified that: He never attempted to change his report based on new information because it was 12 years old and the medical examiner for Van Buren County had changed the manner of death in the death certificate. (Tr XI 222). He said he never changed the autopsy report, just his opinion (Tr XI 24). He said that Dr. Millard changed the autopsy report by amending it to read homicide. (Tr XII 22).

Dr. Millard was not called to testify about his changes, and this was a confrontation

32

violation as the holdings in *Bullcoming v. New Mexico*, 564 U.S. 647 (2011) and *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009) were clear on issues of confrontation. Although these cases deal primarily with Laboratory reports where one lab employee testified about the report of another, the rulings apply to Petitioner Shaver's circumstances under his claim of confrontation/cross examination violation. Dr. Palutke gave testimony about the change from accident to homicide relying on the changes from Dr. Millard who did not testify. This violated Petitioner's constitutional right to confront the witness against him under the Sixth Amendment guarantee.

The changed autopsy report, and the medical examination records relied on to change the cause of death from accident to murder, were confrontational because they were prepared with the knowledge and anticipation of being submitted in a proceeding against an accused person. Under *Crawford v. Washington,* this violated the Sixth Amendment and Petitioner is entitled to a new trial because the State Court opinion is objectively unreasonable and involved an objectively unreasonable determination of the facts in light of the evidence. 28 USC§ 2254(d)(2).

The only opportunity to test the change in the cause of death, was by way of confrontation—cross examination—of the Medical Examiner who actually changed the cause of death. This right was crucial because it was the autopsy and medical reports which provided the evidence of a homicide, as opposed to hit-and-run accident. Consequently, Petitioner's confrontation rights were on two instances, which will be addressed seriatim:

First, Petitioner was denied his right to access the medical record evidence used against him. *Davis v. Alaska*, 415 U.S. 308, 320 (1974). Failure to permit access to evidence

useful for the defense denies fundamental due process of law. U.S. Const. Amend. XIV; Const. 1963, art 1, § 17. This due process right, insofar as the confrontation clause is concerned, was addressed in *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314 (1950). The equal right to both parties in the controversy to interview witnesses before trial is recognized by the courts. *Callahan v. U.S.*, 371 F.2d 658, 660 (9th Cir. 1967).

Second, Petitioner suffered constitutional harm when both the prosecution and defense counsel denied him the full panoply of the right to confront and cross examine the Doctor who changed the cause of death to homicide after a ten-year period. The right of confrontation and cross examination are important constitutional safeguards for a criminal defendant.

The prejudicial damaging effect of changing the autopsy report from accident to homicide, was crucial to the defense, and it deprived Petitioner of his constitutional right to confront those witness who initially made, and changed the medical records used against him.

Face to face confrontation and cross examination is required so the jury can look upon the witness and judge by his/her demeanor whether they are worthy of belief by the manner in which they testify according to the US Supreme Court in *California v. Green,* 399 U.S. 149 (1970); *Green v. McElroy*, 360 U.S. 474 (1959). This constitutional denial allowed the prosecution to establish murder without an objection from defense counsel who failed to have the witnesses brought to court for testimony regarding the 2009 change in the causation of death. Defense counsel knew well in advance that the autopsy report had been changed. Neither he nor the prosecutor summoned Dr. Millard for testimony

34

regarding the evidence he relied upon for the change and the stability of that evidence

without exhuming the body of Ms. Boothby. Dr. Palutke testified that he only changed his

opinion, not the death certificates or the autopsy report from accident to homicide. (Tr XI

222). There was never an official cause of death to determine it was homicide.

Failing to properly cross examine the person who wrote the medical information

relied upon Dr. Palutke (Tr XI 222, 247), allowed prosecutor to go beyond the

constitutional boundaries articulated in *Berger v. U.S.*, 295 US 78, 88 (1935) striking a foul

blow which deprived Petitioner of his Sixth Amendment right to confront the witness.

As the US Supreme Court clarified in *Davis v. Washington*, 547 U.S. 813, 826

(2006), that it will not permit the testimonial statements of one witness to enter into

evidence through the in-court testimony of a second. Restating of the true analysts --

whoever they might be—then those analysts, too, must testify in person. *See Melendez-*

*Diaz*, supra, [Addressing the confrontation clause to statements made by one person, but

testified to by another]. Petitioner urges this Court to grant him habeas relief under the

contrary/unreasonable application of 28 U.S.C. § 2254(d)(1-2).

## V.   PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS APPEAL OF RIGHT REQUIRING HABEAS RELIEF. US CONST. AMENDS. VI AND XIV.

Petitioner asserts that the correct legal principle and standard of review is de novo

as articulated in *Evitts v. Lucey*, 469 U.S. 387 (1987). The habeas inquiry is whether the

State Courts of Michigan applied a contrary to or unreasonable application of clearly

established law from the U.S. Supreme Court on this Sixth Amendment claim. This

standard for appellate counsel is the same standard applied in *Strickland v. Washington*, 9466 U.S. 668 (1984); *See Mapes v. Tate,* 388 F.3d 187, 194 (6th Cir. 2004).

**Discussion**

It is well recognized by law that a criminal defendant is entitled to effective assistance of counsel on his appeal of right. Here, appellate counsel should have presented the within claims on the appeal of right. "[L]awyers in a criminal court are necessities, not luxuries", *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). Here, counsel's inaction amounted to no action and violated Petitioner's constitutional right to effective assistance on appeal of right. *Evitts*, supra; *Penson v. Ohio*, 448 U.S. 75 (1988). In S*atterwhite v. Texas,* 486 U.S. 249, 256 (1988), the Supreme Court stated:

> A pervasive denial of counsel cast such doubt on the fairness of the trial process, that it can never be considered harmless error. Because the fundamental importance of the assistance of counsel does not cease as the prosecutorial process moves from the trial to the appellate stage, the presumption of prejudice must extend as well to the denial of counsel on appeal.

Petitioner recognizes that counsel is not required to raise all non-frivolous issues. *Jones v Barnes*, 463 U.S. 745 (1983). However, the Court in *Jones v. Barnes* did not say, or even hint, that counsel's selection of issues on appeal is beyond scrutiny. The Tenth Circuit has defined appellate counsel claims as those that are— "plainly meritorious" or "dead-bang winners" *See U.S. v. Cook*, 45 F.3d 388, 395 (10th Cir.1995), are those that would require relief. Effective assistance also requires that an attorney adhere to his duty of undivided loyalty to his client. *Strickland* at 692. This duty includes acting as a meaningful adversary vis-a-vis the state.

36

> The right to counsel guaranteed by the Constitution contemplates the services
> of an attorney devoted solely to the interests of his client.... And nowhere is
> this service more honorable than in case of appointment to represent an
> accused too poor to hire a lawyer, even though the accused may be a member
> of an unpopular or hated group, or may be charged with an offense which is
> particularly abhorrent.

*See Von Moltke v. Gillies*, 332 U.S. 708, 725-26 (1948)

Thus, the duty of loyalty is violated not merely when counsel represents clients who

have conflicting interests, but also when counsel acts more for the benefit of, and with more

apparent sympathy toward, the prosecution than the client he is defending. *See U.S. v.*

*Cronic*, 466 U.S. 648, 666 (1984) (an attorney who adopts and acts on a belief that his

client should be convicted fail[s] to function in any meaningful sense as the Government's

adversary).

Assuming that Appellate counsel, Mr. William H. Archer, read the trial transcripts

before submitting the appellate brief as required under case law authority, he would have

discovered the prima facie existence of the confrontation/cross examination claim because

Dr. Millard did not testify as to the information he used to change the cause of death.

Additionally, this should have prompted appellate counsel to assert a claim on the

trial attorney for not calling Dr. Millard. The records are laced with errors of considerable

constitutional muster, but. was not submitted on direct review. Thus, this failure gives rise

to both cause and prejudice to have the within claims reviewed on the merit. Petitioner

states a "constitutional claim that implicates fundamental fairness.... Compels review

regardless of procedural defaults." *Murray v. Carrier* 477 U.S. 478, 501 (1986) (a showing

of prejudice would invariably make a showing of cause unnecessary). *Id.* at 501, n. 8. "A

37

defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment." *Murray* at 488.

Thus, there was no downside in failing to submit these claims. Petitioner asserts that the new claims were worthy of bringing to the attention of the appellate court and failing to do so constitutes both cause and prejudice establishing ineffective assistance of counsel. See *Stermer v. Warren*, 360 F. Supp. 3d 639 (E.D. Mich. 2018) (Arthur J. Tarnow) *affirmed Stermer v. Warren*, 959 F.3d 704 (6th Cir. 2020). Habeas relief is warranted here regarding the contrary to or unreasonable application of clearly established law from the U.S. Supreme Court.

Counsel's failure to challenge the change in the cause of death, failing to challenge the absent Dr. Millard at either trial, or failing to challenge the *Brady* violation under current case law was ineffectiveness mandating relief when reviewed by fair minded jurists. *Harrington v. Richter,* 562 U.S. 86, 102-103 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 447 U.S. 307, 332 n.5 (1979)). A court reviewing such a claim should focus on whether the alleged errors undermined the reliability and confidence in the results. *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir. 1996). Petitioner is entitled to relief on this claim.

**VI.    PETITIONER IS ENTITLED TO A NEW TRIAL WHERE HIS TRIAL ATTORNEY WAS CONSTITUTIONALLY DEFECTIVE BY FAILING TO INVESTIGATE THE CASE; FAILING TO UTILIZE THE COMPULSORY PROCESS TO OBTAIN WITNESSES FOR THE DEFENSE, AND FAILED TO MOVE FOR AN EXPERT ACCIDENT RECONSTRUCTIONIST REQUIRING RELIEF. US CONST. AMENDA. VI AND XIV.**

The assistance of counsel required under the Sixth Amendment is effective assistance. *Beasley v. U.S.,* 491 F.2d 687, 696 (6th Cir. 1974). In *Strickland v. Washington, supra,* the US Supreme Court held that a criminal defendant's Sixth Amendment right to counsel is violated if his trial attorney's performance falls below an objective standard of reasonableness and if there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission. *Id.,* at 687-688, 694. Under *Strickland,* "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S., at 690-691.

**Discussion**

An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*. *See, e.g., Williams v. Taylor,* 529 U.S. 362, 395 (2000) (finding deficient performance where counsel "failed to conduct an

39

investigation that would have uncovered extensive records [that could be used for death penalty mitigation purposes], not because of any strategic calculation but because they incorrectly thought that state law barred access to such records"); *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (finding deficient performance where counsel failed to conduct pretrial discovery and that failure "was not based on `strategy,' but on counsel's mistaken belie[f] that the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense"). *Hinton v. Alabama*, 571 U.S. 263 (2014). A defense attorney who fails to perform these basic tasks will result in a denial of effective assistance of counsel as demonstrated in the case at bar. One study of cases in which exonerating evidence resulted in the overturning of criminal convictions concluded that invalid forensic testimony contributed to the convictions in 60% of the cases. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 319 (2009) (citing Garrett & Neufeld, Invalid Forensic Science Testimony and Wrongful Convictions, 95 Va. L.Rev. 1, 14 (2009)).

## A.    The Failure to Investigate the Case

Petitioner was represented by defense counsel Mr. Donald Sappanos, who failed to conduct a reasonable investigation into the 'ten-year-old case. Had he done a basic investigation he would have discovered that: The autopsy and death certificate had been changed on the investigation which did not include exhuming the body for verification of new information. Testimony from a different doctor was provided to the jury who did not change the cause of death from accident to homicide. (Tr XI 222). Nor did defense counsel challenge the alleged investigation information which gave rise to the change in the manner of death. Counsel simply took Dr. Palutke testimony as facts supporting the change in the

cause of death. (Tr XII  222). The only evidence to support the change in the cause of death of Ms. Boothby from a vehicle accident to murder came from Adrianne Burnette who committed perjury, flunked a polygraph test and changed her statement to it was Petitioner who forced her to run over the victim. She was convicted of second-degree murder and perjury. Therefore, defense counsel was ineffective for failing to also inform the jury and because the jury never heard the real story as to why the cause of death was changed and by whom, left standing the testimony from Dr. Palutke it was Dr. Millard who changed the cause and manner of death from accident to homicide. (Tr XII 222). Additionally, defense counsel failed to investigate the credibility of Adrian Travier who testified falsely regarding a statement allegedly made by codefendant Ivory Shafer.

### B.    Failure to Call Witnesses for the Defense

Several defense witnesses were not called to testify regarding the incident at the Blue-Sky Lounge on the date in question. Mr. Dandridge was the bar owner, and during the first trial he was a prosecution's witness. He denied the testimony by Adrianne Burnette that he came to the door with his shotgun and claimed that if the fight didn't stop he would start shooting. Dandridge denied he made this statement and said he saw no reason to call the police. His first trial testimony was crucial to the defense, but he was not called for the second trial by either party.

Ms. Holland testified at the first trial and claimed she pushed the woman [Ms. Boothby] off her car before leaving the club. Ms. Holland also stated that she had probably run over Ms. Boothby, for which forensic tests proved her car hit Boothby. She could have dispelled the prosecution's theory that Petitioner and his codefendants beat Ms. Boothby

41

and put her in the car. Defense counsel failed to call this witness.

Avita Rivera a defense witness who Adrianne Burnette claims she knew and was at the bar with her on April 25, 1998, said she did not know Ms. Burnette; she did not have her overnight bag as Burnette claimed, and she was not at the bar with Burnette. This was a credible witness to show the jury that Ms. Burnette was still lying when she testified before them.

Doctor David Millard was not called to testify about why and on what information he changed the death certificate from accident to homicide. Defense counsel never called this witness to tell the jury why he changed the cause of death from accident to homicide. These were credible defense witnesses who were not called to testify in the second trial. This was due to defense counsel's failures. The state courts' ruling on this claim was contrary to the decision in *Wiggins v. Smith,* 539 U.S. 510, 520 (2003) warranting habeas relief. 28 U.S.C. § 2254(d)(1).

### C.  Failure to Seek an Expert Accident Reconstructionist

In some criminal cases, "the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." *Harrington, supra,* at 106, 131 S.Ct. 770. This was such a case. *See Stermer v. Warren*, 360 F. Supp. 3d 639 (E.D. Mich. 2018) *affirmed Stermer v. Warren*, 959 F.3d 704 (6th Cir. 2020) Due to counsel failure to investigate the case he failed to move the Court for an accident reconstructionist.

Had he done so, he would have found that the Expert Accident Reconstructionist would have provided supporting evidence of his client's innocence. Failing to move for this expert prevented the jury from hearing the information supporting the theory that it

42

was an accident as the Covert Police Chief, Mr. Winans had written in his report that, the crime scene was very dark as it was raining very hard with low visibility. This would have called into question the testimony of Burnette driving the white car in the rain and hit the victim.

Defense counsel failures must, as a matter of constitutional law, be considered the Sixth Amendment denial that the inquiry contemplates. *Strickland*, 466 US, at 696. With this additional information from the witnesses listed here, including the expert reconstructionist, the jury may have elected to acquit altogether because they could not fmd guilt on first degree murder at the first trial.

Trial counsel failed to make a reasonable investigation into the case before trial. He simply relied on the prosecutor to make his case for him. Counsel failed to utilize the tools available to him to combat his client's case in the face of the prosecution's fraudulent submissions, from Burnette and Travier, ultimately denying a right to effective assistance of counsel.

The *Strickland* Court noted for the most part. that "strategic choices made after thorough investigation of law and facts are relevant to plausible options are virtually unchallengeable." 466 U.S. at 690. The ultimate question is not whether counsel's choices were strategic. but whether they were reasonable. *Roe v. Flores Ortega*. 528 U.S. 470 481 (2000). Defense counsel's failure here were unreasonable and cannot be considered strategic.

43

**VII.  PETITIONER IS ENTITLED TO A NEW TRIAL WHERE NEW EVIDENCE WHICH WAS UNAVAILABLE FOR HIS JURY TRIAL ESTABLISH HIS ACTUAL INNOCENCE OF MURDER REQUIRING REVERSAL OR RELEASE FROM CUSTODY. US CONST. AMEND.XIV.**

**Introduction:**

Petitioner raised why or by whom the cause of death was changed for the death certificate of Deborah Boothby in State Court. Those claims are now exhausted. Respondent is required to provide this Court with the record that was before the State Court. Investigator Thomas Bereza has executed an Amended Affidavit, in which he states he interviewed Dr. Millard about the autopsy of Ms. Boothby and the death certificates. Dr. Millard stated that he was never consulted by anyone regarding Ms. Boothby's death, including police officers, the prosecuting attorney, defense attorneys or investigators.

Dr. Millard does not know Dr. Palutke (the doctor who conducted the autopsy), nor has he ever met him or consulted with him regarding this case. Dr. Millard signed the first death certificate on May 5, 1998, in which the death of Ms. Boothby was ruled an accident. The second death certificate was not signed by Dr. Millard, nor did he have anything to do with it. The signature on the second death certificate looks like it was electronically signed, and it appears that the death certificate was amended August 6, 2009, 11 years after the first certificate was issued.

The newly discovered evidence from Private Investigator, Thomas G. Bereza (dated 3/1/21) conclusively shows that during the trial, false testimony was presented by the People regarding authorization of the second death certificate, allegedly signed by Dr. Millard. Dr. Millard, however told Investigator Bereza he did not sign a death certificate

44

changing the cause of death to a homicide (Affidavit p 2, § 3). Thus, the newly discovered evidence is the statement from Dr. Millard regarding his signature on the second death certificate.

Doctor Millard did not attend the trials and he never knew his name was submitted to the jury as the person who changed the death certificate after ten years. His testimony would have shed considerable light on the topic regarding the changed death certificate, which when coupled with the testimonial evidence from witness Latisha Hollings, whose automobile also hit Ms. Boothby, but was not charged, and was not called to testify at the second trial, would have bolstered the first death certificate factual basis that Boothby's death was caused by a vehicle accident. *See* Hollings testimony from 9/28/2010 (TR VII 63).

**THE EVIDENCE IS NEWLY DISCOVERED**

The newly discovered evidence from Private Investigator, Thomas G. Bereza (dated 3/1/21) conclusively shows that during the trial, false testimony was presented by the People regarding authorization of the second death certificate. This new evidence was not available when the former motion was filed, and was unavailable at either of the two trials. Thus, the evidence is new and its materiality is significant to the claim presented because the claim of newly discovered evidence has evolved significantly since the Cress opinion. In *People v. Johnson*, 502 Mich 541,571; 918 NW2d 676 (2018), this Court stated:

> In examining whether new evidence makes a different result probable on retrial, the trial court must consider the evidence that was previously introduced at trial ...[and] must also consider the evidence that would be admitted at retrial ... A trial court's credibility determination is concerned with whether a reasonable juror could find the testimony credible on retrial.

45

In assessing credibility, the trial court may consider questionable aspects of proposed testimony, but also must consider aspects of reliability such as lack of motive to lie.

Petitioner argues that he is entitled to de novo review where the Michigan Court's determination was a ritual—more sham than real—performing no analysis of Petitioner's constitutional claims and the Court's decision is so lacking in justification, there was no merit-based determination and if there was it involved an objectively unreasonable determination of Supreme Court precedent. The language of 28 U.S.C. § 2254(d) clarifies this provision applies only when a federal claim was "adjudicated on the merits in State Court." A judgment is normally said to have been rendered "on the merits" only if it was "delivered after the court ... heard and evaluated the evidence and the parties' substantive arguments." *Black's Law Dictionary* 1199 (9th ed. 2009) (emphasis added). And as used in this context, the word "merits" is defined as "[t]he intrinsic rights and wrongs of a case as determined by matters of substance, in distinction from matters of form." *Webster's New International Dictionary* 1540 (2d ed. 1954).

AEDPA permits de novo review in those rare cases when a State Court decides a federal claim, so it is "contrary to" clearly established Supreme Court precedent, see *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in State Court § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." *Johnson v. Williams*, 568 U.S. 289, 302 (2013) "Consequently, where a State Court has not previously ruled on the merits of a claim, we apply the de novo standard of review." *Murphy v. Ohio*, 551 F.3d 485, 494 (6th Cir.2009).

**Claims of Actual Innocence only serve as a gateway.**

The actual innocence gateway provides exceptions to procedural bars with the Circuit Courts adopting the "newly presented" view of *Schlup v. Delo,* 513 U.S. 298, 321 (1995), evidence over the "newly discovered through diligence" as determined in *Fontenot v. Crow,* 4 F.4th 982 (10th Cir. 2021) *cert denied Crow v. Fontenot*, 142 S.Ct. 2777 (2022). "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims.... on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (quoting *McCleskey v. Zant*, 499 U.S. 467, 502 (1991)). When used to overcome procedural issues, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id*.

The Supreme Court has "consistently reaffirmed the existence and importance of the exception for fundamental miscarriages of justice." *Schlup* at 321. It has been applied to overcome various procedural defaults, including those stemming from successive petitions, abusive petitions, failure to develop facts in state court, and failure to observe state procedural rules. *McQuiggin*, at 393. In *McQuiggin,* the Court recognized it as an available equitable exception to AEDPA's time-bar for first petitions, holding that actual innocence serves as a gateway through which a petitioner may pass whether the

47

impediment is a procedural bar, as it was in *Schlup* and *House v. Bell,* 547 U.S. 518 (2006). "Prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House,* at 537-38 (quoting *Schlup,* at 327).

> It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Schlup*, at 329.

Removing the double negative, a petitioner's burden at the gateway stage is to demonstrate "that more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538. As this formulation clarifies, "actual innocence" is a misnomer, because "the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence"—that is, a petitioner need not make "a case of conclusive exoneration." *House*, at 538, 553; *see also Schlup,* at 327 ("[T]he showing of 'more likely than not' imposes a lower burden of proof than the 'clear and convincing' standard."). Thus, a "petitioner's showing of innocence is not insufficient solely because the trial record contained sufficient evidence to support the jury's verdict." *Id.* at 331; see *House*, 547 U.S. at 553-54 (granting a gateway innocence claim despite acknowledging that "[s]ome aspects of the State's evidence... still support an inference of guilt"); *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012) (noting that the actual innocence standard "is less strict than the insufficient evidence standard") *See Fontenot v. Crow*, *supra*.

To be credible, a claim of actual innocence requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, at 324. In assessing the adequacy of a petitioner's showing, "the habeas court must consider 'all the evidence,' old and new, incriminating, and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial,'" *House*, at 538 (quoting *Schlup*, at 327-28). The innocence inquiry "requires a holistic judgment about 'all the evidence,' and its likely effect on reasonable jurors applying the reasonable doubt standard." *Id.* at 539 (quoting *Schlup*, at 328). As discussed, the *Schlup* standard does not demand conclusive proof of exoneration; rather, it involves a probabilistic determination that, given all the evidence—"old and new; admissible and inadmissible," *Case v. Hatch,* 731 F.3d 1015, 1036 (10th Cir. 2013)—"more likely than not any reasonable juror would have reasonable doubt," *House,* at 538. The Supreme Court has suggested that to show actual innocence, a petitioner must present new evidence that is consequential. See *Schlup,* at 324 (explaining the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."). Petitioner argues that should the Court find any procedural issues that his claims compel review regardless of any default and that his claims are exhausted. Petitioner was unfairly prejudiced by non-harmless constitutional error.

## VIII.   PETITIONER IS ENTITLED TO A NEW TRIAL WHERE THE STATE TRIAL JUDGE ABUSED HIS JUDICIAL DISCRETION BY CIRCUMVENTING A SIXTH AMENDMENT RIGHT TO CONFRONT A SPECIFIC WITNESS DISPLAYING JUDICIAL BIAS AGAINST HIM. US CONST. AMENDS. VI AND XIV.

Petitioner was tried twice. The first trial ended in a hung jury. The second trial ended in a conviction of first-degree murder. Before the trials, an evidentiary hearing was conducted on May 9, 2011, regarding codefendant Ivory Shaver's alleged statements to a fellow prison inmate, Adrian Travier. Judge Richard R. Lamb had ruled that this statement would not be allowed in a codefendant's trial being tried separately. At the conclusion of the evidentiary hearing, Judge Lamb issued his findings and ruled that the statement could be testified to by Adrian Travier. (Hr. Tr. 59-62). Specifically, Judge Lamb noted on the record that:

> I -- as I've indicated, I don't see anything that says there's antagonistic defenses so I recall from the last trial that even with the testimony from Defendant Gill, there was nothing that appeared to be antagonistic to the theories advanced by Ivory Shaver and Scottie Shaver. This case is different because at the last trial we didn't have Mr. Travier as a witness and the statements that he made -- or not he, but the statements that Mr. Ivory Shaver made to Mr. Travier, which has been the subject of an earlier ruling and concern with the defense attorneys, um, but taking into account the factors of my finding on the admissibility of the declarations against penal interest, that's an evidentiary question for admissibility. The weight that's going to be given to that testimony will be determined by the fact finders who will be a jury and the jury will be instructed as they were in the last trial, each Defendant's case, although the Defendants if they were tried jointly would all be sitting at the same trial, that each case has to be evaluated individually and there's -- there's an instruction that's usually requested and given that mere presence at the scene of a crime, even if someone knows a crime is occurring, does not make that person guilty unless that person joins in the acts, A-.C-T-S, along with the necessary criminal intent to render that particular person guilty of that offense and there may be other limiting instructions.

(Hr. Tr. p 60).

> I don't know. I can't anticipate it here, but at this point in time the difference,
> even with Mr. Travier's statement being admissible is something that can
> come in under the declaration against penal interest and under the Michigan
> ruling on that rule and it comes in as substantive evidence against all three
> codefendants, but that's because of the evidentiary rules in Michigan and the
> rules that this Court must follow, and as I say, jurors are told evaluate the
> evidence as against each particular defendant and their cases are to be
> evaluated on an individual basis and jurors are presumed to follow the
> instructions of the Court, so because the rules of evidence in Michigan is
> somewhat different than what the Federal Courts follow and because this
> Court must follow the Michigan Supreme Court decision and because if this
> case were tried three times, the same evidence would come in as to each
> Defendant So taking into account the Court's resources and the timing of trial
> and the right of both the People of the State of Michigan and the Defendants
> to a fair trial, I won't grant a severance as to the trials or I won't grant
> individual juries, so if you have -- Counsel, you'll have plenty of time to
> think about this, but if you have requested instructions which are appropriate
> for the jury, I'll certainly entertain them and if -- I'm revisiting this now
> because there's changed circumstances from the last time I ruled on this
> motion and if. you -- if your position changes with reference to whether or
> not a particular Defendant would testify and if you think that would impact
> come of the decisions I'm talking about here, of course bring it up, but I'm
> operating right now under the premise that all of the Defendants will be
> exercising their -- their privilege against testifying, but if that changes, let me
> know and we can address it.

(Hr. Tr 61-62).

Because of this erroneous ruling, Petitioner had no way of testing the recollection

of the witness for truthfulness as to the alleged statements by Ivory Shaver. Although the

statement pertained to Ivory, the spillover effect of the prejudicial nature of the statements

harmed Petitioner as the court indicated, Mr. Travier did not testify at the first trial. The

question was not whether the statements were allowable under the rules of evidence, the

constitutional inquiry was the confrontation aspect of the Sixth Amendment. This was

addressed in *Lilly v. Virginia*, 527 U.S. 116 (1999), where the Court explained that, an accomplice testimony is not admissible in joint trials, when the confessor exercise his Fifth Amendment right not to testify. Therefore, allowing Adrian Travier to testify regarding the 'confession' made by Ivory was a violation of the right to confront an accuser.

### Joint Trials and the Confrontation Clause

Here, Petitioner was jointly tried with his codefendants. There is no dispute that codefendant Ivory Shaver exercised his Fifth Amendment privilege not to testify. His statement to Travier, which amounts to a 'confession' should not have been admitted under the confrontation clause because Petitioner had no opportunity to confront Ivory regarding the confession. This is exactly what the confrontation clause is designed to prevent. *Bruton v. U.S.,* 391 U.S. 123, 126 (1968), where the Court opined: "The confession of a codefendant who exercise his/her Fifth Amendment right not to testify is not admissible against the other defendant because that defendant has no opportunity to cross-examine the codefendant. The admission of a codefendant's confession at a joint trial under these circumstances violate the other defendant's right to confrontation if the confession incriminates that defendant." *Id.*

Here, Judge Lamb agreed to instruct the jury regarding Ivory's 'confession' to witness Travier. This did not neutralize the taint of the constitutional violation. The US Supreme Court addressed this factor in Bruton, and opined: "An instruction that the jury should not consider the confession as evidence against the defendant is insufficient to render the confession admissible." 391 US, at 137.

The alleged confession to Travier by Ivory implicated Petitioner as one of the people

52

involved. Travier's testimony was prejudicial to Petitioner because the term 'nephew' was easily recognized by the jury as Petitioner. This was prejudicial error and Judge Lamb simply' disregarded the constitutional right of Petitioner. The judge's ruling to allow the statement by way of the rules of evidence violated the US Supreme Court's ruling in *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Gray v. Maryland*, 532 US 185; 192 (1998). Witness Travier did not say Scottie's name, but the jury was not fooled because he was convicted. Unlike the first trial where the testimony of Travier was not used, that jury could not find guilt. Thus, Travier's testimony was prejudicial as to Petitioner, the 'nephew and codefendant' of Ivory Shaver. (Tr XV. 93-95). [Ivory, allegedly, confided in Travier he, his nephew, Ed, and Shevy were involved in beating a white girl to death, and running her over with an automobile]. This amounted to a 'confession' by Ivory, used against Petitioner causing the conviction of an innocent person. This case is on equal footing as the case of *Cruz v. New York*, 481 US 186, 193 (1987), where the US Supreme Court applied the Bruton ruling and opined: "The codefendant's confession must be excluded even when it merely corroborates the defendant's own confession." *Id.* Petitioner asserts that the testimony provided by Travier should have been excluded and a new trial should be granted.

## H. RELIEF REQUESTED

W HEREFORE, the Petitioner respectfully prays that this Court will issue an Order Granting the Writ or alternatively set this case for an Evidentiary Hearing. Petitioner argues that his claims are meritorious and warrant relief from the judgment and sentence he is under.

Respectfully Submitted,

Scottie Bernard Shaver, # 405867
In Propria Persona
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036

---

## CERTIFICATE OF SERVICE

I certify that on this 8th day of April 2024, I hand delivered the above and forgoing to the Clerk of Court and that the Clerk will electronically transmit using the ECF System to the registered ECF registrant:

I further certify that I have mailed by United States Postal Service a filed copy of the amended habeas.

Taneshia Shaver

---

54